UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States ex rel. | : | Civil Action No. C-1-95-970 |
| | : | (Consolidated with C-1-99-923) |
| ROGER L. SANDERS | : | |
| ROGER L. THACKER | : | Judge Thomas M. Rose |
| | : | |
| Relators, | : | Magistrate Judge Timothy S. Hogan |
| | : | |
| Bringing this Action on behalf of | : | |
| the UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | |
| | : | |
| ALLISON ENGINE COMPANY, INC., | : | |
| et al. | : | |
| | : | |
| Defendants. | : | |

**RELATORS' REQUESTED JURY INSTRUCTIONS**
**and**
**SPECIAL INTERROGATORIES AND VERDICT FORM**

**Trial**
**January 31, 2005**

Respectfully submitted,

/s/ James B. Helmer, Jr.

<table>
<tr><td>Scott A. Powell, Esq.</td><td>James B. Helmer, Jr.  (0002878)</td></tr>
<tr><td>Don McKenna, Esq.</td><td>Paul B.  Martins (0007623)</td></tr>
<tr><td>HARE, WYNN, NEWELL &</td><td>Robert M. Rice  (0061803)</td></tr>
<tr><td>  NEWTON, LLP</td><td>HELMER, MARTINS, RICE &</td></tr>
<tr><td>The Massey Building, Suite 800</td><td>  POPHAM CO., LPA</td></tr>
<tr><td>2025 Third Street, North</td><td>Fourth & Walnut Centre, Suite 1900</td></tr>
<tr><td>Birmingham, AL 35203-3713</td><td>105 East Fourth Street</td></tr>
<tr><td>Telephone: (205) 328-5330</td><td>Cincinnati, Ohio 45202-4008</td></tr>
<tr><td>*Attorneys for Relators*</td><td>Telephone:  (513) 421-2400</td></tr>
<tr><td></td><td>*Trial Attorneys for Relators*</td></tr>
</table>

**RELATORS' REQUESTED JURY INSTRUCTIONS,
SPECIAL INTERROGATORIES AND VERDICT FORM
TABLE OF CONTENTS**

Requested Instruction No.1, **Introduction**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Requested Instruction No.2, **Use of Notes** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Requested Instruction No.3, **All Persons Equal Before the Law**  . . . . . . . . . . . . . . . . . . . . . . . 3

Requested Instruction No.4, **Consideration of the Evidence**  . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Requested Instruction No.5, **Standard of Proof** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Requested Instruction No.6, **Direct and Circumstantial Evidence**  . . . . . . . . . . . . . . . . . . . . . 7

Requested Instruction No.7, **Credibility of Witnesses** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Requested Instruction No.8, **Party Not Required to Call Witnesses**  . . . . . . . . . . . . . . . . . . . 10

Requested Instruction No.9, **Charts and Summaries**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Requested Instruction No.10, **Depositions**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Requested Instruction No.11, **Stipulations and Admissions**  . . . . . . . . . . . . . . . . . . . . . . . . . 13

Requested Instruction No.12, **Expert Witnesses**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Requested Instruction No.13, **No Transcript Available**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Requested Instruction No.14, **Jury Conduct**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Requested Instruction No.15, **Corporate Agents and Respondeat Superior** . . . . . . . . . . . . . 22

Requested Instruction No. 16, **Imputed Knowledge**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Requested Instruction No.17, **False Claims Act Background** . . . . . . . . . . . . . . . . . . . . . . . . . 24

Requested Instruction No.18, **Overview of Relators' False Claims Act Claims**  . . . . . . . . . . 26

Requested Instruction No.19, **"Claim" – Defined**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Requested Instruction No.20, **Definition of "False"**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

-ii-

Requested Instruction No.21, **"False or Fraudulent"** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Requested Instruction No.22, **Square Corners** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Requested Instruction No.23, **"Knowing" and "Knowingly" – Defined** . . . . . . . . . . . . . . . . 31

Requested Instruction No.24, **Deliberate Ignorance Defined** . . . . . . . . . . . . . . . . . . . . . . . . 32

Requested Instruction No.25, **"Reckless" and "Reckless Disregard" – Defined** . . . . . . . . . . 33

Requested Instruction No.26, **False Claims Under 31 U.S.C. § 3729(a)(1) –
The Elements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Requested Instruction No.27, **False Claims Under 31 U.S.C. § 3729(a)(2) –
The Elements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Requested Instruction No.28, **False Claims Under 31 U.S.C. § 3729(a)(3) –
Conspiracy** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Requested Instruction No.29, **Liability of the Contractor for Acts of Subcontractors** . . . . . 40

Requested Instruction No.30, **Materiality is Not an Element of a
False Claims Act Violation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Requested Instruction No.31, **No Damages Are Necessary** . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Requested Instruction No.32, **False Claims Act – Government Knowledge** . . . . . . . . . . . . . 43

Requested Instruction No.33, **False Claims Act – Waiver is Not a Defense to the
False Claims Act Claims** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Requested Instruction No.34, **False Claims Act – Estoppel is Not a Defense to the
False Claims Act Claims** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Requested Instruction No.35, **False Claims Act – Negligence is Not a Defense to the
False Claims Act Claims** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Requested Instruction No.36, **False Claims Act – Failure to Mitigate Damages
is Not a Defense to the False Claims Act Claims** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

Requested Instruction No. 37, **General Tool Company's Quality Assurance Manual** . . . . . . 49

Requested Instruction No.38, **Preface to Damages** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Requested Instruction No.39, **Damages – General** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Requested Instruction No.40, **Computation of Damages Under the False Claims Act** . . . . . 53

Requested Instruction No.41, **Anti-Retaliation Provision of the False Claims Act** . . . . . . . . 55

Requested Instruction No.42, **Elements of Relator Sanders' False Claims Act Retaliation Claim** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Requested Instruction No.43, **Elements of Public Policy Tort Claim** . . . . . . . . . . . . . . . . . . 57

Requested Instruction No.44, **Retaliation Damages** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

Requested Instruction No.45, **Duty to Deliberate** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

Requested Instruction No.46, **Deliberation and Verdict** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

**Special Interrogatories And Verdict Form** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

**Relators' Requested Instruction No. 1:  INTRODUCTION**

Members of the Jury:

Now that you have heard the evidence and the argument, it is my duty to instruct you about the applicable law.  It is your duty to follow the law as I will state it and to apply it to the facts as you find them from the evidence in the case.  Do not single out one instruction as stating the law, but consider the instructions as a whole.  You are not to be concerned about the wisdom of any rule of law stated by me.  You must follow and apply the law.

The lawyers have properly referred to some of the governing rules of law in their arguments.  If there is any difference between the law stated by the lawyers and as stated in these instructions, you are governed by my instructions.

Nothing I say in these instructions indicates that I have any opinion about the facts.  You, not I, have the duty to determine the facts.  You must perform you duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.[1]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[1] 3 O'Malley, Grenig, and Lee's <u>Federal Jury Practice And Instructions: Civil</u>, § 103.01 (West Pub. Co. 5th Ed. 2000).

-1-

**Relators' Requested Instruction No. 2: USE OF NOTES**

You may use the notes taken by you during the trial.  However, the notes should not be substituted for your memory.  Remember, notes are not evidence.  If you memory should differ from your notes, then you should rely on your memory and not on your notes.[2]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[2] 3 O'Malley, Grenig, and Lee's <u>Federal Jury Practice And Instructions: Civil</u>, § 103.02 (West Pub. Co. 5th Ed. 2000).

-2-

**Relators' Requested Instruction No. 3: ALL PERSONS EQUAL BEFORE THE LAW**

The parties in this case are two private individuals, Relators Roger Sanders and Roger

Thacker, and four corporations, Defendants Allison Engine Company, General Motors

Corporation, General Tool Company, and Southern Ohio Fabricators. You should consider and

decide this case as a dispute between persons of equal standing in the community, of equal

worth, and holding the same or similar situations in life. A corporation is entitled to the same

fair trial as a private individual. All persons, including corporations, stand equal before the law,

and are to be treated as equals.[3]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[3] 3 O'Malley, Grenig, and Lee's Federal Jury Practice And Instructions: Civil, § 103.12
(West Pub. Co. 5th Ed. 2000).

-3-

**Relators' Requested Instruction No. 4: CONSIDERATION OF THE EVIDENCE**

Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, all exhibits received in evidence regardless of who may have produced them, and all facts and events that may have been admitted or stipulated to and all facts and events that may have been judicially noticed.

Statements and arguments by the lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statement, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. However, when the lawyers on both sides stipulate or agree on the existence of a fact, you must, unless otherwise instructed, accept the stipulation and regard that fact as proved.

I may take judicial notice of certain facts or events. When I declare that I will take judicial notice of some fact or event, you must, unless otherwise instructed, accept my declaration as evidence and regard as proved the fact or event which has been judicially noticed.

Any evidence to which I have sustained an objection and evidence that I have order stricken must be entirely disregarded.[4]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[4] 3 O'Malley, Grenig, and Lee's <u>Federal Jury Practice And Instructions: Civil</u>, § 103.30 (West Pub. Co. 5th Ed. 2000).

-4-

**Relators' Requested Instruction No. 5: STANDARD OF PROOF**

The Relators have the burden in a civil action, such as this, to prove every essential element of Relators' claims by a preponderance of the evidence.  If Relators should fail to establish any essential element of Relators' claims by a preponderance of the evidence, you should find for the defendant as to that claim.

"Establish by a preponderance of the evidence" means to prove that something is more likely so than not so.  In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true.  This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt."  That is a stricter standard that applies in criminal cases.  It does not apply in civil cases such as this.  You should, therefore, put it out of your minds.[5]

---

[5] 3 O'Malley, Grenig, and Lee's <u>Federal Jury Practice And Instructions: Civil</u>, § 104.01 (West Pub. Co. 5th Ed. 2000).

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

**Relators' Requested Instruction No. 6:  DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Generally speaking, there are two types of evidence that are generally presented during trial—direct evidence and circumstantial evidence.  "Direct evidence" is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness.  "Indirect or circumstantial" evidence is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact.

As a general rule, the law makes no distinction between the weight or value to be given to either direct or circumstantial evidence.  Nor is a greater degree of certainty required of circumstantial evidence.  You are simply required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.[6]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[6] 3 O'Malley, Grenig, and Lee's <u>Federal Jury Practice And Instructions: Civil</u>, § 104.05 (West Pub. Co. 5th Ed. 2000).

**Relators' Requested Instruction No. 7:  CREDIBILITY OF WITNESSES**

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves.  You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief.  Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness' ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters.  Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony.  Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves.  In short, you may accept or reject the testimony of

-8-

any witness in whole or in part.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact.  You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.[7]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

_____

[7] 3 O'Malley, Grenig, and Lee's <u>Federal Jury Practice And Instructions: Civil</u>, § 105.01 (West Pub. Co. 5th Ed. 2000).

**Relators' Requested Instruction No. 8:  PARTY NOT REQUIRED TO CALL WITNESSES**

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.[8]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[8] 3 O'Malley, Grenig, and Lee's <u>Federal Jury Practice And Instructions: Civil</u>, § 105.11 (West Pub. Co. 5th Ed. 2000).

**Relators' Requested Instruction No. 9: CHARTS AND SUMMARIES**

Ceratin charts and summaries have been shown to you in order to help explain facts disclosed by books, records, and other documents that are in evidence in the case.  These charts or summaries are not themselves evidence or proof of any facts.  If the charts or summaries do not correctly reflect facts or figures shown by the evidence in the case, you should disregard them.

In other words, the charts or summaries are used only as a matter of convenience.  To the extent that you find they are not truthful summaries of facts or figures shown by the evidence in the case, you are to disregard them entirely.[9]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[9] 3 O'Malley, Grenig, and Lee's <u>Federal Jury Practice And Instructions: Civil</u>, § 104.50 (West Pub. Co. 5th Ed. 2000).

**Relators' Requested Instruction No. 10:  DEPOSITIONS**

During the trial, certain testimony has been presented by way of deposition.  The

deposition consisted of sworn, recorded answers to questions asked of the witness in advance of

the trial by one or more of the attorneys for the parties to the case.  The testimony of a witness

who, for some reason is not present to testify from the witness stand may be presented in writing

under oath or on a videotape.  Such testimony is entitled to the same consideration and is to be

judged as to credibility, and weighed, and otherwise considered by you, insofar as possible, in the

same way as if the witness had been present and had testified from the witness stand.[10]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[10] 3 O'Malley, Grenig, and Lee's <u>Federal Jury Practice And Instructions: Civil</u>, § 105.02
(West Pub. Co. 5th Ed. 2000).

**Relators' Requested Instruction No. 11: STIPULATIONS AND ADMISSIONS**

When a party stipulates or admits as to the existence of a fact, you must accept the

stipulation or admission as legal evidence, and regard the fact as proven. In this case the parties

have agreed to certain facts that they all believe are true. Therefore, you must treat the following

facts as having been proved:

1. On April 2, 1985, the United States Navy awarded to Bath Iron Works contract
   No. 000-24-85-C-2144 for the construction of the first in a series of new United
   States Navy Guided Missile Destroyers. This contract, the "lead shipyard
   contract," was awarded to Bath Iron Works for the construction of the lead ship,
   the DDG-51, *USS Arleigh Burke* ("in the DDG" label, the "DD" designates the
   ship class as a destroyer while the "G" designates the ship as one whose main
   armament is guided missiles).[11]

2. On May 26, 1987 the United States Navy awarded to Ingalls Shipbuilding, Inc.,
   Contract No. N-000-24-87-C-2256 for the construction of the second in this series
   of new United States Navy Guided Missile Destroyers, the DDG-52, *USS Barry*.[12]

3. Since awarding the first two contracts to Bath and Ingalls, the United States Navy
   has continued to award several more contracts to these two shipyards for the
   continued production of more than 50 new Arleigh Burke Class Guided Missile
   Destroyers.[13]

4. Each DDG-51 Class Destroyer is equipped with three Gen-Sets. Each Gen-Set is
   approximately 28.4 feet long, 7.8 feet wide and 10 feet in height.[14]

5. From approximately 1985 to the present, either Defendant General Motors
   Corporation or Defendant Allison Engine Company, Inc. ("Allison"), or a
   successor thereto, has been a subcontractor responsible for providing the Gen-Sets
   to be installed in the United States Navy's Arleigh Burke class destroyers being

---

[11] Doc. 494, Final Pretrial Order, § III(B)(1) (Uncontroverted Facts), ¶ 1.

[12] *Id.* at ¶ 2.

[13] *Id.* at ¶ 3.

[14] *Id.* at ¶ 4.

-13-

built by Bath or Ingalls.[15]

6.      Between approximately 1983 and 1993 there was an Allison Gas Turbine
        Division of General Motors.  On December 1, 1993, General Motors sold
        substantially all assets of the Allison Gas Turbine Division to a newly formed
        corporation that subsequently became Allison Engine Company, Inc.  On March
        24, 1995 Allison Engine Company, Inc. was acquired by a subsidiary of Rolls
        Royce, P.L.C., and subsequently Allison Engine Company changed its name to
        Rolls Royce Corporation.[16]

7.      Defendant General Tool Company is an Ohio corporation with its principal place
        of business in Cincinnati, Ohio.  General Tool is a subcontractor of Allison in the
        manufacture and assembly of Gen-Sets for the United States Navy Destroyers.[17]

8.      Allison's contracts with Bath and Ingalls contained certain requirements.  Allison
        certifies that each Gen-Set was manufactured in accordance with all applicable
        requirements, drawings, and procedures, except as otherwise stated.[18]

9.      Allison contracted with General Tool to provide packaging services for the Gen-
        Sets.  Allison provides its own gas turbine engine for use in the Gen-Sets and it
        purchases certain other component parts for the Gen-Sets and has them shipped to
        General Tool.  General Tool enters into subcontracts and makes or obtains the
        remaining assemblies, components, and piece parts for the Gen-Sets.[19]

10.     Allison's subcontracts and purchase orders with General Tool impose certain
        requirements on General Tool in order to fulfill Allison's contractual obligations
        to Bath and Ingalls.[20]

11.     Southern Ohio Fabricators is an Ohio corporation and was, until 1996, involved in
        the construction and fabrication of the bases and enclosures for the Gen-Sets to be
        installed in United States Navy destroyers pursuant to purchase orders issued by

---

[15] *Id.* at ¶ 5.

[16] *Id.* at ¶ 8.

[17] *Id.* at ¶ 9.

[18] *Id.* at ¶ 11.

[19] *Id.* at ¶ 12.

[20] *Id.* at ¶ 13.

-14-

General Tool. Pursuant to General Tool purchase orders, Southern Ohio Fabricators provided to General Tool, Gen-Set bases, enclosures, panels, doors, windows, and miscellaneous parts for assembly by General Tool for Gen-Sets to be installed later in United States Navy destroyers.[21]

12. Since the first contracts, Bath and Ingalls have continued to issue purchase orders to Allison for the purchase of the Gen-Sets.[22]

13. Purchase orders from Bath and Ingalls to Allison for Gen-Sets require compliance with Purchase Specification 450-310-01A, as amended.[23]

14. Certain of the purchase orders issued by Allison to General Tool for packaging of gen-sets incorporated the terms contained in the Terms of Business Agreement between Allison and General Tool, incorporated the terms of the applicable Allison Supplier Quality Manual, and obligated General Tool to accomplish work in accordance with the terms of the applicable Allison Statement of Work. Certain of the purchase orders issued by Allison to General Tool for packaging of gen-sets obligated General Tool to comply with MIL-Q-9858A and, as applicable, MIL-I-45208A and, as applicable, to submit to Allison a Certification of Conformance or Conformance Report.[24]

15. Certain of the applicable Terms of Business Agreement between Allison and General Tool, Allison Supplier Quality Manuals, and/or Allison Statements of Work provide: (1) that General Tool's services shall conform to applicable drawing requirements; (2) that General Tool shall maintain an inspection system to comply with its subcontract with Allison; (3) that General Tool must establish, maintain, date, sign, and make available for review by Allison written procedures covering all phases of the process used to manufacture and control production of gen-sets, including initial planning, blue print and specification control, subcontractor control, material handling, inspection function, sampling, gage control, software, shipping, corrective action, and records; and that (4) General Tool requests for changes to drawings shall be submitted to Allison.[25]

---

[21] *Id.* at ¶ 15.

[22] *Id.* at ¶ 16.

[23] *Id.* at ¶ 17.

[24] *Id.* at ¶ 22.

[25] *Id.* at ¶ 23.

16.     Southern Ohio Fabricators provided General Tool with gen-set bases, enclosures, panels, doors, windows, and miscellaneous parts for which General Tool paid Southern Ohio Fabricators pursuant to purchase orders and said purchase orders contained certain requirements for said construction. Upon delivery of the above-described items, Southern Ohio Fabricators provided "Certificates of Conformance" to General Tool that such units had been inspected in accordance with approved inspection procedures and found to meet the applicable requirements set forth on drawings and purchase orders.[26]

17.     Between 1988 and 1994, Allison and General Tool manufactured, assembled and delivered to the United States Government approximately 52 gen-sets for installation in 17 United States Navy Destroyers. Beginning in 1994 through 2000, Allison and General Tool manufactured, assembled and delivered to the United States Government over 50 additional gen-sets for installation in United States Navy Destroyers.[27]

18.     Allison delivered or was under contract to deliver three gen-sets for installation on Navy Destroyers up to and including DDG-98. Allison anticipates delivering, in total, 166 or more gen-sets to Bath and Ingalls.[28]

19.     Certain of Allison's purchase orders to General Tool obligated General Tool to comply with MIL-Q-9858A and applicable drawing requirements.[29]

20.     One key component of an assembled gen-set is the gearbox. Allison purchased the gearboxes for the Series 9130 gen-sets from Westech, Inc. of California.[30]

21.     General Tool was obligated to comply with MIL-Q-9858A.[31]

22.     General Tool was required by Allison's Statement of Work to require Southern Ohio Fabricators to have welders and NDT ("Non-Destructive Testing) inspectors qualified in accordance with MIL-STD-278 and MIL-STD-248. Beginning in

---

[26] *Id.* at ¶ 25.

[27] *Id.* at ¶ 26.

[28] *Id.* at ¶ 27.

[29] *Id.* at ¶ 31.

[30] *Id.* at ¶ 34.

[31] *Id.* at ¶ 36.

1988, General Tool conducted certain quality assurance audits of Defendant Southern Ohio Fabricators. On certain units, and for a limited period of time, Southern Ohio Fabricators used certain welders who were not currently certified under MIL-STD-278 and MIL-STD-248 to perform certain welds.[32]

23.     Southern Ohio Fabricators agreed to be subject to the requirements of MIL-I-45208A and  MIL-STD-45662.[33]

24.     The Series AG9130 gen-set was redesigned during approximately mid-1992 through mid-1994. This redesign resulted in the Series AG9130 gen-sets being replaced by the Series AG9140 gen-sets.[34]

25.     Allison knew that the subcontracts or purchase orders under which it provided gen-sets to Bath or Ingalls were issued by Bath or Ingalls pursuant to prime contracts with the Navy.[35]

26.     Allison knew it was obligated to comply with all applicable requirements contained in its subcontracts with Bath and Ingalls.[36]

27.     General Tool knew it was obligated to comply with all requirements contained in its subcontracts, purchase orders and Statements of Work with Allison.[37]


GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[32] *Id.* at ¶ 37.

[33] *Id.* at ¶ 38.

[34] *Id.* at ¶ 40.

[35] *Id.* at ¶ 44.

[36] *Id.* at ¶ 45.

[37] *Id.* at ¶ 47.

**Relators' Requested Instruction No. 12: EXPERT WITNESSES**

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. An exception to this rule exists for "expert witnesses." An expert witness is a person who, by education and experience has become expert in some art, science, profession, or calling. Expert witnesses may state their opinions as to matters in which they profess to be expert, and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case, and should give it such weight as you think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, of if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.[38]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[38] 3 O'Malley, Grenig, and Lee's <u>Federal Jury Practice And Instructions: Civil</u>, § 104.40 (West Pub. Co. 5th Ed. 2000).

-18-

**Relators' Requested Instruction No. 13: NO TRANSCRIPT AVAILABLE**

At the end of the trial, you will have to make your decision based on what you remember about the evidence. You will not have a written transcript to read, and it is difficult and time-consuming for the reporter to read or play back testimony. I urge you to pay close attention to the testimony as it is presented at the trial.[39]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[39] 3 O'Malley, Grenig, and Lee's <u>Federal Jury Practice And Instructions: Civil</u>, § 101.17 (West Pub. Co. 5th Ed. 2000).

**Relators' Requested Instruction No. 14: JURY CONDUCT**

To insure fairness, you must obey the following rules:

1.      Do not talk to each other about this case or about anyone involved with this case until the end of the trial when you go to the jury room to decide on your verdict.

2.      Do not talk with anyone else about this case or about anyone involved with this case until the trial has ended and you have been discharged as jurors.  "Anyone else" includes members of your family and friends. You may tell people you are a juror, but do not tell them anything else about the case.

3.      Outside the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it until the trial has ended.  If someone should try to talk to you about the case during the trial, please report it to me immediately.

4.      During the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case—you should not even pass the time of day with any of them.  It is important not only that you do justice in this case, but that you also give the appearance of doing justice.

5.      Do not read any news stories or articles about the case, or about anyone involved with it, or listen to any radio or television reports about the case or anyone involved with it.

6.      Do not do any research, such as checking dictionaries or reviewing any information on the internet, or make any investigation about the case on your own.

7.      Do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and you and the other jurors have discussed all the evidence.

-20-

8.      If you need to tell me something, simply give a signed note to the marshal, bailiff

or clerk to give to me.[40]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[40] 3 O'Malley, Grenig, and Lee's <u>Federal Jury Practice And Instructions: Civil</u>, § 101.11 (West Pub. Co. 5th Ed. 2000).

**Relators' Requested Instruction No. 15: CORPORATE AGENTS AND RESPONDEAT SUPERIOR**

Defendants Allison Engine Company, General Motors Corporation, General Tool Company, and Southern Ohio Fabricators are corporations.  A corporation may act only through natural persons as its agents or employees and, in general, any agent or employee of a corporation may bind the corporation by the agent's or employee's actions done and statements made while acting within the scope of the agent's or employee's authority as delegated to the agent or employee by the corporation or within the scope of the agent's or employee's duties as an employee of the corporation.[41]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[41] 3 O'Malley, Grenig, and Lee's <u>Federal Jury Practice And Instructions: Civil</u>, § 178.22 (West Pub. Co. 5th Ed. 2000).

**Relators' Requested Instruction No. 16: IMPUTED KNOWLEDGE**

An employee's knowledge of falsity is imputed to the employee's employer when the employee was acting within the course of employment and for the benefit of the employer.[42]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

_____

[42] 3 O'Malley, Grenig, and Lee's <u>Federal Jury Practice And Instructions: Civil</u>, § 178.21 (West Pub. Co. 5th Ed. 2000).

**Relators' Requested Instruction No. 17: NATURE OF THE ACTION**

The Relators, Roger Sanders and Roger Thacker, allege that from 1986 through 1996,
Defendants General Motors Corporation, Allison Engine Company, General Tool Company, and
Southern Ohio Fabricators presented or caused to be presented claims against the Arleigh Burke
Class Destroyer Program, with government contractors Bath Iron Works and Ingalls
Shipbuilding, when the Defendants knew that their claims were false or fraudulent.  The
Defendants deny these allegations.[43]

In 1863, Congress enacted and President Abraham Lincoln signed the False Claims Act,
31 U.S.C. § 3729 *et seq.*  Among its many provisions, the False Claims Act allows a private
citizen to bring an action on behalf of the United States Government against any Government
contractor who knowingly presented or caused to be presented a false claim for payment to the
United States, or who knowingly made or used or caused to be made or used a false record or
statement to get a false claim paid or approved by the United States.[44]  The private citizen who
brings the action is called the "Relator" and these cases are known as *qui tam* cases.  In *qui tam*
cases, if you award damages to the United States, the Court will award a portion of the recovery
to the Relator, but the majority of damages are returned to the United States Treasury.[45]

_____

[43] 3 O'Malley, Grenig, and Lee's <u>Federal Jury Practice And Instructions: Civil</u>, § 178.01
(West Pub. Co. 5th Ed. 2000).

[44] 31 U.S.C. § 3730(b); *See also United States ex rel. Taxpayers Against Fraud v. GE*, 41
F.3d 1032, 1035 (6th Cir. 1994) (A relator "may bring a private civil action on behalf of himself
and on behalf of the United States government."); *United States ex rel. Kelly v. Boeing*, 9 F.3d
743, 748 (9th Cir. 1993), *cert. denied*, 510 U.S. 1140 (1994) ("The express language of the
[False Claims Act] gives relators the right to bring suit on behalf of the government.").

[45] 31 U.S.C. § 3730 (d)(2) (if the Government does not intervene, the relator "shall
receive an amount which the court decides is reasonable . . . the amount shall be not less than 25

-24-

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

percent and not more than 30 percent of the proceeds of the action . . . ”).  *Cf. United States ex rel. Doyle v. Health Possibilities, P.S.C.*, 207 F.3d 335, 340-341 (6th Cir. 2000) (“The relator's right to recovery exists solely as a mechanism for deterring fraud and returning funds to the federal treasury.").

**Relators' Requested Instruction No. 18: OVERVIEW OF RELATORS' FALSE CLAIMS ACT CLAIMS**

In this case, Relators Roger Sanders and Roger Thacker bring this action against the Defendants Allison Engine Company, General Motors Corporation, General Tool Company, and Southern Ohio Fabricators under the False Claims Act, claiming that these defendants violated the False Claims Act in connection with their construction of Gen-Sets that have been or will be installed in the Navy's new fleet of Arleigh Burke destroyers.  Specifically, the Relators allege that the defendants violated three provisions of the False Claims Act:[46]

(1) That all Defendants violated Section 3729(a)(1) of the False Claims Act by knowingly presenting, or causing to be presented, false or fraudulent claims for payment to the United States.

(2) That Defendants General Motors, Allison Engine Company and Southern Ohio Fabricators violated Section 3729(a)(2) of the False Claims Act by knowingly making or using, or causing to be made or used, false records or statements to get false or fraudulent claims paid by the United States.

(3) That Defendants General Motors Corporation, Allison Engine Company and Ggeneral Tool Company violated Section 3729(a)(3) of the False Claims act by conspiring to defraud the United States to get false or fraudulent claims paid.


GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[46] Doc 80, Second Amended Complaint, Counts I, II and III.

**Relators' Requested Instruction No. 19:  "CLAIM" - DEFINED**

Under the False Claims Act, a "claim for payment" includes any request or demand, whether under a contract or otherwise, for money or property, which is made by a contractor if the United States provides any portion of the money or property which is requested or demanded.[47]  Invoices and requests for progress payments are examples of claims.[48]

Therefore, the fact that the defendants were subcontractors on this Navy project and thus did not present claims for payment directly to the United States is not important.  I instruct you that the invoices submitted by the defendants for payment for their work on the Gen-Set project are "claims for payment," as that term is defined in the False Claims Act.  Each separate invoice by the defendants is a separate claim for purposes of the False Claims Act.  It is up to you to decide how many of the defendants' invoices, if any, were "false."

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[47] 31 U.S.C. § 3729(c).

[48] *United States v. Bornstein*, 423 U.S. 303 (1976) (request for payment constitutes a "claim"); *United States v. Neifert-White*, 390 U.S. 228, 233 (1968) (the term "claim" under the False Claims Act is to be broadly construed and encompasses "all fraudulent attempts to cause the Government to pay out sums of money"); *United States ex rel. Marcus v. Hess*, 317 U.S. 537 (1943) (collusive bid on government contract constituted claim); *United States ex rel. Augustine v. Century Health Servs.*, 289 F.3d 409, 415 (6th Cir.2002) (claim is false when a defendant fails to provide notice that it was not complying with Medicare regulations as required by contract but continued to receive Government reimbursement for services rendered); *United States ex rel. Schwedt v. Planning Research Corp.*, 59 F.3d 196, 199 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1068 (1996) (holding that false progress reports are false "claims" under the statute, and that "each individual false claim or statement triggers the statute's civil penalty"); H.R. Rep. No. 660, 99th Cong., 2d Sess. 21 (1986) (the most common form of a false claim is "a claim for goods or services not provided or provided in violation of a contract term").

**Relators' Requested Instruction No. 20: DEFINITION OF " FALSE"**

A claim is "false" if it is an assertion that is untrue when made or when used.[49]  A claim

may be false not only by an affirmative misrepresentation of a fact, but also by the failure to

disclose facts without which the claim may be considered misleading.  Therefore, you need not

find that a statement or claim by a defendant was explicitly false for it to be false for purposes of

the False Claims Act.  An implicit false representation is sufficient.[50] A Government contractor

who fails to perform a requirement of its contract, and then seeks or receives payment as if it

fully performed its contract without disclosing the nonperformance, has presented a "false"

claim.[51]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[49] 3 O'Malley, Grenig, and Lee's Federal Jury Practice And Instructions: Civil, § 178.30 (West Pub. Co. 5th Ed. 2000).

[50] *United States ex rel. Augustine v. Century Health Services*, 289 F.3d 409, 415 (6th Cir. 2002)("[A] false implied certification may constitute a false or fraudulent claim even if the claim was not expressly false when it was filed."); *United States ex rel. Taxpayers Against Fraud v. The Singer Company*, 889 F.2d 1327, 1328 (4th Cir. 1989) (failure to disclose is actionable under the False Claims Act).

[51] *United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F. 3d 296, 304 (6th Cir. 1998);

-28-

**Relators' Requested Instruction No. 21: " FALSE OR FRAUDULENT"**

The False Claims Act uses the word "or" when it prohibits "false or fraudulent" claims. A claim is "fraudulent" if it is an assertion that is known to be untrue.[52]  Under the False Claims Act, a claim need not be fraudulent so long as it is false.[53]  You should interpret the phrase "false or fraudulent" broadly.[54]  If you find that a claim is either false or fraudulent, you must find liability under the False Claims Act if the other elements are proven.[55]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[52] 3 O'Malley, Grenig, and Lee's <u>Federal Jury Practice And Instructions: Civil</u>, § 178.31 (West Pub. Co. 5th Ed. 2000).

[53] *United States v. Cooperative Grain & Supply Co.*, 476 F.2d 47, 60 (8th Cir. 1973) ("[w]e have decided that a false claim, not only a fraudulent claim, is actionable under the Act...").

[54] *United States ex rel. Augustine v. Century Health Servs.*, 289 F.3d 409, 413 (6th Cir. 2002), *reh'g enbanc denied*, 2002 U.S. App. LEXIS 16358 (6th Cir. July 26, 2002)

[55] *United States v. Neifert-White Co.*, 390 U.S. 228 (1968); *United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 301 (6th Cir. 1998) (invoices are "false" because they incorrectly represented that product conformed to the contract); *United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991), *cert. denied*, 519 U.S. 865 (1996); *United States v. Fleming*, 336 F.2d 475 (10th Cir. 1964), *cert. denied*, 380 U.S. 907 (1965).

-29-

**Relators' Requested Instruction No. 22:  SQUARE CORNERS**

You are instructed that parties that contract with the Government are held to the letter of the contract, regardless of whether the terms appear burdensome, whether the contract could be accomplished in some other way, or whether the item provided is similar—or even just as good as—the product specified in the contract.[56]  Those who contract with the Government must turn square corners when they deal with the Government.[57]

The mere fact that the item supplied under the contract is as good as the one contracted for does not relieve a defendant of liability under the False Claims Act if the item does not conform to the express contract terms.[58]  The Government is entitled to receive the confidence that comes with a product that was made to the precise requirements of the contract.[59]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[56] *United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F. 3d 296, 302 (6th Cir. 1998); *see also United States ex rel. Varljen v. Cleveland Gear Co.*, 250 F. 3d 426, 430 (6th Cir. 2001); Doc. 453, Order, at 7.

[57] *Id.  See also United States ex rel. Augustine v. Century Health Services, Inc.*, 289 F. 3d 409, 413 (6th Cir. 2002).

[58] *United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 302 n.4 (6th Cir. 1998), *quoting United States v. Aerodex, Inc.*, 469 F. 2d 1003, 1007 (5th Cir. 1972).

[59] *United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 305 n.8 (6th Cir. 1998).

-30-

**Relators' Requested Instruction No. 23:  "KNOWING" AND "KNOWINGLY" -
DEFINED**

Under the False Claims Act, the terms "knowing" and "knowingly" meant that a person

(a) has actual knowledge of the true information, or (b) acts with deliberate ignorance of the truth

or falsity of the information, or (c) acts in reckless disregard of the truth or falsity of the

information.

It is not necessary, however, for Relators to prove that the defendants acted with an intent

to defraud anyone.[60]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[60] 3 O'Malley, Grenig, and Lee's <u>Federal Jury Practice And Instructions: Civil</u>, § 178.32
(West Pub. Co. 5th Ed. 2000); 31 U.S.C. § 3729(b) (". . . no proof of specific intent to defraud is
required.")

**Relators' Requested Instruction No. 24:  DELIBERATE IGNORANCE DEFINED**

Relators can prove knowledge by showing "deliberate ignorance."  This means that a defendant deliberately closed its eyes to what would otherwise have been apparent to that defendant.  A finding that a defendant purposely avoided learning all the facts, or suspected a fact but refused to confirm it, also constitutes deliberate ignorance.  A defendant's knowledge of a fact may be inferred from evidence that it intentionally closed its eyes to the existence of the fact.[61]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[61] 31 U.S.C. § 3729(b); *United States v. Krizek*, 111 F.3d 934, 941 (D.C. Cir. 1997), *cert. denied*, 534 U.S. 1067 (2001); *United States v. Gruenberg*, 989 F.2d 971, 974 (8th Cir. 1993), *cert. denied*, 510 U.S. 873 (1993); *United States v. Mack*, 2000 U.S. Dist. LEXIS 17367 (S.D. Tex. 2000) (False Claims Act intended to cover "persons who ignore obvious warning signs") (*citing UMC Electronics Co. v. United States*, 43 Fed. Cl. 776, 793 (Fed. Cl. 1999)).

**Relators' Requested Instruction No. 25: "RECKLESS" AND "RECKLESS DISREGARD" - DEFINED**

Relators can also prove knowledge by showing "reckless disregard." "Reckless" means with indifference to consequences. If a person makes a representation without knowing whether it is true or not, or makes it without regard to its truth or falsity or to its possible consequences, he must be found to have made the representation recklessly.

Thus, a person acts with "reckless disregard" by making a representation or statement without knowing whether it is true or not, but rather with an absence of concern regarding its truth or falsity. If such a representation or statement is made, it must be found to have been submitted with knowledge of its falsity.[62]

Therefore, if any defendant knowingly supplied nonconforming Gen-Sets based on a belief that they were just as good as the Gen-Sets specified in their contracts, and then submitted or caused to be submitted claims for payment that represented—either expressly or impliedly—that the Gen-Sets conformed to all contract requirements, you must find that such

---

[62] 31 U.S.C. § 3729(b); *See also United States ex rel. Augustine v. Century Health Servs.*, 289 F.3d 409, 415-16 (6th Cir. 2002), *reh'g enbanc denied*, 2002 U.S. App. LEXIS 16358 (6th Cir. July 26, 2002) (knowledge found though defendants allege that they did not know submissions were false); *United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 304 (6th Cir. 1998) (claim stating that product conforms to contract requirements for inspection when product was not inspected constitutes "reckless disregard"); *United States ex rel. Aakhus v. Dynacorp*, 136 F.3d 676 (10th Cir. 1998) (defendant who submits a false claim to the Government through gross negligence should be held liable under the False Claims Act); *United States v. Krizek*, 859 F. Supp. 5 (D.D.C. 1994), *aff'd in relevant part*, 111 F.3d 934, 942 (D.C. Cir. 1997) (knowledge of falsity under the FCA is established where defendant acted in "gross negligence where the submitted claims to the Government are prepared in such a sloppy or unsupervised fashion that resulted in overcharges to the Government").

defendant violated the False Claims Act.[63]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[63]*United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 304 (6th Cir. 1998).

**Relators' Requested Instruction No. 26: FALSE CLAIMS UNDER 31 U.S.C. § 3729(a)(1) - THE ELEMENTS**

Relators allege that the defendants violated Section 3729(a)(1) of the False Claims Act by presenting false claims for payment for their work associated with the Gen-Set Project.  In this case, in order to prevail on their claims under Section 3729(a)(1), Relators must prove by a preponderance of the evidence that:

1.    A defendant presented, or caused to be presented, a claim for payment that was false or fraudulent; and

2.    That defendant knew that the claim was false or fraudulent, or acted with deliberate ignorance or reckless disregard as to the truth or falsity of the claim.

Under Section 3729(a)(1), an explicitly false statement is not necessary to prove a claim for the violation of the False Claims Act.  A Government contractor who knowingly fails to perform a requirement of its contract, and then seeks or receives payment as if it fully performed without disclosing the nonperformance, has knowingly presented a false claim to the United States and is liable.[64]

Relators do not need to prove that the United States was damaged in order to prove their claims under Section 3729(a)(1).[65]  Nor do they need to prove that there was a specific intent to

---

[64]  *United States ex rel. Augustine v. Century Health Servs.*, 289 F.3d 409, 415 (6th Cir. 2002), *reh'g enbanc denied*, 2002 U.S. App. LEXIS 16358 (6th Cir. July 26, 2002) (claim is false when a defendant fails to provide notice that it was not complying with Medicare regulations as required by contract but continued to receive Government reimbursement for services rendered); *United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 304 (6th Cir. 1998) (claim stating that product conforms to contract requirements for inspection when product was not inspected constitutes "reckless disregard").

[65]  *United States ex rel. Varljen v. Cleveland Gear Co.*, 250 F. 3d 426, 430 (6th Cir. 2001).

-35-

defraud by any Defendant.[66]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[66] 31 U.S.C. § 3729(b).

**Relators' Requested Instruction No. 27: FALSE CLAIMS UNDER 31 U.S.C. § 3729(a)(2) - THE ELEMENTS**

Relators also allege that the defendants violated Section 3729(a)(2) of the False Claims Act by knowingly using false records or statements to get false claims paid. In this case, in order to prevail on their claims under Section 3729(a)(2), Relators must prove by a preponderance of the evidence that:

(1)     A defendant made or used, or caused to be made or used, a record or statement to get a false claim paid or approved;

(2)     The record or statement was false or fraudulent; and

(3)     The defendant knew that the record or statement was false or fraudulent, or acted with deliberate ignorance or reckless disregard as to whether the record or statement was true or false.

Though they sound very similar, there is an important difference between Sections (a)(1) and (a)(2) of the False Claims Act. The difference involves the event that triggers liability. Under Section (a)(1), liability is triggered by knowingly presenting, or causing to be presented, a false claims for payment—even if there is no affirmative false statement when the claim is made. On the other hand, liability under Section (a)(2) does require Relators to prove that there was an affirmative false statement or record made or used by the defendants to get a false claim paid.[67] In this case, the affirmative statements or records that Relators contend are false, and thus trigger liability under Section (a)(2), are the Certificates of Conformance signed by defendants Allison and Southern Ohio Fabricators.

---

[67] *See United States ex rel. Pickens v. Kanawha River Towing*, 916 F. Supp. 702, 707 (S.D. Ohio 1996).

-37-

It is up to you to decide how many, if any, of those Certificates of Conformance were false records or statements.  In addition, as with claims brought under Section (a)(1), Relators do not need to prove that the United States was damaged in order to prevail under Section 3729(a)(2).[68]  Nor do they need to prove that there was a specific intent to defraud by any Defendant.[69]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[68] *United States ex rel. Varljen v. Cleveland Gear Co.*, 250 F. 3d 426, 429, 431 (6th Cir. 2001).

[69] 31 U.S.C. § 3729(b).

**Relators' Requested Instruction No. 28: FALSE CLAIMS UNDER 31 U.S.C. § 3729(a)(3) - THE ELEMENTS**

Relators Sanders and Thacker also allege that defendants Allison and General Tool violated Section 3729(a)(3) of the False Claims Act by conspiring to get false claims paid for non-conforming Gen-Set gearboxes made by Westech. In this case, in order to prevail on their claims under Section 3729(a)(3), Relators must prove by a preponderance of the evidence that:

(1) Allison conspired with General Tool;

(2) to defraud the United States by getting a false or fraudulent claim allowed or paid; and,

(3) one or more conspirators performed any act to effect the object of the conspiracy.[70]

Express agreement among all the conspirators is not necessary to find the existence of a conspiracy. Each conspirator need not have known all the details of the plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged co-conspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy.[71]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[70] Doc. 339, Report and Recommendation, at 3, *adopted in its entirety* Doc. 433, Order.

[71] *United States ex rel. Augustine v. Century Health Servs.*, 136 F. Supp. 2d 876, 888 (M.D. Tenn. 2000), *aff'd* 289 F.3d 409 (6th Cir. 2002) (*citing United States v. Murphy*, 937 F.2d 1032, 1039 (6th Cir. 1991)).

-39-

**Relators' Requested Instruction No. 29:  LIABILITY OF THE CONTRACTOR FOR ACTS OF SUBCONTRACTORS**

Southern Ohio Fabricators was a subcontractor of General Tool Company.  In turn, General Tool Company was a subcontractor of Allison Engine Company and General Motors Corporation.

A contractor may be held liable under the False Claims Act for the acts of its subcontractor, if (1) the contractor delegated work to be performed under a Government contract to the subcontractor; (2) the contractor had "knowledge," or acted with deliberate ignorance or reckless disregard, that the subcontractor was violating a requirement of the Government contract; and (3) the contractor sought or received payment from the United States as though the subcontractor had complied with the requirements of the United States contract.[72]

A Government contractor cannot avoid its responsibilities under a contract merely by delegating its duties to subcontractors.[73]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

_____

[72] *See United States v. Bornstein*, 423 U.S. 303. 309 (1976).

[73] *Olson Plumbing & Heating Co. v. United States*, 602 F.2d 950, 957 (Ct. Cl. 1979) ("The contractor alone is responsible for the deficiencies of its suppliers and its subcontractors absent a showing of impossibility."); *Appeal of Luster-On Products, Inc.*, ASBCA No. 23367, 1980 ASBCA LEXIS 269; 80-2 BCA (CCH) ¶14,777 (1980), (slip op. at pp. 17-18) *citing Basic Engineering & Construction Co., Inc.*, ASBCA No. 12977, 68-1 BCA ¶6915 (1968) ("[A] prime contractor is responsible for assuring that all work required under a contract is furnished, and further, that such contractor cannot relieve itself of this responsibility merely by subcontracting a part of the work."); *Lombard Corp.*, ASBCA Nos. 18206, 18207, 75-1 BCA ¶11, 209 at ¶53,376 (1975); *Fullerton Construction Co.*, ASBCA No. 11618, 67-1 BCA ¶6301 at 29, 171; *see also*, *R. J. Home Improvements, Inc.*, HUD, BCA No. 75-67-C20, 79-2 NBA ¶13993 at 68,700 (1979).

**Relators' Requested Instruction No. 30:  MATERIALITY IS NOT AN ELEMENT OF A FALSE CLAIMS ACT VIOLATION**

If you find that any defendant knowingly submitted, or caused to be submitted, false claims for payment or approval, then such defendant is liable under the False Claims Act regardless of whether the false claim was material to the contract or to payment.

Likewise, if you find that any defendant knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid, then such defendant is liable under the False Claims Act regardless of whether the false record or statement was material to the contract or to payment.[74]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[74] *United States ex rel. Roby v. The Boeing Co.*, 184 F.R.D. 107, 112 (S.D. Ohio 1998); *see also United States v. Wells*, 519 U.S. 482 (1997); *United States v. Nash*, 175 F.3d 429, 434 (6th Cir.), *cert. denied*, 528 U.S. 888 (1999).

**Relators' Requested Instruction No. 31:  NO DAMAGES ARE NECESSARY FOR FALSE CLAIMS ACT CLAIMS**

You do not need to find that the United States suffered any actual damages in this case in order to find any defendant liable for violating the False Claims Act.  Relators do not need to prove that the United States was actually damaged in order to prevail on their claims under the False Claims Act.[75]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[75] Doc. 463, Order, at 7; *United States ex rel. Varljen v. Cleveland Gear Co.*, 250 F. 3d 426, 429, 431 (6th Cir. 2001).

**Relators' Requested Instruction No. 32: FALSE CLAIMS ACT -- GOVERNMENT KNOWLEDGE**

The defendants allege that one or more persons within the United States Navy knew

certain of the facts that Relators contend were misrepresented or concealed by the defendants.

You are instructed that, even if certain persons within the Navy knew the true facts, that such

knowledge is not a defense to the Relators' claims under the False Claims Act. Even if one Navy

employee knew the truth does not mean that the Navy authorized the defendants to make false

statements or claims. Each of the defendants had an obligation to tell the truth, and a failure to

do so is not excused by the allegation that one or more Navy employees knew that a defendant's

statements or claims were false. In other words, if the defendants knew that their claims were

false, Government knowledge of the true facts is no defense on the issue of liability.[76]

---

[76] *United States ex rel. Varljen v. Cleveland Gear Co.*, 250 F. 3d 426, 430 (6th Cir. 2001), *citing United States v. Aerodex, Inc.*, 469 F.2d 1003, 1009 (5th Cir. 1972) ("the government's inspection and acceptance of a product do not absolve a contractor from liability" under the False Claims Act); *United States ex rel. Kreindler & Kreindler v. United Technologies*, 985 F.2d 1148, 1156 (2d Cir. 1993), cert. denied, 508 U.S. 973 (1993) ("the statutory basis for an FCA claim is the defendant's knowledge of the falsity of its claim . . . which is not automatically exonerated by any overlapping knowledge by Government officials"); *United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991), *cert. denied*, 519 U.S. 865 (1996) ("The requisite intent is the knowing presentation of what is known to be false. That the relevant Government officials know of the falsity is not itself a defense."); *United States ex rel. Mayman v. Martin Marietta Corp.*, 894 F. Supp. 218, 223 (D. Md. 1995) ("[A] contractor who tells a Government contracting officer that a claim is false still violates the statute when a false claim is submitted"); *BMY – Combat Systems Div. of Harsco Corp v. United States*, 38 Fed. Cl. 109, 119 (1997) (contractor misrepresents compliance when it fails to inform Government of nonconformance even if Government, through its own efforts, has knowledge of that nonconformance).

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

**Relators' Requested Instruction No. 33: FALSE CLAIMS ACT – WAIVER IS NOT A DEFENSE TO THE FALSE CLAIMS ACT CLAIMS**

Defendants allege that certain acts of the Navy have waived any False Claims Act violations. Specifically, the defendants claim that since the Navy has continued to accept and order Gen-Sets after being notified of Relators' allegations of defects with the Gen-Sets, the defendants cannot be liable under the False Claims Act because the Government has waived such claims. This is not the law. Government acceptance of these Gen-Sets does not absolve the defendants of liability under the False Claims Act.[77] You are instructed that even though the Navy has continued buying Gen-Sets from the defendants, that fact is irrelevant and should not be considered by you because Navy employees do not have the authority to waive, release, or compromise claims or to ratify the actions of other Government employees.[78]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[77] Doc. 463, Order, at 7.

[78] Doc. 331, Report and Recommendation, pp. 1-2 (*citing Martin J. Simko Construction, Inc. v. United States*, 852 F. 2d 540 (Fed. Cir. 1988)) *adopted in its entirety* in Doc. 448, Entry and Order, p. 2.

**Relators' Requested Instruction No. 34: FALSE CLAIMS ACT – ESTOPPEL IS NOT A DEFENSE TO THE FALSE CLAIMS ACT CLAIMS**

Statements, actions or inactions by Government employees may not serve as a defense to

False Claims Act liability.[79]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[79] Doc. 332, Report and Recommendation, at 4; *adopted in its entirety* in Doc. 458, Order; *Office of Personnel Management v. Richmond*, 496 U.S. 414, 427 (1990) ("claims for estoppel cannot be entertained where public money is at stake."); *United States v. Guy*, 978 F. 2d 934, 937 (6th Cir. 1992); *United States v. Walcott*, 972 F.2d 323, 327 (11th Cir. 1992) (*citing Richmond*, 496 U.S. 414); *Heckler v. Community Health Services*, 467 U.S. 51, 63 (1984); *Utah Power & Light Co. v. United States*, 243 U.S. 389, 409 (1917) ("Of this it is enough to say that the United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit"); *U.S. v. Swick*, 836 F. Supp. 442, 445 (S.D. Ohio 1993) (Graham, J.) ("estoppel may not be asserted against the government in this case, since to allow such a defense would have the effect of depriving the United States of public funds").

**Relators' Requested Instruction No. 35:  FALSE CLAIMS ACT -- NEGLIGENCE IS NOT A DEFENSE TO THE FALSE CLAIMS ACT CLAIMS**

If you find that any of the defendants knowingly submitted or caused to be submitted false claims, or knowingly made, used, or caused to be made or used false records or statements to get false claims paid, any allegations made by the defendants that the Navy was negligent or contributed to its ultimate injury in some way should not be considered by you.  It is irrelevant and cannot be used as a defense to any defendant's liability in this case.[80]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[80] *United States v. Spicer*, 57 F.3d 1152, 1159 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1043 (1996) (as long as misrepresentations are a proximate cause of injury, "they need not have been the sole factor causing . . . losses") (*citations omitted*); *United States v. Kates*, 419 F. Supp. 846, 854 (E.D. Pa. 1976) (the fact that "the conduct of [the Government's agents] contributed to the loss" is no defense) (*citing* Restatement (Second) of Torts § 481)).

**Relators' Requested Instruction No. 36: FALSE CLAIMS ACT – FAILURE TO MITIGATE DAMAGES IS NOT A DEFENSE TO THE FALSE CLAIMS ACT CLAIMS**

The United States has no duty to mitigate its damages in a False Claims Act action.[81]

You are instructed that Government acceptance of Gen-Sets or payment for Gen-Sets without complaint as to defects is not a defense to False Claims Act liability.[82]

The United States may or may not have numerous remedies for any violation of its contracts. These remedies are irrelevant to your consideration of this case. You are only to consider whether any defendants' conduct violated the False Claims Act.

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[81] Doc. 331, Report and Recommendation, p. 2., *adopted in its entirety* in Doc. 448, Entry and Order, p.2.

[82] *Id.*

-48-

**Relators' Requested Instruction No. 37: GENERAL TOOL COMPANY'S QUALITY ASSURANCE MANUAL**

I instruct you that General Tool Company was required by contract to follow its Quality Assurance Manual.  General Tool Company was required to have a quality system that was compliant with MIL-Q-9858A.  Allison Engine Company reviewed and approved General Tool Company's Quality Assurance Manual.[83]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[83] Doc. 463, Order, at 7.

**Relators' Requested Instruction No. 38:  PREFACE TO DAMAGES**

The fact that I instruct you on the proper measure or amount of damage should not be

considered as an indication of any view as to what your decision in this case should be.

Instructions on the measure of damages are given only for your guidance.

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

**Relators' Requested Instruction No. 39: DAMAGES – GENERAL**[84]

If you find that any defendant violated the False Claims Act, you must next determine

whether the United States sustained damages "because of" that defendant's False Claims Act

violation. This means that the United States was damaged as a result of the false claims,

statements, or records, or the damages would not have occurred but for the false claims,

statements, or records.

You must award the amount of damages you determine are necessary to make the United

States completely whole for any losses it incurred as a result of any defendant's false claims,

statements, or records.

I will now describe to you the kinds and amounts of damages the Relators are seeking

under their False Claims Act causes of action in this case.

---

[84] 31 U.S.C. § 3729(a) (statute imposes liability for "damages which the Government sustains because of the act of" the defendant); *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 549, 551-552 (1943) (purpose of the False Claims Act is to "afford the Government complete indemnity for the injuries done it" and to make the Government "completely whole"); *United States ex rel. Roby v. Boeing*, 302 F.3d 637, 646 (6th Cir. 2002), *cert. denied*, 539 U.S. 969 (2003) (government can recover damages that are "the direct, proximate, and foreseeable result of the claims submitted by" the defendants) (*citation omitted*); *United States ex rel. Schwedt v. Planning Research Corp.*, 59 F.3d 196, 200 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1068 (1996) ("[b]ut for the [false] progress reports and representations. . . [the Government] would not have accepted and paid for [additional products]"); *United States v. First National Bank of Cicero*, 957 F.2d 1362, 1374 (7th Cir. 1992) (the showing of "but for" causation is "sufficient to establish the causal relationship between the false claim and the Government's damages necessary to permit recovery under the False Claims Act"); *United States v. Killough*, 848 F.2d 1523, 1532 (11th Cir. 1988) ("'courts should be guided only by the principles that the United States' damages should be liberally measured to effectuate the remedial purposes of the Act, and that the United States should be afforded a full and complete recovery of all its damages.'") (*citing* S.Rep. No. 615, 96th Cong., 2d Sess. at 4); *United States v. Ekelman & Associates, Inc.*, 532 F.2d 545, 550 (6th Cir. 1976) ("Government would be entitled to recover amounts expended 'in the form of time and money spent by its employees in straightening out the mess. . . and in protecting its interests thereafter.'").

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

**Relators' Requested Instruction No. 40: COMPUTATION OF DAMAGES UNDER THE FALSE CLAIMS ACT.**

You have been given evidence regarding how the United States was allegedly damaged by the conduct alleged by the Relators. If you find any of the defendants liable under the False Claims Act, you must determine how much, if any, damages the United States suffered because of that defendant's conduct.[85] In computing any damages suffered by the United States in this case, you do not have to determine the actual damages with precision.[86] You may make a just and reasonable estimate, based upon relevant facts, and render your verdict accordingly. You may consider any measure of damages necessary to make the United States completely whole, including: the difference between the market value of the goods received by the United States versus the market value the goods would have had if they had been of the specified quality;[87] the cost of replacing the nonconforming goods;[88] or the amount needed to conduct field inspections, repair work and replacement costs of any defective components.[89]

---

[85] 31 U.S.C. § 3729(a)

[86] *Broan Mfg. Co. v. Associated Distributors, Inc.*, 923 F.2d 1232, 1235 (6th Cir. 1991) (damages should only be precluded "where the fact of damage is uncertain . . . not where the amount of damage alone is uncertain."); *See also Volasco Prods. Co. v. Lloyd A. Fry Roofing Co.*, 308 F.2d 383, 392 (6th Cir. 1962), *cert. denied* 372 U.S. 907 (1963) (plaintiff is entitled to damages, even if they cannot be computed exactly).

[87] *United States ex rel. Roby v. Boeing Co.*, 302 F.3d 637, 646 (6th Cir. 2002), *citing United States v. Bornstein*, 423 U.S. 303, 316 (1976).

[88] *United States ex rel. Roby v. Boeing Co.*, 302 F.3d 637, 648 n.9 (6th Cir. 2002), *citing Commercial Contractors, Inc. v. United States*, 154 F.3d 1357, 1372-73 (Fed. Cir. 1998).

[89] *BMY Combat Systems v. United States*, 44 Fed. Cl. 141, (1998), *citing Daff v. United States*, 31 Fed. Cl. 682, 695 (1994) ("Costs of inspection and repair incurred by the government as a result of a contractor's false representation that a product passed inspection pursuant to the contract are recoverable as FCA single damages.")

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

**Relators' Requested Instruction No. 41: ANTI-RETALIATION PROVISIONS OF THE FALSE CLAIMS ACT**

To encourage whistleblowers, the False Claims Act contains a specific provision, U.S.C. 3730(h), to provide protection for those who pursue or contribute to *qui tam* actions.[90]

31 U.S.C. § 3730(h), the False Claims Act anti-retaliation provision, states: Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms or conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[90] *United States ex. rel. McKenzie v. BellSouth Telecomm. Inc.*, 123 F.3d 935, 943 (6th Cir. 1997), *cert. denied*, 522 U.S. 1077 (1998).

**Relators' Requested Instruction No. 42: ELEMENTS OF RELATOR SANDERS' FALSE CLAIMS ACT RETALIATION CLAIM**

Relator Roger Sanders claims that his employer, Defendant General Tool Company, retaliated against him by firing him because he was about to blow the whistle on the defendants, in violation of the False Claims Act's anti-retaliation provision. To prevail on this claim, Relator Sanders must prove by a preponderance of the evidence that:

1.    He was engaged in "protected activity;" which includes investigation for, initiation of, or testimony or assistance in an action filed or to be filed under the False Claims Act;

2.    General Tool Company knew that he was engaged in protected activity; and

3.    A reason General Tool Company fired Relator Sanders was because he was engaged in protected activity.[91]

If you find each of these elements by a preponderance of the evidence, then you must determine the appropriate damages to award Relator Sanders.

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

_____

[91] *United States ex rel. McKenzie v. BellSouth Telecommunications, Inc.*, 123 F.3d 935, 944 (6th Cir. 1997), *cert. denied*, 522 U.S. 1077 (1998); *United States ex rel. McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.3d 508, 514 n.4 (6th Cir. 2000); *Childree v. UAP/GA AG Chem., Inc.*, 92 F.3d 1140, 1146 (11th Cir. 1996) *cert denied*, 519 U.S. 1148 (1997) (False Claims Act litigation must be a distinct possibility); *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997).

**Relators' Requested Instruction No. 43: ELEMENTS OF PUBLIC POLICY TORT CLAIM**

In addition to the anti-retaliation provisions of the False Claims Act, Ohio law also prohibits an employer from retaliating against an employee by discharging or disciplining him for a reason that violates a clear public policy.[92]  Sources of clear public policy include federal statutes.[93]

To prevail on his public policy tort claim, Relator Sanders must prove:

1.     That a clear public policy existed and was manifested in a federal statute; and

2.     That General Tool's dismissal of Roger Sanders under the circumstances he alleges would jeopardize that public policy; and

3.     The discharge of Relator Sanders was motivated by conduct related to the public policy; and

4.     The employer lacked an overriding legitimate business justification for the dismissal or discipline.

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[92] *Painter v. Graley*, 70 Ohio St. 3d 377 (1994), Syllabus ¶¶ 2, 3; *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St. 3d 228 (1990), Syllabus ¶¶ 1, 2.

[93] *Id.*

**Relators' Requested Instruction No. 44: RETALIATION DAMAGES**

If you find that General Tool discharged Relator Sanders in violation of either the False Claims Act's anti-retaliation provisions or in violation of Ohio's law prohibiting such retaliation, you may award him the back pay he would have earned if General Tool had not discharged him.[94] In that event, you must determine the difference between what Relator Sanders would have earned if he had remained in General Tool's employ after his discharge and the amount he actually has earned since that time. You may also award Relator Sanders an amount for any lost benefits he suffered.

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[94] 31 U.S.C. § 3730(h); *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St. 3d 228 (1990).

**Relators' Requested Instruction No. 45:  DUTY TO DELIBERATE**

The verdict must represent a considered judgment of each of you.  In order to return a verdict, it is necessary that each juror agree.   Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without disregard of individual judgment.  You must each decide the case for yourself, but only after an impartial consideration of all the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of the evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times you are not partisans.  You are judges — judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.[95]

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

---

[95] 3 O'Malley, Grenig, and Lee's <u>Federal Jury Practice And Instructions: Civil</u>, § 106.01 (West Pub. Co. 5th Ed. 2000).

**Relators' Requested Instruction No. 46: DELIBERATION AND VERDICT**

Upon retiring to the jury room, you should first select one of your number to act as your foreperson who will preside over your deliberations and will be your spokesperson here in court.

The Court will place in your possession the exhibits. Also, each of you has a copy of the instructions I am now reading and attached to these instructions is a special verdict form. When you have reached unanimous agreement as to your answer to each of the questions on the special verdict form, you should have the foreperson fill in your answers to the questions and date and sign the form. Then each remaining juror is to sign the back of the special verdict form. You will then return to the courtroom. To avoid confusion, you are instructed to fill in, date and sign the copy of the special verdict form contained in the **notebook** that I will give you when you leave to deliberate, rather than the special verdict form appearing in your individual copies. You should answer all of the questions in the special verdict form.

If, during your deliberations, you should desire to communicate with the Court, please reduce your message or question to writing signed by the foreperson, and pass the note to the Marshal who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally.

Until your verdict is announced in open court, you are not to disclose to anyone else the status of your deliberations or the nature of your verdict. When you arrive at a unanimous verdict — that is whenever all of you agree upon a verdict — you will sign the Verdict form in ink and notify the Courtroom Deputy. You will then be returned to the courtroom.

-60-

GIVEN:_____

REJECTED:_____

GIVEN IN PART:_____

# SPECIAL INTERROGATORIES AND VERDICT FORM

We the jury unanimously find our special verdicts as follows:

## A.    GEN-SET BASES AND ENCLOSURES.

### Southern Ohio Fabricators

1.    Do you find by a preponderance of the evidence that Defendant **Southern Ohio Fabricators** knowingly presented, or caused to be presented, false or fraudulent claims for payment for Gen-Set bases and enclosures that it fabricated?

_____                          _____

YES                          NO

2.    If you answered "Yes" to Special Verdict 1, specify the total number of false or fraudulent claims made by Defendant **Southern Ohio Fabricators** for Gen-Set bases and enclosures that it fabricated.

Number of false claims: _____

3.      Do you find by a preponderance of the evidence that Defendant **Southern Ohio Fabricators** knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid for Gen-Set bases and enclosures that it fabricated?


_____                            _____

YES                                    NO



4.      If you answered "Yes" to Special Verdict 3, specify the total number of false records or statements made by Defendant **Southern Ohio Fabricators** for Gen-Set bases and enclosures that it fabricated.


Number of false records or statements: _____

## **General Tool Company**

5.      Do you find by a preponderance of the evidence that Defendant **General Tool Company** knowingly presented, or caused to be presented, false or fraudulent claims for payment for Gen-Sets made with bases and enclosures fabricated by Southern Ohio Fabricators?

_____                                   _____

YES                                   NO

6.      If you answered "Yes" to Special Verdict 5, specify the total number of false or fraudulent claims made by Defendant **General Tool Company** for Gen-Sets made with bases and enclosures fabricated by Southern Ohio Fabricators.

Number of false claims: _____

**Allison Engine Company**

7.      Do you find by a preponderance of the evidence that Defendant **Allison Engine Company** (after December 1, 1993) knowingly presented, or caused to be presented, false or fraudulent claims for payment for Gen-Sets made with bases and enclosures fabricated by Southern Ohio Fabricators?


_____                          _____

YES                              NO


8.      If you answered "Yes" to Special Verdict 7, specify the total number of false or fraudulent claims made by Defendant **Allison Engine Company** for Gen-Sets made with bases and enclosures fabricated by Southern Ohio Fabricators.


Number of false claims: _____


9.      Do you find by a preponderance of the evidence that Defendant **Allison Engine Company** (after December 1, 1993) knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid for Gen-Sets made with bases and enclosures fabricated by Southern Ohio Fabricators?


_____                          _____

YES                              NO

-65-

10.     If you answered "Yes" to Special Verdict 9, specify the total number of false records or statements made by Defendant **Allison Engine Company** for Gen-Sets made with bases and enclosures fabricated by Southern Ohio Fabricators.

Number of false records or statements: _____

## General Motors Corporation

11.     Do you find by a preponderance of the evidence that Allison Gas Turbine, while a division of Defendant **General Motors Corporation**, knowingly presented, or caused to be presented, false or fraudulent claims for payment for Gen-Sets made with bases and enclosures fabricated by Southern Ohio Fabricators?


_____                           _____

YES                                   NO


12.     If you answered "Yes" to Special Verdict 11, specify the total number of false or fraudulent claims made by Defendant **General Motors Corporation** for Gen-Sets made with bases and enclosures fabricated by Southern Ohio Fabricators.


        Number of false claims: _____


13.     Do you find by a preponderance of the evidence that Allison Gas Turbine, while a division of Defendant **General Motors Corporation**, knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid for Gen-Sets made with bases and enclosures fabricated by Southern Ohio Fabricators?


_____                           _____

YES                                   NO

-67-

14.     If you answered "Yes" to Special Verdict 13, specify the total number of false records or statements made by Defendant **General Motors Corporation** for Gen-Sets made with bases and enclosures fabricated by Southern Ohio Fabricators.


            Number of false records or statements:  _____




15.     If you answered "Yes" to any one of the Special Verdicts 1, 3, 5, 7, 9, 11, or 13, specify the total amount, in dollars, of damages which you find Relators have proved by a preponderance of the evidence that the United States sustained because of the **defendants'** false or fraudulent claims and/or false statements relating to Gen-Sets made with bases and enclosures fabricated by Southern Ohio Fabricators.


        Damages in the Amount of : $_____

## B.    WESTECH GEARBOXES

### General Motors Corporation

16.    Do you find by a preponderance of the evidence that Allison Gas Turbine, while a division of Defendant **General Motors Corporation**, knowingly presented, or caused to be presented, false or fraudulent claims for payment for Gen-Sets made with Westech gearboxes?

_____                    _____

YES                            NO

17.    If you answered "Yes" to Special Verdict 16, specify the total number of false or fraudulent claims made by Defendant **General Motors Corporation** for Gen-Sets made with Westech gearboxes.

Number of false claims: _____

18.    Do you find by a preponderance of the evidence that Allison Gas Turbine, while a division of Defendant **General Motors Corporation**, knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid for Gen-Sets made with Westech gearboxes?

_____                    _____

YES                            NO

-69-

19.     If you answered "Yes" to Special Verdict 18, specify the total number of false records or statements made by Defendant **General Motors Corporation** for Gen-Sets made with Westech gearboxes.

Number of false records or statements: _____

20.     Do you find by a preponderance of the evidence that Defendants **General Motors Corporation** and **General Tool Company** conspired with each other to get false or fraudulent claims paid for Gen-Sets made with Westech Gearboxes?

_____            _____
            YES                              NO

**Allison Engine Company**

21.     Do you find by a preponderance of the evidence that Defendant **Allison Engine Company** (after December 1, 1993) knowingly presented, or caused to be presented, false or fraudulent claims for payment for Gen-Sets made with Westech gearboxes?

_____                              _____

YES                                    NO


22.     If you answered "Yes" to Special Verdict 21, specify the total number of false or fraudulent claims made by Defendant **Allison Engine Company** for Gen-Sets made with Westech gearboxes.

Number of false claims: _____


23.     Do you find by a preponderance of the evidence that Defendant **Allison Engine Company** (after December 1, 1993) knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid for Gen-Sets made with Westech gearboxes?

_____                              _____

YES                                    NO

-71-

24.     If you answered "Yes" to Special Verdict 23, specify the total number of false records or statements made by Defendant **Allison Engine Company** for Gen-Sets made with Westech gearboxes.

Number of false records or statements: _____

25.     Do you find by a preponderance of the evidence that Defendants **Allison Engine Company** and **General Tool Company** conspired with each other to get false or fraudulent claims paid for Gen-Sets made with Westech Gearboxes?

_____                          _____

YES                              NO

26.     If you answered "Yes" to any one of the Special Verdicts 16, 18, 20, 21, 23 or 25, specify the total amount, in dollars, of damages which you find Relators have proved by a preponderance of the evidence that the United States sustained because of the false or fraudulent claims for payment submitted, or the false or fraudulent records or statements used, by **Defendants** for Gen-Sets made with Westech gearboxes.

Damages in the Amount of : $_____

-72-

## C.   FINAL INSPECTIONS

### General Tool Company

27.     Do you find by a preponderance of the evidence that Defendant **General Tool Company** knowingly presented, or caused to be presented, false or fraudulent claims for payment for Gen-Sets that did not undergo a contractually required Final Inspection?

_____                              _____

YES                              NO

28.     If you answered "Yes" to Special Verdict 27, specify the total number of false or fraudulent claims made by Defendant **General Tool Company** for Gen-Sets that did not undergo a contractually required Final Inspection.

Number of false claims: _____

## **Allison Engine Company**

29.    Do you find by a preponderance of the evidence that Defendant **Allison Engine Company** (after December 1, 1993) knowingly presented, or caused to be presented, false or fraudulent claims for payment for Gen-Sets that did not undergo a contractually required Final Inspection?

   _____               _____

      YES                 NO

30.    If you answered "Yes" to Special Verdict 29,  specify the total number of false or fraudulent claims made by Defendant **Allison Engine Company** for Gen-Sets that did not undergo a contractually required Final Inspection.

      Number of false claims:  _____

31.    Do you find by a preponderance of the evidence that Defendant **Allison Engine Company** (after December 1, 1993) knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid for Gen-Sets that did not undergo a contractually required Final Inspection ?

   _____               _____

      YES                 NO

32.     If you answered "Yes" to Special Verdict 31, specify the total number of false records or statements made by Defendant **Allison Engine Company** for Gen-Sets that did not undergo a contractually required Final Inspection.


         Number of false records or statements: _____

## General Motors Corporation

33.     Do you find by a preponderance of the evidence that Allison Gas Turbine, while a division of Defendant **General Motors Corporation**, knowingly presented, or caused to be presented, false or fraudulent claims for payment for Gen-Sets that did not undergo a contractually required Final Inspection?


_____                          _____

YES                                 NO


34.     If you answered "Yes" to Special Verdict 33,  specify the total number of false or fraudulent claims made by Defendant **General Motors Corporation** for Gen-Sets that did not undergo a contractually required Final Inspection.


Number of false claims:  _____


35.     Do you find by a preponderance of the evidence that Allison Gas Turbine, while a division of Defendant **General Motors Corporation**, knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid for Gen-Sets that did not undergo a contractually required Final Inspection ?


_____                          _____

YES                                 NO

36.     If you answered "Yes" to Special Verdict 36, specify the total number of false records or statements made by Defendant **General Motors Corporation** for Gen-Sets that did not undergo a contractually required Final Inspection.

Number of false records or statements: _____

37.     If you answered "Yes" to any one of the Special Verdicts 27, 29, 31, 33 or 35, specify the total amount, in dollars, of damages which you find Relators have proved by a preponderance of the evidence that the United States sustained because of the **Defendants'** false or fraudulent claims and/or false statements relating to Gen-Sets that did not undergo a contractually required Final Inspection.

Damages in the Amount of : $_____

## D.   RETALIATION

38.    Do you find by a preponderance of the evidence that Defendant **General Tool Company** retaliated against Relator Roger Sanders by discharging him in violation of the anti-retaliation provision of the False Claims Act?

|  |  |
|---|---|
| _____ | _____ |
| YES | NO |

39.    Do you find that Defendant **General Tool Company** retaliated against Relator Roger Sanders by discharging him in violation Ohio public policy?

|  |  |
|---|---|
| _____ | _____ |
| YES | NO |

40.    If you answered "Yes" to Special Verdict 38 or 39, specify the total amount, in dollars, of damages which you find Relator Roger Sanders has proved by a preponderance of the evidence that he sustained because of **Defendant General Tool Company's** retaliation.

Damages in the Amount of : $_____