UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* <br><br> ROGER L. SANDERS and ROGER L. THACKER, <br><br> Relators, <br><br> v. <br><br> ALLISON ENGINE COMPANY, INC., GENERAL MOTORS CORPORATION, GENERAL TOOL COMPANY and SOUTHERN OHIO FABRICATORS, INC., <br><br> Defendants. | Civil Action No. C-1-95-970 <br> (Consolidated with No. C-1-99-923) <br><br> **Judge Thomas M. Rose** <br><br> Magistrate Judge Timothy S. Hogan |

**DEFENDANT SOUTHERN OHIO FABRICATORS' TRIAL BRIEF**

Southern Ohio Fabricators joins in Defendants' Trial Brief on issues common to all defendants, but submits this separate trial brief to discuss issues unique to Southern Ohio Fabricators.

LA:17194034.3

**Table of Contents**

**Page**

I. ISSUES UNIQUE TO SOUTHERN OHIO FABRICATORS ..........................................1

    A. In General..........................................................................................................1

    B. Southern Ohio Fabricators had a Different, And Less Rigorous, Contractual Quality Standard and Certificate of Conformance than Allison or GTC ................................................................................................................2

    C. Southern Ohio Fabricators' Defense of Laches and Estoppel ..............................3

    D. Equitable Estoppel and Laches Are Available Affirmative Defenses Against The Government..................................................................................7

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

Brandt v. Hickel
    427 F.2d 53 (9th Cir. 1970) .................................................................................................. 8

Bylinski v. City of Allen Park,
    169 F.3d 1001 (6th Cir. 1999) ............................................................................................... 4

Federal Crop Ins. Corp. v. Merrill
    332 U.S. 380 (1947)............................................................................................................... 8

Gressley v. Califano
    609 F.2d 1265 (7th Cir. 1979) ......................................................................................... 9, 10

Heckler v. Cty. Health Services, Inc.
    467 U.S. 51 (1984)................................................................................................................. 8

Hot Wax Inc. v. Turtle Wax, Inc.
    191 F.3d 813 (7th Cir. 1999) .............................................................................................. 10

James Burroughs, Ltd. v. Sign of Beefeater, Inc.
    572 F.2d 574 (7th Cir. 1978) .............................................................................................. 11

Leinoff v. Louis Milona & Sons, Inc.
    726 F.2d 734 (Fed. Cir. 1984) ............................................................................................. 4

Loral Corp. v. B.F. Goodrich Co.,
    1989 U. S. Dist. LEXIS 16865 (S. D. Ohio 1989) ............................................................ 4

Maksym v. Loesch
    937 F.2d 1237 (7th Cir. 1991) ............................................................................................ 10

Menges v. Dentler
    33 Pa. 495 (1859).................................................................................................................. 8

Michigan Express, Inc., et al., v. United States
    374 F.3d 424 (6th Cir. 2004) .............................................................................................. 9

OPM v. Richmond
    496 U.S. 414 (1990).............................................................................................................. 8

St. Regis Paper Co. v. United States
    368 U.S. 208 (1961) .................................................................................................... 8

Syngenta Crop. Prot , Inc. v. Henson
    (2002) 537 U.S. 28 ....................................................................................................... 4

United States ex rel. Costa v. Baker & Taylor, Inc.
    955 F.Supp. 1188 (N.D. Cal. 1997) ......................................................................... 5, 6

United States ex rel. Fallon v. Acudyne Corp.
    921 F.Supp. 611 (W.D. Wis. 1995) .............................................................................. 9

United States ex rel. Fender v. Tenet Healthcare Corp.
    105 F.Supp.2d 1228 (N.D. Al.. 2000) ...................................................................... 5, 6

United States ex rel. LaCorte v. Smith Kline Beecham Clinical Laboratories, Inc.
    1998 WL 840012 (E.D. La. Nov. 12, 1998) ............................................................. 5, 6

United States ex rel. McCoy v. California Medical Review, Inc.
    715 F.Supp. 967 (N.D. Cal. 1989) ................................................................................ 6

United States ex rel. Roby v. Boeing Co.
    100 F.Supp.2d 619 (S.D. Ohio 2000) ........................................................................... 9

United States v. Eaton Shale Co.
    433 F.Supp. 1256 (D. Colo. 1977) ............................................................................. 11

United States v. Fox Lake State Bank
    366 F.2d 962 (7th Cir. 1966) ..................................................................................... 8, 9

United States v. Guy
    978 F.2d 1984 (6th Cir. 1992) ...................................................................................... 9

United States v. Hardage
    116 F.R.D. 460 (W.D. Okla. 1987) ........................................................................ 9, 11

United States v. Martell
    844 F.Supp. 454 (N.D. Ind. 1994) .............................................................................. 11

**STATUTES**

False Claims Act
    § 3730(b)(2) ................................................................................................................. 5
    § 3730(b)(3) ................................................................................................................. 5

iv

**OTHER AUTHORITIES**

S. Rep. No. 99-345, 99th Cong., 2d Sess. 24,
    reprinted in 1986 U.S. Code Cong. & Admin. News 5266, 5289 .......................................... 5

I.  **ISSUES UNIQUE TO SOUTHERN OHIO FABRICATORS**

A. IN GENERAL

Defendant Southern Ohio Fabricators was at the time of the events relevant to this lawsuit a small steel fabricating shop located in Woodlawn, Ohio and Batavia, Ohio. Defendant Southern Ohio Fabricators was, at that time, sometimes referred to by an acronym "Sofco." Southern Ohio Fabricators had a subsidiary named Sofco Erectors, Inc. which was a steel erection company for building construction. Sofco Erectors, Inc. was not involved in the Gen-Set project. The purchase orders were issued to Southern Ohio Fabricators and Southern Ohio Fabricators' employees provided all of the work on the Gen-Set project at its own facilities.

During the pendency of this lawsuit, Southern Ohio Fabricators became severely financially strapped, in part due to the enormous costs of this 5-year lawsuit. As a result, its lender took control of the businesses. In 2004, Southern Ohio Fabricators sold most of the assets of Sofco Erectors, Inc. and also sold most of its own assets to two separate buyers. Among the assets that were sold was the name "Sofco." Therefore, Southern Ohio Fabricators will not consciously call itself Sofco during the trial but will attempt to call itself by its formal corporate name, Southern Ohio Fabricators, Inc.

Southern Ohio Fabricators currently has no business and no employees and only limited resources. It is anticipated that there will be days during the trial when the nature of the evidence will not impact Southern Ohio Fabricators. In order to conserve its limited resources, Southern Ohio Fabricators' counsel intends to ask to be excused on those days. Counsel has explained this proposed procedure to current management of Southern Ohio Fabricators, which has consented.

LA:17194034.3

- 2 -

### B. SOUTHERN OHIO FABRICATORS HAD A DIFFERENT, AND LESS RIGOROUS, CONTRACTUAL QUALITY STANDARD AND CERTIFICATE OF CONFORMANCE THAN ALLISON OR GTC

Unlike Allison Engine Company and General Tool Company, Southern Ohio Fabricators's quality program was governed by MIL-I-45208A, not MIL-Q-9858A. MIL-I45208A is a less rigorous standard. It is not an overall quality standard. It is an inspection standard only and therefore has fewer requirements than MIL-Q-9858A.

With respect to the alleged "false statements" in this case, Southern Ohio Fabricators also is situated quite differently from the other Defendants. First, Allison provided Bath and Ingalls with Certificates of Conformance as to quality for each of the Gen-Sets at issue. SOFCO's Certificates of Conformance, in contrast, related only to the results of its <u>inspections</u> for Units 11 through 79 (there were none for units 4-10). Second, Allison's Certificates of Conformance stated that the Gen-Set "was manufactured in accordance with all applicable specifications, drawings, and procedures." The specific language in Southern Ohio Fabricators' Certificates of Conformance was different:

> "Southern Ohio Fabricators certifies items listed below have been <u>inspected in accordance with approved inspection procedures and found to meet</u> the applicable requirements set forth on the drawings and purchase orders. Evidence of such inspections are on file at Southern Ohio Fabricators for review upon your request."

(Emphasis Added)

These differences between Southern Ohio Fabricators and the other two Defendants will bear on the evaluation of Southern Ohio Fabricators' Quality Program and its corrective action efforts; and the scope of its alleged "statements" to GTC concerning the delivered bases and enclosures.

LA:17194034.3

    C.    **SOUTHERN OHIO FABRICATORS' DEFENSE OF LACHES AND ESTOPPEL.**

Southern Ohio Fabricators has asserted the defenses of laches and estoppel based on facts unique to it. Southern Ohio Fabricators moved for summary judgment based in part on these defenses (Doc. 157). That motion was overruled by this Court (Doc. 332, 459). Relators also filed a Motion for Summary Judgment with respect to numerous affirmative defenses with respect to all defendants. That motion was granted but the Magistrate specifically stated in its ruling that its ruling related only to the other defendants and not to the unique facts relating to Southern Ohio Fabricators, Inc. (Doc. 331, p. 2). Since the Court has not dismissed Southern Ohio Fabricators' laches and estoppel defenses based on the facts unique to it, this is a matter to be decided by the jury in this case.

The facts underlying Southern Ohio Fabricators' defenses of laches and estoppel are as follows: In the summer of 1995, Southern Ohio Fabricators was issued a Grand Jury Subpoena requesting that it produce various Southern Ohio Fabricators documents from the Gen-Set program to the Government pursuant to a criminal investigation. Counsel for Southern Ohio Fabricators was orally informed by the Naval Criminal Investigative Services' agent conducting the investigation that Southern Ohio Fabricators was not a target of the investigation.

This *qui tam* lawsuit was secretly filed several months after the Grand Jury Subpoena in November of 1995. Southern Ohio Fabricators was a named Defendant. Although the lawsuit was filed in November of 1995, the action was not unsealed or otherwise made known to Southern Ohio Fabricators until three and a half years later, in May of 1999. The Government obtained at least ten orders extending the statutory 60-day period for sealing the action. During the three and half year period in which the action was under seal, Southern Ohio Fabricators had no reason to believe it was a defendant and therefore did nothing to prepare a defense in this

action. In the meantime, several witnesses who played key roles in the Gen-Set program died or became incapacitated and their testimony has thus become forever lost.

The facts at trial will show that all of Relators' claims against Southern Ohio Fabricators are barred by the defenses of laches and equitable estoppel because of: (1) the Government's specific representation to Southern Ohio Fabricators that it was not a target of any investigation into the Gen-Set program; (2) the three and a half-year delay between the filing under seal of this lawsuit and Southern Ohio Fabricators' notice of its status as a defendant in this action and; (3) the prejudice to Southern Ohio Fabricators as a result of its lack of notice regarding its status as a defendant for more than three and a half years.

The Sixth Circuit recognizes the affirmative defenses of laches and equitable estoppel. Bylinski v. City of Allen Park, 169 F.3d 1001, 1003 (6th Cir. 1999), overruled in part on other grounds by Syngenta Crop. Prot., Inc. v. Henson (2002), 537 U.S. 28. In order to assert the defense of laches, it is well established that the defendant must prove two essential elements: (1) unreasonable and inexcusable delay in the assertion of the claim; and (2) material prejudice to the defendant resulting from this delay. . . ." Loral Corp. v. B.F. Goodrich Co., 1989 U.S. Dist. LEXIS 16865 (S. D. Ohio 1989) at ¶66, *citing* Leinoff v. Louis Milona & Sons, Inc., 726 F.2d 734, 741 (Fed. Cir. 1984). Similarly, equitable estoppel also requires that unreasonable delay by the plaintiff and prejudice to the defendant be shown, in addition to some affirmative conduct by the plaintiff which resulted in the defendant's detrimental reliance. *See* Loral Corp., *supra*, at ¶68.

Southern Ohio Fabricators was not notified of its status as a defendant in this lawsuit until May 6, 1999, three years and six months after the lawsuit had first been filed. This lapse of time was caused by the Government's repeated successful efforts to extend the statutory duration

LA:17194034.3

of the seal. In fact, the three and a half year period in which the Complaint in this action was kept under seal constituted a span of time which is twenty-one times longer than the normal seal period of 60 days provided by § 3730(b)(2) of the False Claims Act. While § 3730(b)(3) allows the Government to move the court for an extension of time beyond the 60-day period in which the complaint remains under seal, the legislative history of the False Claims Act makes abundantly clear that Congress did not intend that the Government be allowed to prolong the period in which the file is sealed indefinitely. S. Rep. No. 99-345, 99th Cong., 2d Sess. 24, reprinted in 1986 U.S. Code Cong. & Admin. News 5266, 5289. The legislative history specifically states:

> [e]xtensions will be granted only on a showing of good cause. The committee intends that courts weigh carefully any extensions on the period of time in which the Government has to decide whether to intervene and take over the litigation. The committee feels that with the vast majority of cases, 60 days is an adequate amount of time to allow government coordination, review and decision.

S. Rep. 345, 99th Cong., 2d Sess. 24-25 (1986); Leg. Hist. at 5289-90. The committee added that good cause to extend the seal would not be established merely by showing that the Government was overburdened and had not had sufficient opportunity to address its involvement with the complaint, and that the Government would not, in any way, be allowed to unnecessarily delay lifting of the seal from any civil complaint or processing of the *qui tam* litigation. Id.

A number of courts have considered the propriety of repeated extensions of the seal in false Claims Act cases and specifically addressed the interests of defendants in receiving notice of their status as defendants in FCA cases. *See* United States ex rel. Fender v. Tenet Healthcare Corp., 105 F.Supp.2d 1228 (N.D. Al.. 2000); United States ex rel. LaCorte v. Smith Kline Beecham Clinical Laboratories, Inc., 1998 WL 840012 (E.D. La. Nov. 12, 1998); United States ex rel. Costa v. Baker & Taylor, Inc., 955 F.Supp. 1188 (N.D. Cal. 1997). These courts refused

LA:17194034.3

to extend the seal where the periods of time in question were far shorter than the three and a half year period in the case at bar. *See id.*

In the Costa case, for example, three six-month extension requests by the Government had been granted by the court before the Relators finally sought to lift the seal. Costa, 955 F.Supp. 1188, 1189. The Government opposed the lifting of the seal, but the court held that the seal should be lifted because the Government had failed to demonstrate a convincing rationale for continuing to maintain the seal. Id. at 1189-91. In reaching its decision, the court stated that the 60-day provision of the False Claims Act was intended as a compromise "allowing the Government to complete its investigation and formulate and adopt a litigation strategy ***without seriously injuring the interests of the defendant.***" *Id.* at 1189 (emphasis added). The court specifically noted the following:

> There is nothing in the statute or legislative history to suggest that, in evaluating the requests for an extension, the court should disregard the interests of the defendant and the public. ***Defendants have a legitimate interest in building their defense while the evidence is still fresh.***

*Id.* (emphasis added).

Similarly, in U.S. ex rel. LaCorte, the District Court for the Eastern District of Louisiana rejected a request by the Government to extend the seal for a fifth time. LaCorte, No. CIV. A. 97-0942, 1998 WL 840012, *2 (E.D.La. Nov. 12, 1998). The court indicated its reluctance in repeatedly extending the seal time given the defendant's interest in having notice of the lawsuit so that it could begin building its defense while the evidence was still fresh. *Id.* at **1-2.[1]

---

[1] *See also* United States ex rel. Fender v. Tenet Healthcare Corp., 105 F.Supp.2d 1228 (N.D. Al. 2000)(denying Government's request to extend the seal where the deadline had been extended already for a almost two years and finding the Government's request unreasonable and contrary to the legislative intent of the FCA); *see e.g.*, United States ex rel. McCoy v. California Medical Review, Inc., 715 F.Supp. 967 (N.D. Cal. 1989)(finding that the governments' burden or the prosecutor's workload were not "good cause" to extend the seal period).

As the above courts clearly recognized, allowing a complaint to remain under seal for an extended period of time has a potentially crippling effect on an unwitting defendant's ability to mount a defense. The concern for possible prejudice to defendants expressed by these courts echoes the exact type of prejudice suffered by Southern Ohio Fabricators in this case. Furthermore, because the record regarding the motions for extensions still remains under seal to this day, Southern Ohio Fabricators has been denied access to review and evaluate the ten so-called "good cause" requests for extensions by the Government.

The evidence will establish that Southern Ohio Fabricators relied on the Government's statement that it was not a target of investigation by performing no investigation regarding its role in the Gen-Set program, conducting no witness interviews, obtaining no statements from relevant personnel, nor taking any other necessary steps in preparing a defense in the event of a lawsuit. It simply had no reason to anticipate the lawsuit that was secretly pending against it for over three years. Meanwhile, in the past several years, a number of key witnesses either died or became unavailable. As a result of the Government's conduct, Southern Ohio Fabricators was prejudiced in its ability to defend itself against Relators' claims. Such facts clearly satisfy the required elements of laches and equitable estoppel.

### D. EQUITABLE ESTOPPEL AND LACHES ARE AVAILABLE AFFIRMATIVE DEFENSES AGAINST THE GOVERNMENT.

Relators attempt to defeat the applicability of equitable estoppel and laches to their claims against Southern Ohio Fabricators on the basis that such affirmative defenses are not available against the United States. With regard to the affirmative defense of equitable estoppel, Relators follow this unavailing argument with the concession that such a defense may be possible if one can show "affirmative misconduct" by the Government. Not only are these statements inconsistent, but they are also incorrect readings of the law.

LA:17194034.3

- 8 -

To begin, there is no blanket prohibition against allowing a defendant to assert an equitable estoppel defense against the Government. Indeed, the Supreme Court has consistently refused, despite repeated requests by the Government, to declare an absolute prohibition of the estoppel defense against the Government. *See* OPM v. Richmond, 496 U.S. 414, 423 (1990); Heckler v. Cty. Health Services, Inc., 467 U.S. 51, 60 (1984). For example, in Heckler, *supra*, the Court refused to bar the assertion of an estoppel defense against the Government, stating that it was "hesitant…to say there are no cases in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government." Heckler, 467 U.S. at 60-61 (citing St. Regis Paper Co. v. United States, 368 U.S. 208, 229 (1961) (Black, J., dissenting) (stating "[o]ur Government should not by picayunish haggling over the scope of its promise, permit one of its arms to do that which by any fair construction, the Government has given its word that no arm will do. It is no less good morals and good law that the Government should turn square corners in dealing with people than that the people should turn square corners in dealing with their Government") (emphasis added).[2]

Far from imposing a blanket rule prohibiting the defense of equitable estoppel against the Government, a number of courts have applied the defense against the Government in cases involving the False Claims Act. *See, e.g.*, United States v. Fox Lake State Bank, 366 F.2d 962, 965-966 (7th Cir. 1966) (estopping the United States from bringing an FCA action); United

---

[2] Heckler also cited several other cases in a footnote supporting the possible application of estoppel against the Government: Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 387-88 (1947) (Jackson, J., dissenting)("It is very well to say that those who deal with the Government should turn square corners. But there is no reason why the square corners should constitute a one-way street"); Brandt v. Hickel, 427 F.2d 53, 57 (9th Cir. 1970)("To say to these appellants, 'The joke is on you. You shouldn't have trusted us,' is hardly worthy of our great Government"); Menges v. Dentler, 33 Pa. 495, 500 (1859)("Men naturally trust their Government, and ought to do so, and they ought not suffer for it").

States ex rel. Fallon v. Acudyne Corp., 921 F.Supp. 611, 618-19 (W.D. Wis. 1995) (holding that defense of equitable estoppel was available against the Government in an FCA case); United States v. Hardage, 116 F.R.D. 460, 467 (W.D. Okla. 1987) (refusing to strike a number of defenses against the Government including laches and estoppel in a CERLCA action); United States ex rel. Roby v. Boeing Co., 100 F.Supp.2d 619 (S.D. Ohio 2000) (Spiegel, J.) (refusing to grant relators' motion for summary judgment with respect to laches and estoppel). These carefully opined cases are not "anomalies." Rather, they represent a clear statement of the law: Estoppel is a recognized and available affirmative defense against the Government in False Claim Act cases.

In an additional attempt to defeat the application of equitable estoppel to the instant case, Relators cite several cases for the proposition that some affirmative misconduct by the Government must be proven in order to maintain a successful equitable estoppel defense. However, the case law relied upon by Relators is readily distinguishable from the case at bar. While a showing of affirmative misconduct may be required when a plaintiff asserts estoppel in order to obtain a Government benefit to which he would not otherwise be entitled under the law, as was the situation in United States v. Guy, 978 F.2d 1984 (6th Cir. 1992), and Michigan Express, Inc., et al., v. United States, 374 F.3d 424 (6th Cir. 2004), such misconduct is not required in an False Claims Act case where the affirmative defense of estoppel is asserted to "prevent the Government from suing to recover a statutory forfeiture or penalty." See Gressley v. Califano, 609 F.2d 1265, 1268 (7th Cir. 1979) (discussing United States v. Fox Lake State Bank, 366 F.2d 962, 965-966 (7th Cir. 1966)). The court in Gressley explained this important distinction as follows:

> The invocation of estoppel [to prevent the government from recovering under the FCA] does not result in the receipt of public

> funds by one otherwise not entitled to payment. Instead, the Government is merely barred from enforcing a claim that in fairness it should not be allowed to pursue. We recognize that forbearance to sue for a sum to which the Government is statutorily entitled may cost the Government as much as a direct payment to a statutorily ineligible person. The distinction lies the fact that a Government right of action under a statute is usually a discretionary right. . . . A congressional mandate to pay statutory benefits only to those so entitled . . . leaves no discretion in the agencies and courts but to limit payment of benefits to those statutorily entitled to them.

*Id.* at 1268.

In light of the foregoing case law, it is clear that equitable estoppel may be asserted as an affirmative defense against the Government in a FCA action where a defendant has relied on affirmative Government conduct to its detriment. The facts set forth in the trial of this case will provide indisputable support for the application of equitable estoppel.

Relators make similar arguments with respect to the availability of Southern Ohio Fabricators' affirmative defense of laches. They argue that laches is not a defense at law when it is raised within the term of the statute of limitation and that such a defense is not a proper defense to a claim brought by the Government. However, just as there is no blanket prohibition against the assertion of equitable estoppel against the government, there is also no prohibition barring application of laches under the circumstances of this case. In fact, courts have held that laches may apply in actions at law, even where the action was commenced within the statute of limitations. Although "laches is an equitable doctrine, courts increasingly apply it in cases at law in which plaintiffs seek damages." Hot Wax Inc. v. Turtle Wax, Inc., 191 F.3d 813, 822 (7th Cir. 1999) (recognizing that laches has been increasingly applied to actions at law as well as equity and finding that there was nothing to preclude application of laches to plaintiff's claims for equitable relief as well as for damages in an action under the Lanham Act); *see also* Maksym v. Loesch, 937 F.2d 1237, 1247-48 (7th Cir. 1991) (stating "[l]aches is an equitable doctrine but

one increasingly applied in cases at law"); James Burroughs, Ltd. v. Sign of Beefeater, Inc., 572 F.2d 574, 578 (7th Cir. 1978) (recognizing in a trademark infringement case that the doctrine of laches precluded recovery of damages for the period prior to the filing of plaintiff's claim).

Moreover, laches may be applied as an affirmative defense in actions brought by the Government. *See* United States v. Martell, 844 F.Supp. 454, 459 (N.D. Ind. 1994) (recognizing the assertion of laches as an affirmative defense against the United States); United States v. Hardage, 116 F.R.D. 460, 467 (W.D. Okla. 1987) (refusing to strike a number of equity-based defenses, including laches and estoppel, from being asserted against the Government); United States v. Eaton Shale Co., 433 F.Supp. 1256, 1272 (D. Colo. 1977) (finding that laches was a viable and persuasive defense in a patent action by the Government).

Dated: January 24, 2005

Respectfully submitted

/s/ Lawrence R. Elleman
Lawrence R. Elleman (Ohio Bar # 0006444)
Dinsmore & Shohl, LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202-3172
(513) 977-8200
(513) 977-8141
elleman@dinslaw.com (email)

Trial Attorney for Defendant
SOUTHERN OHIO FABRICATORS

LA:17194034.3

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2005, a copy of the foregoing was served on the following via the Court's EF/CMF Filing System to all registered counsel and by U.S. mail, postage prepaid, to all Counsel not registered:

Gerald F. Kaminski, Esq.
Assistant U.S. Attorney
220 Potter Stewart U.S. Courthouse
100 East Fifth Street
Cincinnati, Ohio 45202

Dennis C. Egan, Esq.
U.S. Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044

Paul J. Wogaman, Sr.
United States Department of Justice
Civil Division
P.O. Box 261
Washington, D.C. 20044

Scott A. Powell, Esq.
Hare, Wynn, Newell & Newton, LLP
The Massey Building, Suite 800
290 21st Street North
Birmingham, AL 35203-3713

/s/ Lawrence R. Elleman
Lawrence R. Elleman

LA:17194034.3