UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. | Civil Action No. C-1-99-970 |
| | (Consolidated with No. C-1-99-923) |
| ROGER L. SANDERS, et al., | |
| | Judge Rose |
| Relators, | |
| | |
| v. | |
| | |
| ALLISON ENGINE COMPANY, INC., et al., | |
| | |
| Defendants. | |

## **DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

For Defendants:

| | |
|---|---|
| David P. Kamp, Esq.<br>WHITE, GETGEY & MEYER CO., L.P.A<br>1700 Fourth & Vine Tower<br>1 West Fourth Street<br>Cincinnati, OH 45202<br>Telephone: (513) 241-3685<br>Facsimile: (513) 241-2399<br>E-mail: dkamp@wgmlpa.com<br>*Counsel for Defendant*<br>*General Motors Corporation* | James J. Gallagher, Esq.<br>Susan A. Mitchell, Esq.<br>MCKENNA & CUNEO, LLP<br>444 S. Flower Street, 6th Floor<br>Los Angeles, CA 90071-2901<br>Telephone: (213) 688-1000<br>Facsimile: (213) 243-6330<br>E-mail: jgallagher@mckennalong.com<br>     smitchell@mckennalong.com<br>*Counsel for Defendant*<br>*General Motors Corporation* |
| Glenn V. Whitaker, Esq.<br>Victor A. Walton, Esq.<br>VORYS, SATER, SEYMOUR & PEASE, LLP<br>Atrium Two, Suite 2100<br>Cincinnati, OH 45202<br>Telephone:  (513) 723-4000<br>Facsimile:  (513) 723-4056<br>E-mail:  gvwhitaker@vssp.com<br>     vawalton@vssp.com<br>*Counsel for Defendant*<br>*Allison Engine Company* | Peter B. Hutt, II, Esq.<br>MILLER & CHEVALIER, CHARTERED<br>655 15th Street, N.W. Suite 900<br>Washington, DC 20005<br>Telephone:  (202) 626-5800<br>Facsimile:  (202) 628-0858<br>E-mail:  phutt@milchev.com<br><br>*Counsel for Defendant*<br>*Allison Engine Company* |

| | |
|---|---|
| William A. Posey, Esq.<br>Matthew K. Buck, Esq.<br>KEATING, MUETHING & KLEKAMP, PLL<br>1800 Provident Tower<br>One East Fourth Street<br>Cincinnati, OH 45202<br>Telephone: (513) 579-6400<br>Facsimile: (513) 579-6457<br>E-mail: wposey@kmklaw.com<br>mbuck@kmklaw.com<br>*Counsel for Defendant*<br>*General Tool Company* | Lawrence R. Elleman, Esq.<br>DINSMORE & SHOHL, LLP<br>1900 Chemed Center<br>255 East Fifth Street<br>Cincinnati, Ohio 45202<br>Telephone: (513) 977-8200<br>Facsimile: (513) 977-8141<br>E-mail: larry.elleman@dinslaw.com<br>*Counsel for Defendant*<br>*Southern Ohio Fabricators* |

**INTRODUCTION**

Pursuant to Section VI of the Court's Final Pretrial Order, Defendants hereby submit their proposed jury instructions.  These proposed instructions are adopted from the instructions given by Judge Weber in the False Claims Act *qui tam* case of United States ex rel. Stevens v. Ashland, Inc., C-1-93-442 ("Ashland").  The Ashland instructions are attached hereto as Exhibit A.  To the extent Defendants have requested instructions supplemental to or substantively different from those given by this Court in Ashland, citations to authorities for such supplements or additions are included.  Requested instructions not providing additional authority rely on those given by Judge Weber in Ashland.

## TABLE OF CONTENTS

1. FUNCTION OF THE JURY ................................................................ 6

2. BURDEN OF PROOF ..................................................................... 8

3. EVIDENCE.............................................................................. 9

4. DIRECT AND CIRCUMSTANTIAL EVIDENCE ............................................. 11

5. CREDIBILITY OF WITNESSES ........................................................... 12

6. EXHIBITS .............................................................................. 14

7. SUMMARIES, CHARTS, AND DIAGRAMS .................................................. 15

8. DEPOSITIONS .......................................................................... 16

9. STIPULATIONS ......................................................................... 17

10. OPINION WITNESS ..................................................................... 18

11. COMPENSATION OF OPINION WITNESS .................................................. 19

12. CORPORATIONS ........................................................................ 20

13. AGENTS ............................................................................... 21

14. MULTIPLE DEFENDANTS................................................................ 22

15. CLAIMS OF THE PARTIES .............................................................. 24

16. THE FALSE CLAIMS ACT ............................................................... 25

17. FALSE CLAIMS UNDER 31 U.S.C. § 3729(a)(1) - THE STATUTE................. 26

18. FALSE CLAIM UNDER 31 U.S.C. § 3729(a)(1) - ELEMENTS........................ 27

19. FALSE CLAIMS UNDER 31 U.S.C. § 3729(a)(2) - THE STATUTE................. 28

20. FALSE CLAIMS UNDER 31 U.S.C. § 3729(a)(2) - ELEMENTS ...................... 29

21. FALSE CLAIMS UNDER 31 U.S.C. § 3729(a)(3) - THE STATUTE................. 30

22. FALSE CLAIMS UNDER 31 U.S.C. § 3729(a)(3) – ELEMENTS...................... 31

23.    MATERIALITY ............................................................................... 32

24.    "KNOWING" AND "KNOWINGLY" - DEFINED ............................... 34

25.    "FALSE OR FRAUDULENT" – DEFINED ......................................... 36

26.    CLAIM – DEFINED ......................................................................... 38

27.    LIABILITY OF SUBCONTRACTOR ................................................. 39

28.    EFFECT OF GOOD FAITH INTERPRETATION OF CONTRACT
       TERM OR  REGULATION ................................................................ 41

29.    EFFECT OF GOVERNMENT KNOWLEDGE ..................................... 42

30.    INTERVENTION BY THE GOVERNMENT ........................................ 44

31.    RELATORS' INTEREST IN THE LITIGATION ................................. 45

32.    RETALITORY DISCHARGE UNDER THE FALSE CLAIMS
       ACT – 31 U.S.C.§ 3730(h) .............................................................. 46

33.    RETALITORY DISCHARGE UNDER THE FALSE CLAIMS
       ACT – 31 U.S.C.§ 3730(h) – ELEMENTS .......................................... 47

34.    WRONGFUL DISCHARGE:  PUBLIC POLICY TORT
       UNDER OHIO LAW ......................................................................... 48

35.    NUMBER OF FALSE CLAIMS ......................................................... 50

36.    PREFACE TO INSTRUCTION ON DAMAGES  .................................. 51

37.    DAMAGES – GENERAL ................................................................... 52

38.    DAMAGES – FALSE CLAIMS ACT ................................................. 53

39.    VERDICT FORM ............................................................................. 55

40.    CLOSING REMARKS ....................................................................... 56

## JURY INSTRUCTIONS

Defendants' Requested Instruction No. 1:  FUNCTION OF THE JURY

Members of the jury, your job as jurors is to determine the issues of fact presented by the claims of the Relators and reach a just verdict.

In doing your job, you must follow the law as stated in these instructions and apply these rules of law to the facts you find from the legal evidence.

You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole.

You are not to be concerned with the wisdom of any rule of law.  Regardless of any opinion you may have as to what the law ought to be, it would be a violation of your sworn duty to base a verdict upon any other issue of law than that given in these instructions, just as it would be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything but the legal evidence in the case.

You are to perform this duty without bias or prejudice as to any party.  Our system of law does not permit jurors to be governed by sympathy, prejudice, or public opinion.  Both the parties and the public expect that you will carefully and impartially consider all the legal evidence in the case, follow the law as stated by the Court, and reach a just verdict, regardless of the consequences.

This case should be considered and decided by you as an action between persons of equal worth and equal standing in the community.  Businesses, corporations and governmental units are entitled to the same fair trial at your hands as private individuals.  All persons, including businesses, corporations and governmental units, stand equal before the law, and are to be dealt with as equals in a court of justice.  Sympathy for a party, or prejudice against a party, should play no part in your deliberations or in your decision.

6

Unless otherwise stated, the jury should consider each instruction given to apply separately and individually to each party.

Defendants' Requested Instruction No.2:  BURDEN OF PROOF

The Relators have the burden of proof—that is, they have the obligation to prove each of their claims by a preponderance of the legal evidence.

Preponderance of the legal evidence is the greater weight of the evidence; that is, legal evidence that you believe because it outweighs or overbalances in your minds the legal evidence opposed to it and because it is more probable, more persuasive, or of greater probative value.  It is the quality of the legal evidence that must be weighed.  Quality is not necessarily identical with quantity or the greater number of witnesses.

If the weight of the legal evidence is equally balanced or if you are unable to determine which side of an issue has been proved by a preponderance of the legal evidence, the Relators who have the burden of proof have not established such issue by a preponderance of the legal evidence.

In determining whether any fact in issue has been proved by a preponderance of the legal evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received as legal evidence, regardless of who may have produced them.

This rule of law does not, of course, require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In a civil action such as this, it is proper to find that Relators have succeeded in carrying the burden of proof on an issue of fact if, after consideration of the legal evidence, the jurors believe that what is sought to be proved on that issue is more likely true than not true.

Defendants' Requested Instruction No. 3:  EVIDENCE

Legal evidence is the testimony of witnesses, the exhibits that you will have with you in the jury room (regardless of who may have produced them), and the facts which have been admitted or stipulated.

Once facts have been proved by the legal evidence, you may then draw such reasonable inferences from those facts you feel are justified in the light of your experience.

The legal evidence does not include the exhibits which have not been given to you in the jury room, or the opening statements or the closing arguments of counsel.  The opening statements and closing arguments of counsel and the exhibits used for demonstrative purposes are designed to assist you.  They are not legal evidence.

Statements or answers which were stricken by the Court or which you were instructed to disregard are not legal evidence and must be treated as though you never heard them.  Likewise, anything you may have perceived outside the courtroom is not legal evidence and must be entirely disregarded.

You must not speculate as to why the Court sustained the objection to any questions or what the answer to such question might have been.  You must not draw any inference or speculate on the truth of any suggestion included in a question that was not answered.  It is the duty of the attorneys on both sides to make their objections and to protect the interest of their clients; you are not to infer in any manner that either side was attempting to withhold any evidence from you as a result of objecting to the evidence, whether it was subsequently admitted by the Court or subsequently ruled inadmissible.

You must not draw any inference or speculate on the truth of any suggestion included in a question that was not answered.

If a lawyer asks a witness a question which contains an assertion of fact, you may not consider the assertion of fact as legal evidence of that fact unless adopted or confirmed by the witness.  The lawyer's assertions of facts are not legal evidence.  The questions of lawyers may be considered, however, to the extent that they give meaning to the answers of the witness.

Defendants' Requested Instruction No. 4:  DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are, generally speaking, two types of legal evidence from which a jury may properly find the truth as to the facts of a case.

Direct evidence is testimony given by a witness who has personal knowledge of the facts to which he or she testifies.

Circumstantial evidence is the proof of facts or circumstances by direct evidence from which you may reasonably infer other related or connected facts which naturally and logically follow, according to the common experience of people.

To infer, or to make an inference, is to reach a reasonable conclusion of fact which you may but are not required to make from other facts which you find have been established by direct evidence.  Whether an inference is made rests entirely with you.

You may not build one inference from another inference which is unsupported by any additional facts, but you may make more than one inference from the same facts or circumstances if it is reasonable to do so.  Additionally, you may not draw inferences from a speculative or remote basis that has not been established by the legal evidence.

As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts in accordance with the legal evidence in the case, both direct and circumstantial.

Defendants' Requested Instruction No. 5:  CREDIBILITY OF WITNESSES

In your effort to determine the facts, you will be faced with the problem of what weight should be given to the testimony of each witness.  You must determine how credible or believable any witness is.  You may believe all that a witness tells you, part of what he or she tells you, or none of what he or she tells you.

Consider carefully the circumstances under which each witness testified. Remember the response to questions, assurance or lack of it in answering, and the entire demeanor or appearance of the witness while on the witness stand.  Consider also any relationship that a witness may bear to either side of the case, their reasons for testifying, any interest they may have in the outcome of the case, any prejudice or bias they may have shown, including any reason or motivation to bear hostility or animosity toward any party, and any partiality they may have demonstrated.

In dealing with contradictory testimony, you may consider which testimony is supported or contradicted by the exhibits admitted into legal evidence.

Material inconsistencies or discrepancies in the testimony of a witness or between the testimony of different witnesses may or may not cause you to discredit that testimony.  In considering the effect of a discrepancy, do not be misled by an unimportant detail, but do consider all discrepancies that relate to matters of importance.  Consider also whether a discrepancy resulted from an innocent error or an intentional falsehood.

Keep in mind that two individuals rarely, if ever, describe an incident precisely alike in all minute details; note that one individual rarely, if ever, describes the same incident twice in the same minute detail.

In your daily life, you are constantly determining who is worthy of belief and who is not.  In this case, employ the same tests in determining who is worthy of belief and who is not.

12

Employ the same tests in determining the weight and credibility, if any, you will assign to the testimony of each witness who testified in this trial.

If you believe that witnesses have been discredited as to a part of their testimony, you may give the balance of their testimony such credence, if any, that you believe it deserves.

<u>Defendants' Requested Instruction No. 6</u>:  EXHIBITS

A number of exhibits and testimony related to them have been introduced.  You will determine what weight, if any, the exhibits should receive in light of all the legal evidence.

You may note that parts of some documents have not been introduced and are not part of the exhibits with you in the jury room.  The parts of the documents that have been omitted are not relevant to your deliberations and are not legal evidence.

<u>Defendants' Requested Instruction No. 7</u>:  <u>SUMMARIES, CHARTS, AND DIAGRAMS</u>

   Summaries, charts or diagrams prepared by a witness or a party and submitted to you in the jury room are received for the purpose of explaining facts disclosed by testimony and other documents which are legal evidence in the case.  Such summaries, charts or diagrams, however, are not in and of themselves proof of any facts.  If such summaries, charts or diagrams do not correctly reflect facts or figures shown by the legal evidence in the case, you must disregard them.

Defendants' Requested Instruction No. 8:  DEPOSITIONS

During the trial of this case, certain testimony has been given by way of deposition.   The testimony of a witness who, for some reason, cannot be present to testify from the witness stand may be presented in writing or by videotape, under oath, in the form of a deposition.   The testimony is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by you in the same way as if the witness had been present, and had testified from the witness stand.

Defendants' Requested Instruction No. 9:  <u>STIPULATIONS</u>

When a party stipulates or admits as to the evidence of a fact, you must accept the stipulation or admission as legal evidence, and regard the fact as proven.

<u>Defendants' Requested Instruction No. 10</u>: <u>OPINION WITNESS</u>

In this case, you have heard the testimony of witnesses who have rendered opinions. Persons who have experience in any art, science, profession, or calling, may state their opinions in a matter which is relevant to the case. They may also state the reasons for their opinion.

You should consider each opinion received in this case separately and give it such weight as you think it deserves. You may consider the education, training, and experience of the opinion witnesses when determining the weight of their opinions. You may reject the opinion in whole or in part if you conclude the reasons given in support of the opinions are unsound.

As with other witnesses, however, you must decide what weight should be given the testimony of each opinion witness. In determining its weight, you may take into consideration the witness's knowledge, experience, education, truthfulness and familiarity with the facts of the case as well as other means of testing credibility and determining the weight to be given to the testimony. In short, you may use all those tests you ordinarily use in everyday life to determine whether an individual is well-informed regarding the matters he or she has talked about.

<u>Defendants' Requested Instruction No. 11</u>:  <u>COMPENSATION OF OPINION WITNESS</u>

You will recall that during the trial, opinion witnesses were asked if they had been or will be compensated for their services.  It is not improper for an opinion witness to be compensated for their services.  It is a customary and accepted procedure.  No possible suggestion of impropriety results from compensation for the services of an opinion witness, including compensation for giving testimony at trial.

Defendants' Requested Instruction No. 12:  CORPORATIONS

At law, a corporation (such as General Motors, Allison Engine, General Tool Company, or Southern Ohio Fabricators) is a "person" and must be regarded as such.

The acts of corporate officers and management employees within the scope of their employment and that have some connection with the furtherance of the business of the corporation are the acts of that corporation.

**AUTHORITIES:**  United States v. Carter, 311 F.2d 934, 941-42 (6th Cir. 1963), *cert. denied*, Felice v. United States, 373 U.S. 915 (1963) (a corporation may act through the conduct of its officers and management employees only if their acts are with knowledge, related to and done within the course of their employment, and have some connection with the furtherance of the business of the corporation).

<u>Defendants' Requested Instruction No. 13</u>:  <u>AGENTS</u>

A corporation, which is a legal entity, can act only through its agents; that is, the people who make up the management of the corporation or others who are agents for the company.  If you find that a member of a Defendant's management, acting in the furtherance of the business of the corporation and within the scope of his authority, had knowledge of a particular fact, then you should find that that Defendant as a corporation had knowledge of that fact.  The actual knowledge of an agent or manager of a corporation is said to be "imputed" to the corporation.

If you find that a Defendant's managers acted in the furtherance of the business of the corporation and within the scope of their authority, then their conduct and decisions must be imputed to that Defendant as well.


**AUTHORITIES:**  <u>Hanson v. Kynast</u>, 494 N.E. 2d 1091, 1094 (Ohio 1986) ("[T]he relationship of principal and agent . . . exists only when one party exercises the right of control over the actions of another, and those actions are directed toward the attainment of an objective which the former seeks."); <u>United States v. Carter</u>, 311 F.2d 934, 941-42 (6th Cir. 1963), *cert. denied*, <u>Felice v. United States</u>, 373 U.S. 915 (1963) (a corporation may act through the conduct of its officers and management employees only if their acts are with knowledge, related to and done within the course of their employment, and have some connection with the furtherance of the business of the corporation).

Defendants' Requested Instruction No. 14:  MULTIPLE DEFENDANTS

Although there is more than one Defendant in this action, it does not follow from that fact alone that if one Defendant is liable, all Defendants are liable.  Each Defendant is entitled to a fair consideration of the evidence.  No one Defendant is to be prejudiced should you find against another Defendant.

Unless otherwise stated, the instructions I give you concerning alleged violations of the False Claims Act relating to the production, fabrication, testing and inspection of the Navy Generator Sets govern the case as to each individual Defendant.  The instructions I give you relating to Relator Sanders' claims of retaliation in the workplace concern only Defendant General Tool Company.

When considering the Relators' claims against the entity referred to during the trial as "Allison" or "Allison Engine," you must distinguish between General Motors Corporation and Allison Engine Company.  The Relators' claims relating to the time period before December 1, 1993 are claims against General Motors.  The Relators' claims relating to the time period after December 1, 1993 are claims against the company I will refer to from now on as "Allison Engine."  Just as with the other Defendants in this case, these two Defendants are entitled to an independent and fair consideration of the evidence.

**AUTHORITIES:**  3 Fed. Jury Prac. & Instr. § 103.14 (5th ed. 2004); Guerrero v. Allison Engine Co., 725 N.E.2d 479, 480 (Ind. App. 2000) ("On December 1, 1993, Allison paid cash for the assets of GM/Allison.  No stock was transferred as a part of the consideration of the sale. No members of GM's Board of Directors became members of Allison's Board of Directors …. *As part of the purchase agreement, Allison assumed no liability for claims of damage, injury, or death arising from or relating to any product designed, manufactured, acquired, marketed or sold prior to the closing date of the asset sale.  After the asset sale, GM and Allison were separate and distinct companies.*  GM remained in business and was not dissolved.  Allison adopted a new corporate logo and the GM logo was removed from equipment, vehicles, and signs purchased by Allison …. Allison used a different tax identification number and government cage code than that used by GM.  Allison also obtained a new classified clearance from the United States government.") (emphasis added); id. at 483 ("When one corporation purchases the assets of another, the buyer does not assume the debts and liabilities of the seller

…. [Under the exceptions to this rule], a successor corporation is liable only when the predecessor corporation no longer exists.") (internal citations omitted); Markham v. Prutsman Mirror Co., 565 N.E.2d 385, 387 (Ind. App. 1991) ("Under the well-settled rule of corporate law, where one company sells or transfers all of its assets to another, the second entity does not become liable for the debts and liabilities, including torts, of the transferor."); Rego v. ARC Water Treatment Co. of Pa., 181 F.3d 396, 401 (3d Cir. 1999) ("Ordinarily, … absent a contractual obligation to do so, a successor corporation does not assume the liabilities of its predecessor."); Moriarty v. Svec, 164 F.3d 323, 327 (7th Cir. 1998) (a successor entity does not assume the liability of its predecessor); Raytech Corp. v. White, 54 F.3d 187, 192 n.6 (3d Cir. 1995) ("It is a well-settled rule of corporate law [that] where one company sells or transfers all of its assets to another, the second entity does not become liable for the debts and liabilities, including torts, of the transferor.  This then is the general rule of successor liability, recognized in all jurisdictions:   when a corporation purchases all or most of the assets of another corporation, the purchasing corporation does not assume the debts and liabilities of the selling corporation.") (internal citations and quotations omitted).

Defendants' Requested Instruction No. 15:  CLAIMS OF THE PARTIES

Relators Roger Sanders and Roger Thacker bring this action in the name of the United States against Defendants General Motors, Allison Engine, General Tool Company, and Southern Ohio Fabricators under the False Claims Act, 31 U.S.C. § 3729, *et seq.*

First, Relators claim that Defendants violated 31 U.S.C. § 3729(a)(1) by knowingly presenting or causing to be presented to the United States false claims relating to the production, fabrication, testing and inspection of Generator Sets for the Navy's Arleigh Burke Class Destroyers.

Second, Relators claim that Defendants violated 31 U.S.C. § 3729(a)(2) by knowingly making or causing to be made or used, false records or statements to get false or fraudulent claims paid or approved by the United States relating to the production, fabrication, testing and inspection of Generator Sets for the Navy's Arleigh Burke Class Destroyers.

Third, Relators claim that Defendants violated 31 U.S.C. § 3729(a)(3) by conspiring to defraud the United States by getting false or fraudulent claims allowed or paid by the United States.

Fourth, Relator Sanders claims that General Tool Company violated 31 U.S.C. § 3730(h) by illegally retaliating against him in the workplace for his actions as a relator.

Fifth, Relator Sanders claims that General Tool Company violated Ohio public policy by illegally retaliating against him in the workplace for his actions as a relator.

Defendants deny each and every one of the claims of the Relators.

<u>Defendants' Requested Instruction No. 16</u>:  <u>THE FALSE CLAIMS ACT</u>

The False Claims Act is a federal law which allows a private citizen, known as a "Relator," to bring an action in the name of the United States Government against any person who has allegedly knowingly submitted or caused to be submitted, or knowingly made or caused to be made, a false claim to the United States.  Such cases are known as "qui tam" actions.  If a relator is successful in obtaining a recovery for the United States, the Court awards a portion of the recovery to the relator, and the remainder of the recovery is returned to the United States treasury.

The False Claims Act is intended to reach only those types of fraud which might result in financial loss to the United States.

<u>Defendants' Requested Instruction No. 17</u>:  <u>FALSE CLAIMS UNDER 31 U.S.C. § 3729(a)(l) -
THE STATUTE</u>

Title 31 U.S.C. § 3729(a)(l) provides:

Any person who knowingly presents, or causes to be presented, to
an officer or employee of the United States Government . . . a false
or fraudulent claim for payment or approval . . . is liable to the
United States Government . . . .

<u>Defendants' Requested Instruction No. 18</u>:  <u>FALSE CLAIM UNDER 31 U.S.C. § 3729(a)(1) -</u>
<u>ELEMENTS</u>

In order to prove a claim under 31 U.S.C. § 3729(a)(1), the Relators must prove by a preponderance of the legal evidence that:

(1)     a Defendant presented or caused to be presented;

(2)     a false or fraudulent claim for payment or approval;

(3)     to an officer or employee of the United States Government; and

(4)     the Defendant knew that the claim was false or fraudulent.

If you find that Relators have failed to prove any one of these elements as to any individual Defendant by a preponderance of the legal evidence, then you must answer Special Verdict No. 1 "No" as to that Defendant.

**<u>AUTHORITIES:</u>**     31 U.S.C. § 3729(a)(1).

<u>Defendants' Requested Instruction No. 19</u>:  <u>FALSE CLAIMS UNDER 31 U.S.C. § 3729(a)(2) - THE STATUTE</u>

Title 31 U.S.C. § 3729(a)(2) provides:

Any person who knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the [United States] Government . . . is liable to the United States Government . . . .

Defendants' Requested Instruction No. 20:  FALSE CLAIM UNDER 31 U.S.C. § 3729(a)(2) - ELEMENTS

        In order to prove a claim under 31 U.S.C. § 3729(a)(2), the Relators must prove by a preponderance of the legal evidence that:

        (1)      a Defendant made, used, or caused to be made or used, a record or statement;

        (2)      the record or statement was used to get a claim paid or approved by the United States;

        (3)      the record or statement was false and the claim was false or fraudulent; and

        (4)      the Defendant knew that the record or statement and the claim were false or fraudulent.

        If you find that the Relators have failed to prove any one of these elements as to any individual Defendant by a preponderance of the legal evidence, then you must answer Special Verdict No. 2 "No" as to that Defendant.

**AUTHORITIES:**      31 U.S.C. § 3729(a)(2).

<u>Defendants' Requested Instruction No. 21</u>:  <u>FALSE CLAIMS UNDER 31 U.S.C. § 3729(a)(3) -
THE STATUTE</u>

Title 31 U.S.C. § 3729(a)(3) provides:

Any person who conspires to defraud the [United States]
Government by getting a false or fraudulent claim allowed or paid .
. . is liable to the United States Government . . .

Defendants' Requested Instruction No. 22:  FALSE CLAIM UNDER 31 U.S.C. § 3729(a)(3) -
ELEMENTS

In order to prove a claim under 31 U.S.C. § 3729(a)(3), the Relators must prove

by a preponderance of the legal evidence that:

    (1)    a Defendant knowingly conspired with one or more persons to get a false

or fraudulent claim allowed or paid by the United States;

    (2)    one or more of the conspirators performed an act to effect the object of the

conspiracy; and

    (3)    the United States suffered damages as a result of the false or fraudulent

claim.

If you find that the Relators have failed to prove any one of these elements as to

any individual Defendant by a preponderance of the legal evidence, then you must answer

Special Verdict No. 3 "No" as to that Defendant.

**AUTHORITIES:**    31 U.S.C. § 3729(a)(3).

<u>Defendants' Requested Instruction No. 23</u>:  MATERIALITY

"Materiality" is an additional element of a claim under the False Claims Act.  A contract requirement is "material" if compliance or noncompliance with the requirement would have influenced the Government's decision to pay or not to pay a claim for payment submitted under the contract.

In other words, a claim can be false only if the Government would not have paid the claim if it had known the true facts about the alleged misconduct.  If a Defendant's noncompliance with a contract requirement would not have influenced or was incapable of influencing the Government's decision to pay the claim, you may not find that Defendant liable under the False Claims Act.

**AUTHORITIES**:  <u>U.S. v. Southland Management Corp.</u>, 326 F.3d 669, 679 (5th Cir. 2003) (en banc) (Jones, J., specially concurring) ("[T]here should no longer be any doubt that materiality is an element of a civil False Claims Act case.  Our past precedent and every circuit that has addressed the issue have so concluded.") (collecting cases); <u>U.S. ex rel. Augustine v. Century Health Servs., Inc.</u>, 289 F.3d 409, 415 (6th Cir. 2002) (holding that FCA liability may attach under a false implied certification theory where a defendant violates a duty to comply with regulations "on which payment is conditioned"); <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 785 (4th Cir. 1999); <u>Luckey v. Baxter Healthcare Corp.</u>, 183 F.3d 730, 732-33 (7th Cir. 1999) (relator must show "the omitted facts were material to the listener's decision," and relator's claim failed because she offered no evidence showing that the alleged impropriety "was material to the United States' buying decision"); <u>United States ex rel. Berge v. Board of Trustees of Univ. of Ala.</u>, 104 F.3d 1453, 1459-1460 (4th Cir.), <i>cert. denied</i>, 522 U.S. 916 (1997) (The test for determining materiality is "whether the false statement has a natural tendency to influence agency action or is capable of influencing agency action."); <u>United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.</u>, 125 F.3d 899, 902 (5th Cir. 1997); <u>U.S. ex rel Schell v. Battle Creek Health System</u>, No. 1:00-CV-143, 2004 WL 784978, at *3-4 (W.D. Mich. Feb. 25, 2004) (adopting materiality requirement and observing that, "although the Sixth Circuit has not addressed materiality in connection with the False Claims Act," the "more persuasive authority holds that reliance on the false statement or record by the government is a required element of a claim alleging submission of a false record or statement to the government," and the Sixth Circuit's materiality test in criminal false claims cases "is consistent with other Circuits requiring materiality under the False Claims Act"); <u>U.S. v. President and Fellows of Harvard College</u>, 323 F. Supp. 2d 151, 181-82 (D. Mass. 2004) ("In addition to the FCA's explicit requirements, courts have inferred a requirement that the false statement or claim be material …. Whether a false statement is material depends on whether it has a natural tendency to influence agency action or is capable of influencing agency action.") (internal citations omitted); <u>U.S. ex rel. Stebner v. Stewart & Stevenson Services, Inc.</u>, 305 F. Supp. 2d

694, 698 (S.D. Tex. 2004) ("Whether a claim is 'false or fraudulent' depends upon the materiality of the alleged falsity or fraudulence at issue. FCA liability does not occur unless the act averred to be false or fraudulent is material to the monetary or property claim submitted to the Government. In fact, FCA liability does not exist if the alleged fraudulent act had no bearing on the Government's payment decision."); U.S. v. Medica-Rents Co., 285 F. Supp. 2d 742, 769 and n.62 (N.D. Tex. 2003) ("Liability for both a 'false claim' and a 'fraudulent claim' implicitly requires a showing that what makes the claim either false or fraudulent is material to the asserted claim of entitlement to receive money or property from the government …. The plaintiffs … believe that materiality is not a separate element …. After reviewing the case precedent, the Court concludes that materiality is a necessary element of a cause of action under the FCA.") (collecting cases); United States ex rel. Wilkins v. North Am. Constr. Corp., 173 F. Supp. 2d 601, 623, 624, 635-38 (S. D. Tex. 2001) (discussing issue of materiality extensively and adopting materiality requirement); United States ex rel. Lamers v. City of Green Bay, 998 F. Supp. 971, 991-92 (E.D. Wis. 1998); United States ex rel. Durcholz v. FKW, Inc., 997 F. Supp. 1159, 1167 (S.D. Ind. 1998).

<u>Defendants' Requested Instruction No. 24</u>: <u>"KNOWING" AND "KNOWINGLY" – DEFINED</u>

The False Claims Act defines "knowing" and "knowingly" as meaning that a person, with respect to information:

(1)     has actual knowledge of the information;

(2)     acts in deliberate ignorance of the truth or falsity of the information; or

(3)     acts in reckless disregard of the truth or falsity of the information.

Under this definition, no proof of specific intent to defraud is required. However, innocent mistakes or negligence are not actionable under the False Claims Act. Likewise, a breach of contract or violation of a law or regulation is not by itself actionable under the False Claims Act. What is actionable is the knowing presentation of a claim that is known to be fraudulent or false by a Defendant. In short, to violate the False Claims Act, a Defendant's claim or statement must be a lie.

**AUTHORITIES:**     <u>U.S. v. Taber Extrusions, LP</u>, 341 F.3d 843, 845 (8th Cir. 2003) ("[I]nnocent mistakes and negligence are not offenses under the Act .... In short, the claim must be a lie."); <u>U.S. ex rel. Lamers v. City of Green Bay</u>, 168 F.3d 1013, 1020 (7th Cir. 1999) ("The FCA is a fraud prevention statute; violations of Federal Transit Act regulations are not fraud unless the violator knowingly lies to the government about them."); <u>U.S. v. Basin Elec. Power Co-op.</u>, 248 F.3d 781, 805 (8th Cir. 2001) ("[A] breach of contract alone does not constitute a false claim for payment."); <u>United States ex rel. Hopper v. Anton</u>, 91 F.3d 1261, 1265 (9th Cir. 1996) (agreeing with the district court's analysis that "[i]t is not the case that any breach of contract ... automatically gives rise to a claim under the FCA .... The FCA is far narrower. It requires a false claim."); <u>Hindo v. University of Health Sciences/The Chicago Med. School</u>, 65 F.3d 608, 613 (7th Cir. 1995) ("Innocent mistakes or negligence are not actionable under this section. [W]hat constitutes the offense is not intent to deceive but knowing presentation of a claim that is either fraudulent or simply false. The requisite intent is the knowing presentation of what is known to be false. In short, the claim must be a lie.") (internal quotations and citations omitted); <u>Wang v. FMC Corp.</u>, 975 F.2d 1412, 1420-21 (9th Cir. 1992) ("Wang's criticism of the engineer's calculations, even if accurate, proves no more than an 'innocent mistake.' Wang only says that the miscalculation reflected the engineer's 'very low level of understanding.' Bad math is no fraud .... [While] a 'lack of engineering insight' .... might be proof of a 'mistake' or even of 'negligence' in performing the work[,] there is no evidence that FMC showed 'deliberate ignorance' of false claims for payment based upon that work. Proof of one's mistakes or inabilities is not evidence that one is a cheat .... The weakest account of the Act's 'requisite intent' is the 'knowing presentation of what is known to be false.' The phrase 'known to be false' in that sentence does not mean 'scientifically untrue'; it means 'a lie.'"); <u>U.S. ex rel. Bettis</u>

34

v. Odebrecht Contractors of California, Inc., 297 F. Supp. 2d 272, 277 (D.D.C. 2004) ("In short, the claim must be a lie …."); U.S. ex rel. Roby v. Boeing Co., 100 F. Supp. 2d 619, 626 (S.D. Ohio 2000) (quoting Hindo, 65 F.3d at 613 ("In short, the claim must be a lie."); Gross ex rel. U.S. v. Aids Research Alliance-Chicago, No. 01 C 8182, 2004 WL 905952, at *5 (N.D. Ill. Apr. 27, 2004) ("[A] defendant's violations of applicable federal regulations are not fraud under the FCA unless the defendant knowingly lies to government about them."); U.S. ex rel. Atkinson v. Pennsylvania Shipbuilding Co., No. Civ.A. 94-7316, 2004 WL 1686958, at *4 (E.D. Pa. Jul. 28, 2004) ("It is also not the case that 'any breach of contract, or violation of regulations or law, or receipt of money from the government where one is not entitled to receive the money, automatically gives rise to a claim under the FCA.'") (quoting United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1265 (9th Cir. 1996)); U.S. ex rel. Garst v. Lockheed Integrated Solutions Co., 158 F. Supp. 2d 816, 823 (N.D. Ill. 2001) (relator's "allegation amounts to negligence or breach of contract, not a violation of the FCA").

Defendants' Requested Instruction No. 25:  "FALSE OR FRAUDULENT" – DEFINED

The False Claims Act uses the word "or" when it prohibits "false or fraudulent" claims.  The claim need not be both false and fraudulent.

However, the False Claims Act requires proof of an objective falsehood. Statements that express opinions cannot be false, nor can statements about scientific judgments, or statements as to conclusions about which reasonable minds can differ.  Errors based simply on faulty calculations or flawed reasoning are not false.  The common failings of engineers and other scientists are not culpable under the False Claims Act.  The False Claims Act is concerned with ferreting out wrongdoing, not scientific errors.  What is false as a matter of science is not, by that very fact, wrong as a matter of morals.

Imprecise statements or differences in interpretation growing out of a disputed legal question similarly are not false.  Again, innocent mistakes or negligence are not actionable under the False Claims Act; in order to be "false," a claim must be a lie.

In a case where the truth or falsity of a statement centers on an interpretive question of law, the Relators bear the burden of proving that a Defendant's statement is not true under any reasonable interpretation of the law.

**AUTHORITIES:**  United States ex rel. Marcus v. Hess, 317 U.S. 537, 543-44 (1943); U.S. v. Taber Extrusions, LP, 341 F.3d 843, 845 (8th Cir. 2003) ("[I]nnocent mistakes and negligence are not offenses under the Act .... In short, the claim must be a lie."); Pfingston v. Ronan Engineering Co., 284 F.3d 999, 1002-03 (9th Cir. 2002) ("The False Claims Act … prohibits persons from knowingly presenting a false or fraudulent claim for payment or approval by the federal government …. 'False' does not mean 'scientifically untrue, but a lie.'") (quoting Wang v. FMC Corp., 975 F.2d 1412, 1421 (9th Cir. 1992) ("[T]he common failings of engineers and other scientists are not culpable under the Act.  The Act is concerned with ferreting out 'wrongdoing,' not scientific errors.  What is false as a matter of science is not, by that very fact, wrong as a matter of morals.  The Act would not put either Ptolemy or Copernicus on trial.") (internal citations omitted)); United States v. Whiteside, 285 F.3d 1345, 1351 (11th Cir. 2002); Mikes v. Straus, 274 F.3d 687, 696 (2d Cir. 2001); United States ex rel. Lamers v. City of Green Bay, 168 F.3d 1013, 1018 (7th Cir. 1999); Hagood v. Sonoma County Water Agency, 81 F.3d 1465, 1477-78 (9th Cir. 1996); Peterson v. Weinberger, 508 F.2d 45 (5th Cir. 1975), cert. denied, 423 U.S. 830 (1975); Fleming v. United States, 336 F.2d 475 (10th Cir. 1964), cert. denied, 380

U.S. 907 (1965); <u>U.S. ex rel. Bettis v. Odebrecht Contractors of California, Inc.</u>, 297 F. Supp. 2d 272, 291 (D.D.C. 2004) ("Disputed legal issues do not constitute fraud.") (citing <u>UMC Elec. Co. v. United States</u>, 43 Fed. Cl. 776, 794 (Fed. Cl. 1999) (a contractor who "takes advantage of a disputed legal issue does not knowingly commit fraud"), *aff'd* 249 F.3d 1337 (Fed. Cir. 2001)); <u>United States ex rel. Roby v. Boeing Co.</u>, 100 F. Supp. 2d 619, 625 (S.D. Ohio 2000) ("At a minimum, the FCA requires proof of an objective falsehood. Expressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false. Similarly, … errors based simply on faulty calculations or flawed reasoning are not false under the FCA. And imprecise statements or differences in interpretation growing out of a disputed legal question are similarly not false under the FCA.") (citing and quoting, *inter alia*, <u>Lamers</u>, 168 F.3d at 1018; <u>Hagood</u>, 81 F.3d at 1477-78; and <u>Wang</u>, 975 F.2d at 1420-21)).

<u>Defendants' Requested Instruction No. 26</u>:  <u>"CLAIM" - DEFINED</u>

A "claim" is a request or demand, whether under a contract or otherwise, for money or property, which is made by a contractor or other recipient, if the United States provides any portion of the money or property which is requested or demanded.

Only requests which have the purpose of causing the Government to pay out money when it is not due are considered claims within the meaning of 31 U.S.C. §§ 3729(a)(1), (a)(2), and (a)(3) of the False Claims Act.

Defendants' Requested Instruction No. 27:  LIABILITY OF SUBCONTRACTOR

None of the Defendants in this case contracted directly with the Government. Bath Iron Works and Ingalls Shipbuilding were the prime contractors for the production, fabrication, testing and inspection of Generator Sets for the Navy's Arleigh Burke Class Destroyers, and each of the Defendants was a subcontractor.  Specifically, the Navy contracted with Bath and Ingalls, Bath and Ingalls contracted with Allison Engine, Allison Engine contracted with General Tool Company, and General Tool Company contracted with Southern Ohio Fabricators.  As a result, while Bath and Ingalls submitted claims directly to and received payment directly from the Government, Defendants in this case did not.

Therefore, if you find that neither Bath nor Ingalls submitted a false or fraudulent claim to the Government, then you may not find Defendants liable under the False Claims Act. Additionally, it does not follow from a finding that one Defendant caused Bath or Ingalls to submit a false or fraudulent claim that another Defendant caused Bath or Ingalls to submit a false or fraudulent claim.  In order to hold a Defendant liable under the False Claims Act, you must find that: (1) that individual Defendant failed to comply with material requirements in its contract without disclosing the known noncompliance; (2) that individual Defendant had "knowledge," as that term has been defined to you, that it was violating a material requirement of the contract; and (3) that individual Defendant caused Bath or Ingalls to submit a false claim to the Government.

**AUTHORITIES:**  United States v. Bornstein, 423 U.S. 303, 309 (1976) ("It is settled that the [FCA] ... gives the United States a cause of action against a subcontractor who causes a prime contractor to submit a false claim to the Government."); U.S. ex rel. Schmidt v. Zimmer, Inc., 386 F.3d 235, 233-34 (3d Cir. 2004); U.S. ex rel. Totten v. Bombardier Corp., 286 F.3d 542, 551 (D.C. Cir. 2002) ("[The FCA] attaches liability, not to underlying fraudulent activity, but to the 'claim for payment.'"); Costner v. URS Consultants, Inc., 153 F.3d 667, 677 (8th Cir. 1998) (same); U.S. ex rel. Hopper v. Anton, 91 F.3d 1261, 1266 (9th Cir. 1996) (same); U.S. ex rel. Stebner v. Stewart & Stevenson Services, Inc., 305 F. Supp. 2d 694, 704 (S.D. Tex. 2004) ("Without a false or fraudulent claim, FCA liability, as a matter of law, does not attach ….");

<u>Horizon West Inc. v. St. Paul Fire And Marine Ins. Co.</u>, 214 F. Supp. 2d 1074, 1077 (E.D. Cal. 2002) ("Liability under the FCA is based solely upon the creation or presentation of false claims to the government, not upon the underlying conduct used to establish the falsity of such a claim."); <u>U.S. ex rel. Wilkins v. North American Const. Corp.</u>, 173 F. Supp. 2d 601, 623-34 (S.D. Tex. 2001) ("If the knowing submission of a false statement to the government sufficed for liability under the FCA, then the insertion of the word 'false' to modify 'claim' is superfluous. The statute would only require that 'a false record or statement [be used] to get *a claim* paid or approved.' Instead, Congress required that a '*false* record or statement [be used] to get a *false* or fraudulent claim paid or approved.' The claim itself must be false, not merely contain a false statement …. Studied consideration of the words leads to the conclusion that the defendant's statements or conduct that form the basis of an FCA complaint must result in a claim that is false or fraudulent. Statements or conduct make a claim false only if they are material to the defendant's entitlement to the money or property claimed.") (emphasis in original); 3 Fed. Jury Prac. & Instr. § 103.14 (5th ed. 2004).

<u>Defendants' Requested Instruction No. 28</u>:  <u>EFFECT OF GOOD FAITH INTERPRETATION</u>
<u>OF CONTRACT TERM OR REGULATION</u>

        If Defendants relied on a good faith interpretation of a provision in their contracts,

or on a good faith interpretation of a statute or regulation, in an area where reasonable minds

could differ, then Defendants may not be held liable under the False Claims Act, even if their

interpretation was wrong.

**AUTHORITIES:**  <u>U.S. v. Basin Elec. Power Co-op.</u>, 248 F.3d 781, 805 (8th Cir. 2001) ("[We]
conclude that Basin's interpretation and performance under the contract was reasonable …. We
find that Norbeck's claim under the False Claims Act fails because he did not prove that Basin
acted with the requisite knowledge."); <u>United States ex rel. Oliver v. Parsons Co.</u>, 195 F.3d 457,
460 (9th Cir. 1999) ("A contractor relying on a good faith interpretation of a regulation is not
subject to liability, not because his or her interpretation was correct or 'reasonable' but because
the good faith nature of his or her action forecloses the possibility that the scienter requirement is
met."); <u>United States ex rel. Hochman v. Nackman</u>, 145 F.3d 1069, 1075 (9th Cir. 1998) ("Even
if the defendants erred in their interpretation of the [contract], the undisputed evidence
demonstrates that the defendants believed that the [contract] authorized their conduct."); <u>United
States ex rel. Hopper v. Anton</u>, 91 F.3d 1261, 1267 (9th Cir. 1996), *cert. denied*, 519 U.S. 1115
(1997) ("[D]ifferences in interpretation are not false certifications under the [FCA]."); <u>United
States ex rel. Butler v. Hughes Helicopters, Inc.</u>, 71 F.3d 321, 329 (9th Cir. 1995) ("The
improper interpretation or unauthorized amendment of a contract . . . does not constitute a false
claim for payment."); <u>Wang ex rel. United States v. FMC Corp.</u>, 975 F.2d 1412, 1420 (9th Cir.
1992) ("The requisite intent is the knowing presentation of what is known to be false.")
(quotation and citation omitted); <u>United States v. Race</u>, 632 F.2d 1114, 1120 (4th Cir. 1980) (A
statement is not false if it "may be said to be accurate within a reasonable construction of the
contract."); <u>U.S. ex rel. Bettis v. Odebrecht Contractors of California, Inc.</u>, 297 F. Supp. 2d 272,
291 n.30 (D.D.C. 2004) ("[A] contractor who presses a claim based on a 'plausible but erroneous
contract interpretation' will not be liable 'absent some specific evidence of knowledge that the
claim is false or of intent to deceive.'") (quoting <u>Commercial Contractors, Inc. v. United States</u>,
154 F.3d 1357, 1366 (Fed. Cir. 1998)); <u>United States ex rel. Durcholz v. FKW Inc.</u>, 997 F. Supp.
1143, 1154-55 (S.D. Ind. 1998) ("If [the contractor] believed he was issuing the order as a
performance specification and that using the conventional line item was proper, he lacked the
requisite knowledge under the FCA."); <u>United States ex rel. Reuter v. Sparks</u>, 939 F. Supp. 636,
638-39 (C.D. Ill. 1996), *aff'd mem.*, 111 F.3d 133 (7th Cir. 1997) (granting the contractor's
motion for directed verdict where the evidence showed that the contractor believed, albeit
erroneously, that the disputed payroll records were accurate); <u>United States v. Napco Intern.,
Inc.</u>, 835 F. Supp. 493, 497-98 (D. Minn. 1993) (granting summary judgment for the contractor
on the government's FCA claim where the contractor's certifications were truthful under a
reasonable construction of the disputed statute).

Defendants' Requested Instruction No. 29:  EFFECT OF GOVERNMENT KNOWLEDGE

In considering whether Defendants "knowingly" caused a false or fraudulent claim to be submitted, you must consider all direct and circumstantial evidence concerning whether one or more Government employees knew the relevant facts about the allegedly false claims or statements.  Government knowledge of the relevant facts may effectively negate a violation of the False Claims Act.  That is, if the Government knew of any alleged deficiencies identified by the Relators and discussed them with Defendants, then Defendants could not have been cheating the Government and may not be held liable under the False Claims Act.

Knowledge on the part of the Government may be established by circumstantial evidence.  If it appears that a certain condition has existed for a substantial period of time, and that the Government had regular opportunities to observe the condition, then you may draw the inference that the Government had knowledge of the condition.

**AUTHORITIES:**  U.S. ex rel. Werner v. Fuentez Systems Concepts, Inc., No. 04-1569, 2004 WL 2830713, *1 (4th Cir. 2004) ("[W]here the government knows and approves of the particulars of a claim for payment before that claim is presented, the presenter cannot be said to have knowingly presented a fraudulent or false claim.  In such a case, the government's knowledge effectively negates the fraud or falsity required by the FCA."); U.S. v. Southland Management Corp., 326 F.3d 669, 682 (5th Cir. 2003) (Jones, J., specially concurring) ("If the government knows and approves of the particulars of a claim for payment before that claim is presented, the presenter cannot be said to have knowingly presented a fraudulent or false claim. The inaptly-named 'government knowledge defense' captures the understanding that the FCA reaches only the 'knowing presentation of what is known to be false.'  Where the government and a contractor have been working together, albeit outside the written provisions of the contract, to reach a common solution to a problem, no claim arises.") (internal citations and quotations omitted); United Sates ex rel. Durcholz v. FKW, Inc., 189 F.3d 542, 545 (7th Cir. 1999) ("If the government knows and approves of the particulars of a claim . . . [its] knowledge effectively negates the fraud or falsity required by the FCA …. We decline to hold [defendant] liable for defrauding the government by following the government's explicit directions."); United States ex rel. Butler v. Hughes Helicopter Co., 71 F.3d 321, 326-27 (9th Cir. 1995) (directed verdict where evidence established that contractor had so completely cooperated and shared the testing discrepancies with the government that the government's knowledge negated any assertion that defendant "knowingly" submitted false claim); Wang v. FMC Corp., 975 F.2d 1412, 1421 (9th Cir. 1992) ("The government knew of all the deficiencies identified by Wang, and discussed them with FMC.  The fact that the government knew of FMC's mistakes and limitations, and that FMC was open with the government about them, suggests that while FMC might have been

groping for solutions, it was not cheating the government in the effort.  Without more, the common failings of engineers and other scientists are not culpable under the Act."); United States ex rel. Lamers v. City of Green Bay, 998 F. Supp. 971, 986-88 (E.D. Wis. 1998), *aff'd* 168 F.3d 1013 (7th Cir. 1999) ("'[T]he 'knowing' submission of fraudulent claims is logically impossible when responsible government officials have been fully apprised of all relevant information …. [T]he presence of an open dialogue with Government officials about relevant factual circumstances does mitigate a defendant's specific intent to defraud, or the degree to which false statements and claims were 'knowingly' submitted."); United States v. American Health Enterprises, Inc., No. 1:94-CV-450, 1996 WL 331106 (N.D. Ga. Apr. 24, 1996) (defendant notified the Government's private Medicare administrator of overpayment but did not notify the Government directly; court granted summary judgment for the defendant, holding that while defendant did not do all it could to notify the appropriate parties, the record did not show deliberate failure to notify); Woodbury v. United States, 232 F. Supp. 49, 54-55 (D. Or. 1964), *aff'd in relevant part*, 359 F.2d 370 (9th Cir. 1966) ("Government cannot claim that it was defrauded by false representations of another party where it had knowledge of the facts prior to payment of the claim.").

<u>Defendants' Requested Instruction No. 30</u>:  INTERVENTION BY THE GOVERNMENT

Under the False Claims Act, when a lawsuit is filed by a relator, such as Mr. Sanders or Mr. Thacker, the United States Government has the option of intervening in part or all of the case.  Here, the United States has declined to intervened in the case and is therefore not a party to this litigation.

The Relators in this case are not vested with any governmental powers, and they are not employees of the United States Government.  Likewise, the Relators' attorneys in this case are not employed by the United States Government and do not represent the United States.

**AUTHORITIES:**  31 U.S.C. § 3730(b)(4); <u>United States ex rel. Taxpayers Against Fraud v. General Electric Co.</u>, 41 F.3d 1032, 1041 (6th Cir. 1994) ("[A]lthough a relator may sue in the government's name, the relator is not vested with governmental power."); <u>United States ex rel. Kelly v. Boeing Co.</u>, 9 F.3d 743, 760 (9th Cir. 1993), *cert. denied,* 510 U.S. 1140 (1994) ("[T]he fact that relators sue in the name of the United States does not mean that they wield government powers .... The fact that relators sue in the name of the government is significant only with respect to their standing to sue ...."); <u>United States ex rel. Farrell v. SKF USA, Inc.</u>, No. 94-CV-157A, 1998 WL 265242, *3 (W.D.N.Y. May 18, 1998) ("[W]hile the *qui tam* relator is empowered as a private prosecutor, it is not empowered to replace the government .... [W]hile the United States may be the real party in interest in a *qui tam* action, the United States is not an actual party to the action in a case where it has declined to intervene .... [T]he court cannot find any support for the proposition that, in a *qui tam* action where the government has declined to intervene, that the government remains the actual plaintiff.  Accordingly, the court finds that, in this case, the United States is not a party plaintiff ...."); <u>United States ex rel. Lamers v. City of Green Bay, Wis.</u>, 924 F. Supp. 96, 98 (E.D. Wis. 1996) ("Although a relator may sue in the government's name, the relator is not vested with governmental power .... The False Claims Act empowers the *qui tam* relator to act as a private prosecutor but does not empower it to replace the government .... Although the *qui tam* plaintiff is relieved of the burden of establishing standing, it does not follow that because the relator is suing in the name of the United States that his counsel represents the United States in this action .... [T]he relator has clearly confused the distinction between the United States being a party and the United States being the real party in interest."); <u>United States by Department of Defense v. CACI International, Inc.</u>, 953 F. Supp. 74, 77 (S.D.N.Y. 1995).

<u>Defendants' Requested Instruction No. 31</u>:  <u>RELATORS' INTEREST IN THE LITIGATION</u>

      The Relators, Mr. Sanders and Mr. Thacker, each have a financial interest in the litigation.  If you find that Defendants violated the False Claims Act, Messrs. Sanders and Thacker will be entitled to receive between 25% and 30% of all sums recovered by the Government.  The sums the Government can recover consist of a penalty of between $5,000 and $10,000 dollars for each false or fraudulent claim you find that a Defendant knowingly caused to be submitted to the United States, plus three times the amount of any damages that you award under the False Claims Act relating to the production, fabrication, testing and inspection of Generator Sets for the Navy's Arleigh Burke Class Destroyers.

      Messrs. Sanders and Thacker will also be entitled to receive their reasonable expenses and attorneys' fees.

      You may consider the Relators' interest in this litigation in determining whether they have testified truthfully.

**AUTHORITIES:** 31 U.S.C. § 3730(d); <u>United States ex rel. Clausen v. Laboratory Corp. of Am., Inc.</u>, 290 F.3d 1301, 1307-08 (11th Cir. 2002); <u>United States ex rel. King v. Jackson Co. Hosp. Corp. of Mariana, Fl.</u>, 2001 U.S. Dist. LEXIS 21706, *10 (N.D. Fla. Aug. 17, 2001); <u>United States ex rel. Butler v. Magellan Heath Serv., Inc.</u>, 74 F. Supp. 2d 1201, 1205-06 (M.D. Fl. 1999); <u>United States v. CAC-Ramsey, Inc.</u>, 744 F. Supp. 1158, 1159 (S.D. Fla. 1990); <u>United States ex rel. Luther v. Consolidated Industries, Inc.</u>, 720 F. Supp. 919, 921 (N.D. Ala. 1989); see also <u>United States v. Abel</u>, 469 U.S. 45, 52 (1984) ("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."); <u>United States v. Fusco</u>, 748 F.2d 996, 999 (5th Cir. 1984) (evidence of bias or lack of bias is substantive evidence that may be developed on direct or cross-examination); <u>H.E. Collins v. Wayne Corp.</u>, 621 F.2d 777, 784 (5th Cir. 1980) ("Impeachment of witnesses through a showing of bias or interest aids the jury in its difficult task of determining facts when it is faced with contradictory assertions by witnesses on both sides of the case.").

<u>Defendants' Requested Instruction No. 32</u>:  RETALIATORY DISCHARGE UNDER THE
<u>FALSE CLAIMS ACT - 31 U.S.C. § 3730(h)</u>

Title 31 U.S.C. § 3730(h) provides:

Any employee who is discharged, demoted, suspended, threatened,
harassed, or in any other manner discriminated against in the terms
or conditions of employment by his or her employer because of
lawful acts done by the employee on behalf of the employee or
others in furtherance of an action under this section, including
investigation for, initiation of, testimony for, or assistance in an
action filed or to be filed under this section [F.C.A.], shall be
entitled to all relief necessary to make the employee whole.

<u>Defendants' Requested Instruction No. 33</u>:  RETALIATORY DISCHARGE UNDER THE
FALSE CLAIMS ACT -
31 U.S.C. § 3730(h) - ELEMENTS

Relator Sanders has brought a claim for retaliatory discharge under the False

Claims Act against Defendant General Tool Company.  In order to prove a claim under 31

U.S.C. § 3730 (h), Relator Sanders must prove by a preponderance of the legal evidence that:

(1)  He was an employee of General Tool Company;

(2)  He engaged in a protected activity;

(3)  General Tool Company knew that he engaged in the protected activity;

and

(4)  General Tool Company discharged or otherwise discriminated against him

as a result of his participation in the protected activity.

**AUTHORITIES:**  31 U.S.C. § 3730(h), <u>Yuhasz v. Wellman</u>, 341 F.3d 559 (6th Cir. 2003);
<u>McKenzie v. Bellsouth</u>, 219 F.3d 508 (6th Cir. 2000).

<u>Defendants' Requested Instruction No. 34</u>: <u>WRONGFUL DISCHARGE: PUBLIC POLICY</u>
<u>TORT UNDER OHIO LAW</u>

It is the clear Public Policy of the State of Ohio that individuals who participate in investigations surrounding allegations such as those made in this case should not be discharged or disciplined as a result of their participation.

Relator Sanders claims that he was discharged as an employee from General Tool Company as a result of his participation in the investigation into these allegations. General Tool Company claims that Relator Sanders was not discharged because of his involvement in any investigation.

To prove his claim of wrongful discharge, Relator Sanders must establish by a preponderance of the legal evidence that:

(1)     He was an employee of General Tool Company;

(2)     He was discharged from employment with General Tool Company;

(3)     His involvement in the investigation leading to the allegations in this case was a "determining factor" in his discharge from General Tool Company;

(4)     General Tool Company had no overriding business justification for.

If General Tool Company was unaware of Relator Sanders' participation in the investigation at the time any decision to discharge was made, then General Tool Company did not retaliate as alleged.

"Determining factor" means that the participation in the investigations surrounding the allegations in this case made a difference in the employer's decision to discharge the employee. There may be more than one reason for the employer's decision to discharge the employee. The employee need not prove that participation in the investigations surrounding the allegations in this case was the only reason. It is not a determining factor if the employee would

48

have been discharged regardless of participation in the investigations surrounding the allegations in this case.

"Overriding Business Justification."  An overriding business justification is more than a sound business reason.  The justification must be essential and necessary to the operation of the business.

Defendants' Requested Instruction No. 35:  NUMBER OF FALSE CLAIMS

Relators contend that Defendants submitted or caused to be submitted false claims for payment to the United States Government, that Defendants made or caused to be made or used false records or statements to get false claims paid or approved by the United States Government, and that Defendants conspired with one or more persons to get a false or fraudulent claim allowed or paid by the United States Government.

If you find by a preponderance of the legal evidence that one or more Defendants is liable under the False Claims Act, you must specify in Special Verdicts Nos. 4, 5 and 6 each of the false claims and/or false records or statements which Relators have proved by a preponderance of the legal evidence were submitted or caused to be submitted to an employee of the United States by each of the Defendants.  Your finding must be based on the legal evidence presented to you and the reasonable inferences to be drawn therefrom and not on guesswork or speculation.

Defendants' Requested Instruction No. 36:  PREFACE TO INSTRUCTION ON DAMAGES

        The fact that I instruct you on the proper measure or amount of damage should not be considered as an indication of any view of mine as to what your decision in this case should be.  Instructions as to the measure of damages are given only for your guidance.

<u>Defendants' Requested Instruction No. 37</u>:  DAMAGES—GENERAL

If you find by a preponderance of the legal evidence that a Defendant violated the False Claims Act, then you must determine whether the Relators and the United States are entitled to recover damages as a consequence of those violations.

<u>Defendants' Requested Instruction No. 38</u>:  DAMAGES—FALSE CLAIMS ACT

Damages under the False Claims Act are the amount of money or property that the Relators prove by the preponderance of the legal evidence that the Government lost as a result of the acts of one or more Defendants.  Damages must represent compensation for an actual loss or injury sustained by the Government and are measured by the difference, if any, in the value of what the Government received as compared to the value of what the Government would have received in the absence of the false claim.

Before the Relators and the Government may recover damages under the False Claims Act, the Relators must demonstrate causation between the false claims or false statements and the loss.  Specifically, the Relators must establish an adequate causal relationship between a Defendant's conduct, the disbursement of funds, and the eventual loss.  In other words, in order to recover damages under the False Claims Act, the Relators must show that the Government's losses were actually sustained as a result of a Defendant's false or fraudulent claims or statements.

Damages may not be awarded if they are based on speculation and guesswork. You are not to award "consequential" damages; that is, damages for loss or injury which does not flow directly and immediately from the False Claims Act violations proved, but only from the consequences or result of such violations, *i.e.*, indirect damages.

Additionally, you are not to award "incidental" damages; that is, damages merely incidental to actual damages, such as costs of investigation of this case or expenses.

You must specify in Special Verdict No. 8 the amount of the loss, if any, which the Relators have proved by a preponderance of the legal evidence that the United States sustained as a result of each Defendant's violation of the False Claims Act.

**AUTHORITIES:**  <u>Cook County v. United States ex rel. Chandler</u>, 538 U.S. 119, 131 & n.9 (2003); <u>U. S. v. Bornstein</u>, 423 U.S. 303, 317 n.13 (1976) ("The Government's actual damages are equal to the difference between the market value of the tubes it received and retained and the market value that the tubes would have had if they had been of the specified quality."); <u>United States v. Killough</u>, 848 F.2d 1523, 1530-31 (11th Cir. 1988); <u>United States v. Thomas</u>, 709 F.2d 968, 972 (5th Cir. 1983); <u>United States v. Miller</u>, 645 F.2d 473, 475-76 (5th Cir. 1981); <u>United States v. Aerodex, Inc.</u>, 469 F.2d 1003, 1011 (5th Cir. 1972); <u>Ab-Tech Const., Inc. v. United States</u>, 31 Fed. Cl. 429, 434 (1994), <u>aff'd</u>, 57 F.3d 1084 (Fed. Cir. 1995); <u>United States v. Entin</u>, 750 F. Supp. 512, 519 (S.D. Fla. 1990); <u>United States v. Hill</u>, 676 F. Supp. 1158, 1180 (N.D. Fla. 1987).

<u>Defendants' Requested Instruction No. 39</u>:  <u>VERDICT FORM</u>

You will have with you in the jury room the following Special Verdicts.  No inference is to be drawn from the way I read the forms and you must unanimously agree upon your verdict.

Defendants' Requested Instruction No. 40:  CLOSING REMARKS

Nothing that I have said in these instructions and nothing in the manner in which the Special Verdict has been prepared or explained to you is intended to suggest or convey in any way a result I think you should reach, as this is the exclusive duty and responsibility of the jury. I state to you categorically that the Court has no opinion as to the disputed facts of this case, or the propriety of any verdict you may return.

I cannot embody all the law in any single part of these instructions.  In considering one portion, you must consider it in the light of and in harmony with all the instructions.

I have instructed you on all the law necessary for your deliberations.  Whether certain instructions are applicable may depend upon the conclusions you reach on the facts.

It is your duty, as jurors, to confer with one another, and to deliberate with a view to reaching an agreement, if you can do so without doing violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of all the evidence in the case with other jurors.  In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion, if you are convinced it is erroneous.

Do not surrender your honest conclusion as to weight or effect of the evidence, however, solely because of the opinion of other jurors, or for the mere purpose of returning a verdict.

Remember always that you are not partisans.  You are judges—impartial triers of the facts.  Your sole interest is to ascertain the truth from the legal evidence in the case.

Do not take a firm position at the outset and then be too proud to change your position if you become convinced that your position is wrong.

You must not be influenced by any consideration of sympathy or prejudice.  It is your duty to carefully weigh the legal evidence, to decide all disputed questions of fact, to apply these instructions to your findings, and to render your verdict accordingly.  In fulfilling your duty, your efforts must be to arrive at a just verdict.  Consider the legal evidence and make your findings with intelligence and impartiality, and without bias, sympathy or prejudice, so that the litigants will feel that their case was fairly and impartially tried.  If, during the course of the trial, I said or did anything which you consider an indication of my view on any disputed fact, you are instructed to disregard it because only you, the Jury, determines such matters.

If during your deliberations you wish to communicate with me, please put your communication in writing and give it to the Courtroom Deputy who will deliver it to me.

The Court will place in your possession the exhibits, the Special Verdict and a copy of these instructions.

Upon retiring to the jury room, you will select one of your number to act as your foreperson.  The foreperson will retain possession of these records and return them to the courtroom.  The foreperson will see that your discussions are orderly and that each juror has the opportunity to discuss the case and to cast his or her vote; otherwise, the authority of the foreperson is the same as any other juror.

Until your verdict is announced in open court, you are not to disclose to anyone else the status of your deliberations or the nature of your verdict.  When you arrive at a unanimous verdict—that is whenever all of you agree upon a verdict—you will sign the Special Verdict in ink and notify the Courtroom Deputy.  You will then be returned to the courtroom.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

_____
                                                        )
UNITED STATES OF AMERICA ex rel.       )      Civil Action No. C-1-99-970
                                                        )      (Consolidated with No. C-1-99-923)
ROGER L. SANDERS, et al.,                      )
                                                        )      Judge Rose
                        Relators,                      )
                                                        )
            v.                                             )
                                                        )
ALLISON ENGINE COMPANY, INC., et al.,  )
                                                        )
                        Defendants.                   )
_____)

**SPECIAL VERDICT FORMS**

# Question 1.

        Did Relators prove by a preponderance of the legal evidence that General Motors

knowingly presented or caused to be presented to an officer or employee of the United States a

false or fraudulent claim for payment or approval in violation of the False Claims Act, 3l U.S.C.

§3729(a)(1)?

        YES _____        NO _____

        Did Relators prove by a preponderance of the legal evidence that Allison Engine

knowingly presented or caused to be presented to an officer or employee of the United States a

false or fraudulent claim for payment or approval in violation of the False Claims Act, 3l U.S.C.

§3729(a)(1)?

        YES _____        NO _____

Did Relators prove by a preponderance of the legal evidence that General Tool Company knowingly presented or caused to be presented to an officer or employee of the United States a false or fraudulent claim for payment or approval in violation of the False Claims Act, 3l U.S.C. §3729(a)(1)?

YES _____     NO _____

Did Relators prove by a preponderance of the legal evidence that Southern Ohio Fabricators knowingly presented or caused to be presented to an officer or employee of the United States a false or fraudulent claim for payment or approval in violation of the False Claims Act, 3l U.S.C. §3729(a)(1)?

YES _____     NO _____

# **Question 2.**

Did Relators prove by a preponderance of the legal evidence that General Motors knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim for payment paid or approved by the United States in violation of the False Claims Act, 31 U.S.C §3729(a)(2)?

YES _____     NO _____

Did Relators prove by a preponderance of the legal evidence that Allison Engine knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim for payment paid or approved by the United States in violation of the False Claims Act, 31 U.S.C §3729(a)(2)?

YES _____     NO _____

Did Relators prove by a preponderance of the legal evidence that General Tool Company knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim for payment paid or approved by the United States in violation of the False Claims Act, 31 U.S.C §3729(a)(2)?

YES _____     NO _____

Did Relators prove by a preponderance of the legal evidence that Southern Ohio Fabricators knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim for payment paid or approved by the United States in violation of the False Claims Act, 31 U.S.C §3729(a)(2)?

YES _____     NO _____

# Question 3.

Did Relators prove by a preponderance of the legal evidence that General Motors conspired to get a false or fraudulent claim allowed or paid by the United States in violation of the False Claims Act, 3l U.S.C. §3729(a)(3)?

YES _____        NO _____

Did Relators prove by a preponderance of the legal evidence that Allison Engine conspired to get a false or fraudulent claim allowed or paid by the United States in violation of the False Claims Act, 3l U.S.C. §3729(a)(3)?

YES _____        NO _____

Did Relators prove by a preponderance of the legal evidence that General Tool Company conspired to get a false or fraudulent claim allowed or paid by the United States in violation of the False Claims Act, 3l U.S.C. §3729(a)(3)?

YES _____        NO _____

Did Relators prove by a preponderance of the legal evidence that Southern Ohio Fabricators conspired to get a false or fraudulent claim allowed or paid by the United States in violation of the False Claims Act, 3l U.S.C. §3729(a)(3)?

YES _____        NO _____

If you answered "No" to Special Verdicts Nos. 1, 2, and 3 for General Motors, for Allison Engine, or for Southern Ohio Fabricators, do not answer any other Special Verdicts as to that Defendant.  If you answered "No" to Special Verdicts Nos. 1, 2, and 3 for General Tool Company, proceed to answer Special Verdict No. 9.

If you answered Special Verdict No. 1 "Yes" as to any Defendant, proceed to answer Special Verdict No. 4 and complete it only as to that Defendant.  If you answered Special Verdict No. 2 "Yes" as to a Defendant, proceed to answer Special Verdict No. 5 and complete it only as to that Defendant.  If you answered Special Verdict No. 3 "Yes" as to a Defendant, proceed to answer Special Verdict No. 6 and complete it only as to that Defendant.

# **Question 4.**

If you answered Special Verdict No. 1 "Yes" as to a Defendant or Defendants, please describe each false or fraudulent claim that the Defendant or Defendants presented or caused to be presented to the United States for payment or approval.  As part of your description, please identify the Defendant who violated 31 U.S.C. § 3729(a)(1) with respect to each claim, the year the claim was presented or caused to be presented, and how each claim was false.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

You may continue on the back if necessary.

# **Question 5.**

If you answered Special Verdict No. 2 "Yes" as to a Defendant or Defendants, please describe each false record or statement that the Defendant or Defendants knowingly made, used, or caused to be made or used, to get a false or fraudulent claim paid or approved by the United States.  As part of your description, please identify the Defendant who violated 31 U.S.C. § 3729(a)(2) with respect to each record or statement, the year the record or statement was made, used, or caused to be made or used, how the record or statement was false, the year the claim was paid or approved by the United States, and how the claim was false.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

You may continue on the back if necessary.

# **Question 6.**

If you answered Special Verdict No. 3 "Yes" as to a Defendant or Defendants, please describe each false claim that the Defendant or Defendants conspired to get paid by the United States and how that claim was false.  As part of your description, please identify the Defendant who violated 31 U.S.C. § 3729(a)(3) with respect to each claim.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

You may continue on the back if necessary.

# **Question 7.**

What, if any, is the number of false claims Relators have proved by a preponderance of the legal evidence that each Defendant presented or caused to be presented?

General Motors:

        A)     Verdict No. 1 (31 U.S.C. § 3729(a)(1)) _____

        B)     Verdict No. 2 (31 U.S.C. § 3729(a)(2)) _____

        C)     Verdict No. 3 (31 U.S.C. § 3729(a)(3)) _____

Allison Engine:

        A)     Verdict No. 1 (31 U.S.C. § 3729(a)(1)) _____

        B)     Verdict No. 2 (31 U.S.C. § 3729(a)(2)) _____

        C)     Verdict No. 3 (31 U.S.C. § 3729(a)(3)) _____

General Tool Company:

        A)     Verdict No. 1 (31 U.S.C. § 3729(a)(1)) _____

        B)     Verdict No. 2 (31 U.S.C. § 3729(a)(2)) _____

        C)     Verdict No. 3 (31 U.S.C. § 3729(a)(3)) _____

Southern Ohio Fabricators:

        A)     Verdict No. 1 (31 U.S.C. § 3729(a)(1)) _____

        B)     Verdict No. 2 (31 U.S.C. § 3729(a)(2)) _____

        C)     Verdict No. 3 (31 U.S.C. § 3729(a)(3)) _____

# **Question 8.**

What, if any, is the total amount of money Relators have proved by a preponderance of the legal evidence that the United States lost as a result of any False Claims Act violations by each Defendant?

General Motors:

$_____

Allison Engine:

$_____

General Tool Company:

$_____

Southern Ohio Fabricators:

$_____

# **Question 9.**

Did Relator Sanders prove by a preponderance of the legal evidence that General Tool Company discharged or otherwise discriminated against him as an employee as a result of his participation in a protected activity, in violation of the False Claims Act, 31 U.S.C. § 3730(h)?

YES _____          NO _____

# __Question 10.__

Did Relator Sanders prove by a preponderance of the legal evidence that General Tool Company discharged him as an employee in violation of Ohio Public Policy as a result of his participation in the investigation into these allegations?

YES _____        NO _____

If you answered "No" to Special Verdicts Nos. 9 and 10 do not answer Special Verdicts 11 or 12.  If you answered "Yes" to either Special Verdict No. 9 or 10, or both, proceed to answer Special Verdict No. 11 and 12.

# **Question 11**

If you answered "Yes" to Special Verdict No. 9 or 10, or both, please describe the action taken by General Tool Company, when that action was taken and who at General Tool Company took the action.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

You may continue on the back if necessary.

# **Question 12**

If you answered "Yes" to Special Verdict No. 9 or 10, or both, what, if any, amount of money do you award as damages?

$_____

| | |
|---|---|
| _s/David P. Kamp_____<br>David P. Kamp, Esq.<br>WHITE, GETGEY & MEYER CO., L.P.A<br>1700 Fourth & Vine Tower<br>1 West Fourth Street<br>Cincinnati, OH 45202<br>Telephone: (513) 241-3685<br>Facsimile: (513) 241-2399<br>E-mail: dkamp@wgmlpa.com<br>*Counsel for Defendant*<br>*General Motors Corporation* | James J. Gallagher, Esq.<br>Susan A. Mitchell, Esq.<br>MCKENNA & CUNEO, LLP<br>444 S. Flower Street, 6th Floor<br>Los Angeles, CA 90071-2901<br>Telephone: (213) 688-1000<br>Facsimile: (213) 243-6330<br>E-mail: jgallagher@mckennalong.com<br>       smitchell@mckennalong.com<br>*Counsel for Defendant*<br>*General Motors Corporation* |
| _s/Glenn V. Whitaker_____<br>Glenn V. Whitaker, Esq.<br>Victor A. Walton, Esq.<br>VORYS, SATER, SEYMOUR & PEASE, LLP<br>Atrium Two, Suite 2100<br>Cincinnati, OH 45202<br>Telephone: (513) 723-4000<br>Facsimile: (513) 723-4056<br>E-mail: gvwhitaker@vssp.com<br>       vawalton@vssp.com<br>*Counsel for Defendant*<br>*Allison Engine Company* | Peter B. Hutt, II, Esq.<br>MILLER & CHEVALIER, CHARTERED<br>655 15th Street, N.W. Suite 900<br>Washington, DC 20005<br>Telephone:  (202) 626-5800<br>Facsimile:  (202) 628-0858<br>E-mail:  phutt@milchev.com<br><br>*Counsel for Defendant*<br>*Allison Engine Company* |
| William A. Posey, Esq.<br>Matthew K. Buck, Esq.<br>KEATING, MUETHING & KLEKAMP, PLL<br>1800 Provident Tower<br>One East Fourth Street<br>Cincinnati, OH 45202<br>Telephone:  (513) 579-6400<br>Facsimile:  (513) 579-6457<br>E-mail:  wposey@kmklaw.com<br>mbuck@kmklaw.com<br>*Counsel for Defendant*<br>*General Tool Company* | Lawrence R. Elleman, Esq.<br>DINSMORE & SHOHL, LLP<br>1900 Chemed Center<br>255 East Fifth Street<br>Cincinnati, Ohio  45202<br>Telephone:  (513) 977-8200<br>Facsimile:  (513) 977-8141<br>E-mail:  larry.elleman@dinslaw.com<br>*Counsel for Defendant*<br>*Southern Ohio Fabricators* |

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2005, a copy of the foregoing was served on the following via Courts EF/CMF Filing System or by U.S. mail, postage prepaid to all Counsel not registered:

David Kamp, Esq.
White Getgey & Meyer
1700 4th & Vine Tower
Cincinnati, Ohio 45202

Susan A. Mitchell, Esq.
McKenna Long & Aldridge, L.L.P.
444 South Flower Street
Los Angeles, CA  90071-2901

Gerald F. Kaminski, Esq.
Assistant United States Attorney
220 Potter Stewart U.S. Courthouse
100 East Fifth Street
Cincinnati, OH  45202

Lawrence R. Elleman, Esq.
Dinsmore & Shohl, L.L.P.
1900 Chemed Center
255 East Fifth Street
Cincinnati, OH  45202-3172

James B. Helmer, Jr., Esq.
Helmer, Martins & Morgan Co., L.P.A.
Fourth & Walnut Centre, Suite 1900
105 East Fourth Street
Cincinnati, OH  45202

William A. Posey
Keating, Muething & Klekamp, P.L.L.
1800 Provident Tower
One East Fourth Street
Cincinnati, OH  45202

Scott A. Powell, Esq.
Hare, Wynn, Newell & Newton, LLP
The Massey Bldg., Suite 800
290 21st Street, North
Birmingham, AL  35203-3713

Paul J. Wogaman, Sr.
United States Department of Justice
Civil Division
P.O. Box 261
Washington, D.C. 20044

s/ Glenn V. Whitaker
Glenn V. Whitaker

1391795.1

74