# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| United States ex rel. | : | Civil Action No. C-1-95-970 |
| | : | (Consolidated with C-1-99-923) |
| ROGER L. SANDERS | : | |
| ROGER L. THACKER | : | Judge Thomas M. Rose |
| | : | |
| Relators, | : | Magistrate Judge Timothy S. Hogan |
| | : | |
| Bringing this Action on behalf of | : | |
| the UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | |
| | : | |
| ALLISON ENGINE COMPANY, INC., | : | |
| et al. | : | |
| | : | |
| Defendants. | : | |

## TRIAL BRIEF OF RELATORS

| | |
|---|---|
| Scott A. Powell, Esq. | James B. Helmer, Jr. (0002878) |
| Don McKenna, Esq. | Paul B. Martins (0007623) |
| HARE, WYNN, NEWELL | Robert M. Rice (0061803) |
| & NEWTON, LLP | HELMER, MARTINS, RICE |
| The Massey Building, Suite 800 | & POPHAM CO., L.P.A. |
| 2025 Third Street, North | Fourth & Walnut Centre, Suite 1900 |
| Birmingham, AL 35203-3713 | 105 East Fourth Street |
| Telephone: (205) 328-5330 | Cincinnati, Ohio 45202 |
| *Attorneys for Relators* | Telephone: (513) 421-2400 |
| | *Trial Attorneys for Relators* |

# INTRODUCTION

The thesis of this case is not difficult: The Defendants agreed by contract to provide a product built precisely as agreed, including to exacting military specifications, but then failed to do so. Defendants then knowingly certified to the customer that the product met all the contract requirements and submitted numerous false claims for payment. Defendants have indicated their defense will include personal attacks on the whistleblowers, attempts to circumvent rulings already made in this case, and efforts to thwart Congress' plan to have private citizens and the Government prosecute these cases. We briefly touch herein on matters which we believe will arise in the trial of this action. For the Court's convenience, the topics covered are listed below.

# TABLE OF CONTENTS

I.    THE SIXTH CIRCUIT'S VIEW OF THE FALSE CLAIMS ACT ............. 3

      A.    Government Contractors Must Turn Square Corners .................. 4

      B.    Turning Square Corners with the Government Means the Contractor Must
            Provide the Government with Exactly What Was Set out in the Contract .. 4

      C.    Substantial but Not Precise Compliance with a Government Contract Can
            Subject the Contractor to False Claims Act Liability ................... 4

      D.    Because Military Requirements Are Much More Severe than Civilian
            Environments, the Government Bargains and Pays for the Confidence
            Which Comes with Products Built Exactly as Specified ................. 5

      E.    The Fact That the Navy Accepted the Gen-Sets Does Not Absolve Any
            Defendant of Liability under the False Claims Act ..................... 6

      F.    A Contractor Can Be Liable under the False Claims Act Even If the
            Government Has Suffered No Damage ............................. 7

      G.    The Sixth Circuit Has Also Set out the Required Elements for a False
            Claims Act Retaliation Case ...................................... 8

      H.    The False Claims Act Law of Damages ............................. 9

      I.    The Absence of Final Inspection Being Documented When Performed
            Demonstrates Such Inspections Were Not Performed ................. 15

II.   THE FALSE CLAIMS ACT DOES NOT REQUIRE PROOF OF THE COMMON
      LAW ELEMENTS OF FRAUD ........................................ 15

      A.    Materiality Is Not an Element of the False Claims Act ................. 17

            1.    The Supreme Court Has Provided a Three Part Analysis in *Wells* and
                  *Neder* for Courts to Apply Concerning the Imposition of a Materiality
                  Requirement ........................................... 19

                  a.    *United States v. Wells* ................................ 19

                  b.    *Neder v. United States* ............................... 20

2.     Application of the *Wells/Neder* Framework Demonstrates That Materiality Is Not an Element of the False Claims Act . . . . . . . . . . 20

    a.     First Prong: Language of the False Claims Act . . . . . . . . . 20

    b.     Second Prong: The Well-Settled Meaning of "False" or "Fraudulent" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    c.     Third Prong: The Language and Structure of the False Claims Act Rebuts Any Presumption That Materiality is an Element of Allegations Brought Under (a)(1) or (a)(2) . . . . . . . . . . 23

3.     The Refusal of Courts to Add Materiality as an Element the Government must Prove in a Criminal False Claims Act Case Further Demonstrates That Materiality Is Not an Element of the Civil False Claims Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

4.     The Argument That Materiality Should Be an Element of the Civil False Claims Act Is Based on Decisions That Either Predated or Failed to Properly Apply *Wells* and *Neder* . . . . . . . . . . . . . . . . . . . . . 27

5.     The Policy Rationale for Imposing a Materiality Requirement Is Unpersuasive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

6.     Any Issue of Materiality Is One for this Court Alone to Decide . . . . 31

7.     Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

III.     THE FALSE CLAIMS ACT IS TO BE GIVEN A LIBERAL CONSTRUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

IV.     THIS COURT'S PRIOR RULINGS – THE LAW OF THIS CASE . . . . . . . . . . . 35

A.     Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

B.     Laches . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

C.     Estoppel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

D.     Unclean Hands . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

E.     Failure to Mitigate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

F.      The Only Remaining Issue of Fact in Establishing SOFCO's False Claims Act Liability Is Whether SOFCO Acted "Knowingly" . . . . . . . . . . . . . . . . . 40

G.      General Tool Company Was Required to Follow its Quality Manual . . . . . 42

H.      False Claims Act Liability Exists Even If the Government Suffers No Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

I.      "Just as Good" Is No Defense to False Claims Act Liability . . . . . . . . . . . 43

J.      Gearbox Conspiracy Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

V.      ADDITIONAL TRIAL CONCERNS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

A.      The Jury Should Be Instructed to Avoid Researching this Case on the Internet . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

B.      Relator Thacker's Back Problems . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

C.      Relator Should Be Permitted to Introduce the Numerous Admissions by Defendants at Times Appropriate to the Presentation of Evidence on Those Topics . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

D.      Defendants Should Be Precluded from Calling Navy Personnel Interviewed in Violation of This Court Order Entered in this Case . . . . . . . . . . . . . . . . . . 47

E.      Government Knowledge Is Not A Defense To False Claims Act Violations In This Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

F.      The False Claims Act Provides For Joint And Several Liability . . . . . . . . 49

VI.     WHERE THE COURT CAN FIND THE BRIEFING ON THE VARIOUS MOTIONS *IN LIMINE* FILED IN THIS CASE . . . . . . . . . . . . . . . . . . . . . . . . . 50

A.      Consequential Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

B.      Exclusion of Expert Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

C.      Government Criminal Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

D.      Government Non-Intervention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

E.      Treble Damages, Double Damages, Civil Penalties, Attorney Fees . . . . . . . 51

**F.**   **Previously Admitted Findings of Fact** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **51**

**G.**   **Frank Schultz** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **51**

**H.**   **Bill Kramer** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **51**

**I.**   **Navy Video** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **51**

**J.**   **Government Counsel's Presence at Trial** . . . . . . . . . . . . . . . . . . . . . . . . . **52**

# I.    THE SIXTH CIRCUIT'S VIEW OF THE FALSE CLAIMS ACT

In the last ten years, the False Claims Act as Amended in 1986 has been extensively discussed in opinions by the United States Court of Appeals for the Sixth Circuit.

The Sixth Circuit has specifically found the False Claims Act and its *qui tam* provisions to be constitutional.[1]  The Sixth Circuit has determined Congress intended to encourage whistleblowers to act as "private attorneys-general" in bringing *qui tam* actions "in pursuit of important public policy."[2]  The Sixth Circuit has expressly rejected any complaint by government contractors that their adversary is a private attorney-general instead of a public prosecutor:

> Congress has let loose a posse of *ad hoc* deputies to uncover and prosecute frauds against the government. [Defendants] may prefer the dignity of being chased only by the regular troops; if so they must seek relief from Congress.[3]

In reviewing the False Claims Act's dual representation provision, the Sixth Circuit has noted Congress' belief that, in view of the sophisticated and widespread wave of fraud endangering public funds, only by a coordinated effort by both Government and private citizens can the public fisc be protected.[4]  Thus, the Sixth Circuit has found that it is Congress' intent to both encourage private citizens to bring *qui tam* suits and for government counsel to collaborate

---

[1] *United States ex rel. Taxpayers Against Fraud & Walsh v. General Electric*, 41 F.3d 1032, 1041 (6th Cir. 1994).  This Court has also so determined in this case.  Doc. 101.

[2] *Walsh*, 41 F.3d at 1042.

[3] *Walsh*, 41 F.3d at 1042 *quoting*, *United States ex rel. Milam v. University of Texas M.D. Anderson Cancer Center*, 961 F.2d 46, 49 (4th Cir. 1992).

[4] *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 342 F.3d 634, 648 (6th Circ. 2003), *citing*, S. Rep. 99-345 at 2, 1986 U.S.C.C.A.N. at 5267.

with private citizens in battling contractors who would submit fraudulent claims.[5]

As a result, the Sixth Circuit has enunciated several rules governing the consideration of False Claims Act cases. These rules may differ from other commercial types of cases for which this Court is familiar.

### A. Government Contractors Must Turn Square Corners

The Sixth Circuit has, on three recent occasions, repeated what it calls a maxim: "[m]en must turn square corners when they deal with the government."[6]

### B. Turning Square Corners with the Government Means the Contractor Must Provide the Government with Exactly What Was Set out in the Contract

The Sixth Circuit has determined that the "square corners rule" means that a government contractor must deliver a product which exactly complies with the contract:

> [P]arties that contract with the government are held to the letter of the contract – irrespective of whether the contract terms appear onerous from an *ex parte* perspective, or whether the contract's purpose could be effectuated in some other way...[7]

### C. Substantial but Not Precise Compliance with a Government Contract Can Subject the Contractor to False Claims Act Liability

Therefore, unlike in a commercial context, substantial compliance by a government contractor is no defense to a False Claims Act case even if the product delivered is just as good as what the government contracted for. The product must conform to **all** contract terms:

---

[5] *Bledsoe*, 342 F.3d at 649.

[6] *United States ex rel. Augustine v. Century Health Serv*s., 289 F.3d 409, 413 (6th Cir. 2002); *United States ex rel. Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 430 (6th Cir. 2001); *United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 302 (6th Cir. 1998).

[7] *Varljen*, 250 F.3d at 430; *Compton*, 142 F.3d at 302.

We agree...that the "square-corners" rule applies in the False Claims Act context, "the mere fact that the item supplied under the contract is as good as the one contracted for does not relieve defendants of liability" if the item does not in fact conform to the express contract terms.[8]

This Court has already recognized this point.[9]

### D. Because Military Requirements Are Much More Severe than Civilian Environments, the Government Bargains and Pays for the Confidence Which Comes with Products Built Exactly as Specified

Each *Arleigh Burke* class DDG Destroyer is planned and designed to defend this Nation for 35 years. It is anticipated that such warships will have to last not only in the harsh environment of the open sea but also in conventional as well as biochemical and even nuclear combat. Three generations of American sailors will depend upon these ships and their components to be both survivable and built to last. To obtain the confidence necessary to rely upon these warships to be able to carry out their assigned missions well into the middle of this century, such warships are to be built to standards far beyond those which might apply to any commercial venture.

The Navy pays top dollar to obtain such confidence. By violating express contract terms and delivering Gen-Sets that do not meet exactly all terms of the contracts, these Defendants have deprived the Navy of the confidence it paid for. As the Sixth Circuit recognized in *Compton*, the Government is entitled to receive the benefit of its bargained-for quality control requirements:

---

[8] *Compton*, 142 F.3d at 302, n.4, *quoting United States v. Aerodex, Inc.*, 469 F.2d 1003, 1007 (5th Cir. 1972) (*emphasis added*); *see also Varljen*, 250 F.3d at 431 ("It is immaterial whether the alleged contractual noncompliance resulted in products with the 'same basic performance characteristics' as those that would have been produced in compliance with the terms of the contract.").

[9] Doc. 463 at p. 7.

**We stress** that the government did not bargain only for plug-welded brake shoes that could withstand a certain amount of force; **they also bargained for the confidence that comes with a product that has been subjected to production testing**.[10]

### E. The Fact That the Navy Accepted the Gen-Sets Does Not Absolve Any Defendant of Liability under the False Claims Act

Defendants have crowed about the fact that the Navy continues to have their Gen-Sets installed in *Arleigh Burke* class Destroyers. Such statements, which ignore that these products are custom built, supplied by only one contractor (sole-source), and cannot be purchased by the Navy from any other commercial source, are irrelevant and inadmissible. The Sixth Circuit has made it clear that Government inspection and acceptance of a product does not absolve a contractor from False Claims Act liability.[11]

As we note later in this brief, this Court has already stricken defenses of waiver and estoppel[12] and specifically found that the Government's acceptance of the Gen-Sets does ***not*** absolve Defendants from False Claims Act liability.[13]

---

[10] *Compton*, 142 F.3d at 305 (*emphasis added*).

[11] *Varljen*, 250 F.3d at 430 and 431, *citing, United States v. Aerodex, Inc.*, 469 F.2d 1003, 1009 (5th Cir. 1972) (*affirming* False Claims Act liability because products did not conform to contract specifications, even though the supplied products had the same basic performance characteristics and "even where final inspection is the obligation of the Government, such obligation does not absolve a contractor on liability for fraud.").

[12] *See* § IV(A) and (C), *infra.*

[13] Doc. 463 at p. 7.

**F.     A Contractor Can Be Liable under the False Claims Act Even If the Government Has Suffered No Damage**

Consistent with the language of the False Claims Act, the Sixth Circuit has held that the

Government is not required to sustain any monetary damage to recover under the False Claims

Act.[14]

---

[14] *Varljen*, 250 F.3d at 429 and 431.  The Sixth Circuit holding is consistent with scores of other cases considering this issue.  *E.g.*, *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999); *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995);  *United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991); *United States v. Killough*, 848 F.2d 1523, 1533 (11th Cir. 1988); *United States v. Hughes*, 585 F.2d 284, 286 n.1 (7th Cir. 1978); *United States ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456, 460-61 (5th Cir. 1977), *cert. denied*, 434 U.S. 1035 (1978); *Brown v. United States*, 524 F.2d 693, 706 (Ct. Cl. 1975); *United States v. Ridglea State Bank*, 357 F.2d 495, 497 (5th Cir. 1966); *Fleming v. United States*, 336 F.2d 475, 480 (10th Cir. 1964), *cert. denied*, 380 U.S. 907 (1965); *Toepleman v. United States*, 263 F.2d 697, 699 (4th Cir.), *cert. denied sub nom.*, *Cato v. United States*, 359 U.S. 989 (1959); *United States v. Tieger*, 234 F.2d 589, 590 & n.4 (3d Cir), *cert. denied*, 352 U.S. 941 (1956); *United States v. Rohleder*, 157 F.2d 126, 129 (3d Cir. 1946); *United States ex rel. Fahner v. Alaska*, 591 F. Supp. 794, 798 (N.D. Ill. 1984); *United States ex rel. Trim v. McKean*, 31 F.Supp.2d 1308 (W.D. Okla. 1998)(focus of false Claim Act inquiry is on claim and conduct of claimant rather than effect on the government so proof of damage as result of claim is not a necessary element); *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 20 F.Supp.2d 1017 (S.D. Tex. 1998); *United States ex rel. Pogue v. American Healthcorp, Inc.*, 914 F. Supp. 1507, 1509 (M.D. Tenn. 1996); *Wilkins ex rel. United States v. State of Ohio*, 885 F. Supp. 1055, 1060 (S.D. Ohio 1995); *United States ex rel. Fallon v. Accudyne Corp.*, 921 F. Supp. 611, 628 (W.D. Wis. 1995); *United States v. Kensington Hospital*, 760 F. Supp. 1120, 1127 (E.D. Pa. 1991); *United States ex rel. Luther v. Consolidated Industries, Inc.*, 720 F. Supp. 919, 923 (N.D. Ala. 1989); *United States v. CFW Construction Co.*, 649 F. Supp. 616, 618 (D.S.C. 1986); *Blusal Meats, Inc. v. United States*, 638 F. Supp. 824, 827 (S.D. N.Y. 1986); *Thevenot v. National Food Insurance Program*, 620 F. Supp. 391, 396 (W.D. La. 1985); *United States v. Rapoport*, 514 F. Supp. 519, 524 (S.D. N.Y. 1981); *United States v. Zulli*, 418 F. Supp. 252, 253 (E.D. Pa. 1975); *United States v. Silver*, 384 F. Supp. 617, 620 (E.D. N.Y. 1974), *aff'd,* 515 F.2d 505 (2d Cir. 1975); *United States v. Johnston*, 138 F. Supp. 525, 527-28 (W.D. Okla. 1956); *United States v. American Precision Products Corp.*, 115 F. Supp. 823, 827-828 (D. N.J. 1953).  Courts have from time to time suggested that actual damage is an element of a claim under the Act.  *E.g.*, *Hutchins v. Wilentz*, 253 F.3d 176, 183 (3d Cir. 2001); *Young-Montenay, Inc. v. United States*, 15 F.3d 1040, 1043 (Fed. Cir. 1994); *United States v. Intervest Corp.*, 67 F. Supp. 2d 637, 646 (N.D. Miss. 1999); *United States ex rel. Stinson v. Provident Life & Acc. Ins. Co.*, 721 F. Supp. 1247, 1258-59 (S.D. Fla. 1989), *citing*, *Blusal Meats, Inc. v. United States*, 638 F. Supp. 824, 827 (S.D. N.Y. 1986), *aff'd*, 817 F.2d

This Court has already ruled that damages are not required.[15]

### G.    The Sixth Circuit Has Also Set out the Required Elements for a False Claims Act Retaliation Case

The False Claims Act contains whistleblower anti-retaliation protection at 31 U.S.C. § 3730(h).  The Sixth Circuit has set out three elements for such claims:

1.    The employee was engaged in protected activity, that is, investigation for, initiation of, or testimony or assistance in an action filed or to be filed under the False Claims Act;

2.    The employer knew the employee was engaged in protected activity; and

3.    A reason – but not necessarily the sole reason – for discharging the employee was because he was engaged in protected activity.[16]

The Sixth Circuit has also specifically found that an employee does not have to know the

False Claims Act allows *qui tam* actions to be filed against the employer or that such an action has

---

1007 (2d Cir. 1987).  However, such statements are uniformly *dicta*.  For example, the Third Circuit panel in *Hutchins* made clear that it meant that the false claims were *capable* of causing damage to the United States.  253 F.3d at 183.  And in *Blusal Meats*, the district court (in the same paragraph as its statement that the elements of a claim included "(4) that the United States suffered damages as a result of the false or fraudulent claim," 638 F. Supp. At 827) added, "*the United States may recover costs and a $2,000 civil penalty for each False Claims Act violation in the absence of proof of damage to the United States.*"  *Id.*  (italics supplied).  In *Wilkins ex rel. United States v. State of Ohio*, 885 F. Supp. 1055, 1059 (S.D. Ohio 1995), the district court sets out a similar boilerplate recitation of elements but says, a page later, that "no damages need be proved in order to recover the civil penalty" provided for by the Act.  *Id.* at 1060.  The Court plainly was correct.

[15] Doc. 463 at p. 7.

[16] *United States ex rel. McKenzie v. BellSouth Telecommunications, Inc.*, 123 F.3d 935, 944 (6th Cir. 1997), *cert. denied*, 522 U.S. 1077 (1998)(*McKenzie I*); *United States ex rel. McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.2d 508, 514 n.4 (6th Cir. 2000)(*McKenzie II*)("because of" language requires employee to show the retaliation "was motivated, *at least in part*, by the employee's engaging in protected activity.")(*emphasis supplied*), *citing*, Sen. Rep. No. 99-345 at 35 (1986), *reprinted in* 1986 U.S.C.C.A.N. at 5300.

already been filed.[17]  Nor does the employee have to use any magic words such as "illegality" or "fraud" to be engaged in protected activity.[18]  Threatening to file suit or to inform the Government are sufficient but not exhaustive ways to let the employer know that the employee is engaging in protected activity.[19]

### H.    The False Claims Act Law of Damages

If the defendants are found liable under the False Claims Act, the Jury will then determine the amount of damages sustained by the United States.  The False Claims Act provides for recovery of three times all "damages which the Government sustains because of the act" giving rise to liability.  31 U.S.C. § 3729(a).  Over 60 years ago, the United States Supreme Court held that the appropriate measure of damages under the False Claims Act is whatever amount is needed to make the United States "completely whole."[20]

In keeping with the Supreme Court's holdings in *Marcus* and *Bornstein*, the Sixth Circuit Court of Appeals has made abundantly clear that "[d]amages awarded under the False Claims Act typically are liberally calculated to ensure that they 'afford the government complete indemnity for

---

[17] *McKenzie II*, 219 F.3d at 516.

[18] *Id.*

[19] *McKenzie II*, 219 F.3d at 518.

[20] *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 552 (1943).  *Accord*, *United States v. Bornstein*, 423 U.S. 303, 314-15 (1976).  As the Senate Report issued in connection with the 1986 Amendments to the False Claims Act notes, "In *United States v. Griswold*, 24 F. 361, 366 (D. Ore 1885) . . . the [District] Court said: 'The statute is a remedial one.  It is intended to protect the Treasury against the hungry and unscrupulous host that encompasses it on every side, and should be construed accordingly.'"  S. Rep. 345 at 11, 99th Cong. 2d Sess. 2 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5276.

the injury done it.'"[21] More recently, the Sixth Circuit reiterated the liberal "make whole" nature

of False Claims Act damages, holding that the United States can recover damages if they are "the

direct, proximate, and foreseeable result of the claims submitted by" the defendants.[22]

As these cases clearly demonstrate, the Supreme Court and this Circuit are in agreement:

The measure of False Claims Act damages that the Jury may award is *whatever it takes to make*

*the government whole* once liability is established. Just as important, Congress determined in

amending the False Claims Act in 1986 that there cannot be a one-size-fits-all formula for

calculating damages:

> No single rule can, or should be, stated for the determination of damages under the
> Act....Fraudulent interference with the government's activities damages the government in
> numerous ways that vary from case to case. Accordingly, the committee believes that the
> courts should remain free to fashion measures of damages on a case by case basis. The
> Committee intends that the courts should be guided only by the principles that the United
> States' damages should be liberally measured to effectuate the remedial purposes of the
> Act and that the United States should be afforded a full and complete recovery of all its
> damages.[23]

---

[21] *United States ex rel. Compton v. Midwest Specialties, Inc.* 142 F.3d 296, 304 (6th Cir. 1998), *quoting Marcus*, 317 U.S. at 549.

[22] *United States ex rel. Roby v. The Boeing Co.*, 302 F.3d 637, 646 (6th Cir. 2002), *cert. denied*, 539 U.S. 969 (2003)(*citation omitted*). *Accord United States v. Ekelman & Associates, Inc.*, 532 F.2d 545, 550 (6th Cir. 1976) ("Government would be entitled to recover amounts expended 'in the form of time and money spent by its employees in straightening out the mess. . . and in protecting its interests thereafter.'"). *United States ex rel. Schwedt v. Planning Research Corp.*, 59 F.3d 196, 200 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1068 (1996) ("[b]ut for the [false] progress reports and representations. . . [the Government] would not have accepted and paid for [additional products]"); *United States v. First National Bank of Cicero*, 957 F.2d 1362, 1374 (7th Cir. 1992) (the showing of "but for" causation is "sufficient to establish the causal relationship between the false claim and the Government's damages necessary to permit recovery under the False Claims Act").

[23] *United States v. Killough*, 848 F.2d 1523, 1532 (11th Cir. 1988), *quoting* S.Rep. No. 615, 96th Cong., 2d Sess. at 4.

Therefore, in considering how much the United States has been actually damaged by the defendants' False Claims Act violations, the Jury may consider any number of alternative methods in making its calculation. For example, the Jury may award as damages the entire cost of the contract.[24] The Jury may award the difference between the market value of the Gen-Sets received by the United States versus the market value the Gen-Sets would have had if they had been of the specified quality.[25] The Jury may award amounts necessary to replace any nonconforming goods that were installed in the Gen-Sets.[26] And the Jury may also award as appropriate damages the amounts needed to conduct field inspections, repair work and replacement costs of any defective components.[27] All of these damage measures may come into play in the various False Claims Act violations committed by the Defendants.

In an effort to constrain the Jury, the Defendants have previously argued two points that are inconsistent with the above authority. First, the Defendants claim that False Claims Act damages must always be determined by the "benefit of the bargain" test—that is, the difference between the value of the Gen-Sets as received and the value of a fully compliant unit. The

---

[24]   *United States ex rel. Roby v. The Boeing Co.*, 302 F.3d 637, 646 (6th Cir. 2002), *cert. denied*, 539 U.S. 969 (2003), *citing*, *Compton*, 142 F.3d at 305.

[25]   *United States ex rel. Roby v. The Boeing Co.*, 302 F.3d 637, 646 (6th Cir. 2002), *cert. denied*, 539 U.S. 969 (2003), *citing*, *United States v. Bornstein*, 423 U.S. 303, 316 (1976).

[26]   *United States ex rel. Roby v. The Boeing Co.*, 302 F.3d 637, 648 n.9 (6th Cir. 2002), *cert. denied*, 539 U.S. 969 (2003), *citing*, *Commercial Contractors, Inc. v. United States*, 154 F.3d 1357, 1372-73 (Fed. Cir. 1998).

[27]   *BMY Combat Systems v. United States*, 44 Fed. Cl. 141, (1998), *citing*, *Daff v. United States*, 31 Fed. Cl. 682, 695 (1994) ("Costs of inspection and repair incurred by the government as a result of a contractor's false representation that a product passed inspection pursuant to the contract are recoverable as FCA single damages.").

Defendants argue that such a rigid damages construct is actually required by the Supreme Court's *Bornstein* decision.[28] Actually, *Bornstein* did not mandate any particular method of determining damages for all circumstances in all False Claims Act cases. Quite the opposite. The *Bornstein* Court adopted the "make whole" standard originally set forth in *Marcus*.

In fact, the Defendants' unnatural reading of *Bornstein* was recently considered and rejected by the Court of Claims:

> Damages under the FCA are to be *determined in a flexible manner to ensure proper recovery of direct, and not consequential, damages resulting from the making of a false claim.* While the "diminution in value" measurement is appropriate on some facts, *Bornstein* did not mandate the use of this measurement in all FCA cases and courts have used alternative approaches when it is more appropriate on the facts of a particular case. *See, e.g.*, *Daff v. United States*, 31 Fed. Cl. 682, 695 (1994) (awarding as FCA damages the government's inspection and repair costs when the contractor had fraudulently concealed the failure of the product to pass contractually required tests), *aff'd*, 78 F.3d 1566 (Fed. Cir. 1996).[29]

This liberal view was echoed by Senior Judge Spiegel in his more recent opinion regarding False Claims Act damages:

> Because each case under the FCA involves unique types of damage to the government, a formula for calculating damages must be created for each case that will provide the government with its damages directly caused by the filing of a false claim.[30]

Finally, the Defendants have previously objected to certain types of damages Relators intend to seek for the United States—including replacement of all the defective Gen-Set

---

[28] Doc. 333, Defendants' Objections to Magistrate Judge Hogan's Order Concerning Defendants' Motion to Exclude Evidence of Consequential Damages, at 3-4.

[29] *BMY-Combat Systems Division of Harsco Corporation v. United States*, 44 Fed.Cl. 141, 148 (Ct. Cl. 1998) (*emphasis added*).

[30] *United States ex rel. Roby v. The Boeing Co.*, 79 F. Supp.2d 877, 884-885 (S.D. Ohio 1999), *aff'd.*, 302 F.3d 637 (6th Cir. 2002), *citing BMY-Combat*.

gearboxes they installed and inspection of all the Gen-Set base and enclosure welds that were laid by unqualified welders—by labeling such damages "consequential" and therefore beyond the purview of the False Claims Act.[31] The Defendants' argument is fundamentally flawed because they never try to define what "consequential" damages really are. Instead, the Defendants' "consequential" damages argument relies almost exclusively on an out-of-context ruling 30 years ago from the Fifth Circuit in *United States v. Aerodex*, 469 F.2d 1003 (5th Cir. 1972).

But *Aerodex* does not help the Defendants in trying to exclude amounts to replace the defective gearboxes and inspect defective welds. While *Aerodex* is couched in terms of "consequential damages," close review demonstrates that it—like the Sixth Circuit's *Roby* decision—is actually a case which centers around causation.[32] In deciding whether a defendant that shipped defective spare parts had to pay for the removal of those parts after they were installed by the Air Force without any inspection, the Fifth Circuit held that the defendant's violations of the False Claims Act were not the cause of the removal-and-replacement expenses: "The submission of these [false] vouchers," said the court, "was not the cause of the government's consequential damages."[33]

Though the *Aerodex* court precluded the government from recovering (under the False

---

[31] Doc. 333 at 3. Notably, the Defendants do not object to one measure of damages in this case: "Defendants do not dispute that the False Claims Act would permit recovery of amounts paid by the Navy for quality inspection and quality assurance functions that were not properly performed by Defendants[.]" *Id.*

[32] Indeed, the Fifth Circuit itself has expressly characterized *Aerodex* as being a case which focuses on "the element of causation between the false statements and the loss." *United States v. Miller*, 645 F.2d 473, 476 (5th Cir. 1981).

[33] *Aerodex*, 469 F.2d at 1011.

Claims Act) the cost of removing the defective parts, it probably did so because the Air Force was required to inspect the parts prior to installation but failed to do so. Such an inspection would have simply and cheaply revealed the defect in the parts.[34] This failure readily can be seen as a break in the chain of causation—an intervening or "mediating" cause. Here, the United States had no duty to tear down the Gen-Sets delivered by the Defendants to inspect for defective gearboxes or welds. And there could be no more foreseeable result of the Defendants' conduct than that the defective gearboxes would have to be replaced, and the defective welds would have to be inspected.

As for the true legacy of *Aerodex*, Senior Judge Spiegel's *Roby* opinion carefully canvassed and analyzed the state of False Claims Act law, and he concluded that even those courts that follow *Aerodex* do not bind themselves to the "consequential" label. Instead courts have tried to honor the "make whole" concept of False Claims Act damages:

> After a review of the most recent and relevant case holdings addressing this issue, we find that almost all of these cases are distinguished by the particular facts of the case in question. The holdings range from those that adhere strictly to the Aerodex ruling, and those that expand upon the holding of Aerodex in their award of additional recovery beyond the value of the item in question. The only consistency in the various cases that address the issue of the proper measure of recovery under the FCA, is that all of the courts attempt to find a way to "make the government whole."[35]

> In the end, the Defendants' rigid understanding of False Claims Act damages, and their

---

[34] *Aerodex*, 469 F.2d at 1009.

[35] *United States ex rel. Roby v. The Boeing Co.*, 79 F. Supp.2d 877, 888 (S.D. Ohio 1999), *aff'd.*, 302 F.3d 637 (6th Cir. 2002), *cert. denied*, 539 U.S. 969 (2003). Senior Judge Spiegel also noted: "Like a number of post-*Aerodex* courts, the Sixth Circuit in *Ekelman & Assocs.* found that *Aerodex* was distinguishable on its facts and also found that its holding "was not inconsistent with" the Fifth Circuit's holding in *Aerodex*." *Id.*, 79 F. Supp. at 886-887, *citing United States v. Ekelman & Assocs., Inc.*, 532 F.2d 545 (6th Cir. 1976).

over-use of the "consequential" damages label, are directly at odds with settled Supreme Court and Sixth Circuit precedent. In determining the appropriate measure of damages in this case, the Jury should be not be guided by labels and rigid formulas; they should be free to make the United States "completely whole" by determining those damages that were directly, proximately and foreseeably caused by the Defendants' knowing false claims.

## I. The Absence of Final Inspection Being Documented When Performed Demonstrates Such Inspections Were Not Performed

Defendants have steadfastly maintained that General Tool Company was not required to conduct final inspections of the Gen-Sets before shipping them to the shipyards. General Tool's Quality Manual–which this Court has already determined General Tool was required to follow[36]–states otherwise.

The stamping parties rampant at General Tool were necessitated to complete missing sign-offs on paperwork long after the Gen-Sets were shipped to the shipyards. The fact that so many blanks existed on the paperwork, including for final inspections, demonstrates that the procedures were, in fact, not performed at all.

The Sixth Circuit held that

"the absence of a record of an event that would ordinarily be documented in official records is probative of the fact that the event did not occur."[37]

## II. THE FALSE CLAIMS ACT DOES NOT REQUIRE PROOF OF THE COMMON LAW ELEMENTS OF FRAUD

Common law fraud elements in Ohio are well known to this Court. Such elements are

---

[36] Doc. 463 at p. 7.

[37] *United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 303 n.6 (6th Cir. 1998), *quoting*, *Wiley v. United States*, 20 F.3d 222, 227 (6th Cir. 1994).

(a)     a representation or, where there is a duty to disclose, concealment of fact,

(b)     which is material to the transaction at hand,

(c)     made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,

(d)     with the intent of misleading another into relying upon it,

(e)     justifiable reliance upon the representation or concealment, and

(f)     a resulting injury proximately caused by the reliance.[38]

In contrast to the common law fraud elements set out above, a statutory False Claims Act action does not require elements of materiality, intent to defraud, reliance, or damages. Materiality,[39] reliance,[40] and damages[41] as necessary requirements are simply missing from the language of the False Claims Act. Intent to defraud is specifically exempted by the language of the False Claims Act.[42]

While it is certainly true that courts, and even Congress from time to time, refer to the

---

[38] *Cohen v. Lamko, Inc.*, 10 Ohio St. 3d 167, 169 (1984), *quoting*, *Friedland v. Lipman*, 68 Ohio App. 2d 255 (1980).

[39] *See* § II(A ), *infra.*

[40] *United States v. Ehrlich*, 643 F.2d 634, 639 (3d Cir.), *cert. denied,* 454 U.S. 940 (1981) (Governments's knowledge of falsity of Defendants' statements does not preclude False Claims Act liability); *United States v. Bd. of Educ.*, 697 F. Supp. 167, 179 (D. N.J. 1988) ("Actual reliance is not essential to the recovery of damages under the False Claims Act. Whether the government relied upon the false representations of the Defendants or not, it should be able to recover the money disbursed on account of those representations."); *United States v. Rapoport*, 514 F. Supp. 519, 523-24 (S.D.N.Y 1981) (no reliance is necessary to recover a forfeiture under the False Claims Act); *United States v. Hughes Aircraft Co.*, 1991 U.S. DIST LEXIS 20548 at **4-5 (C.D. Cal. Jan. 17, 1991) ("The government does not need to prove reliance in order to establish liability under the False Claims Act."); *see also Neder v. United States*, 527 U.S. 1, 25 (1997) (recognizing that elements of reliance or damages required at common law for fraud would be inconsistent under language of fraud statutes prohibiting 'scheme to defraud' and not just a completed fraud").

[41] *See* § I(F), *infra.*

[42] 31 U.S.C. § 3729(b)(3)("...no specific intent to defraud is required.").

False Claims Act as anti-fraud legislation or as the Government's principal weapon for combating civil fraud, such generic use of the term fraud does not convert this statutory cause of action into a common law fraud case. It is the False Claims Act – not the Fraud Claims Act.

Thus, it will not be surprising to this Court that some defendants attempt to blur the line between common law fraud and False Claims Act violations. If successful, the result would be the imposition on the Government and relator of numerous additional elements of proof found in common law fraud but nowhere existing under the False Claims Act.

The Defendants in this case have correctly recognized that in interpreting the False Claims Act, the Court must "look first to the plain language of the statute."[43] In so doing, the Court will not find the additional common law fraud elements set out above. The Court should not infer them.

The Sixth Circuit recently had occasion to compare the elements of common law fraud with the elements necessary to plead a False Claims Act with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. In such review, the Sixth Circuit specifically recognized that the False Claims Act "does not require proof of all the traditional elements of a fraud claim."[44]

### A.    Materiality Is Not an Element of the False Claims Act

Relying on *dicta* from an earlier decision of this Court concerning an issue which Relators were not given an opportunity to brief, Defendants intend to ask this Court to add materiality as

---

[43] Doc. 581, Defendants' Opposition to Relators' Motion *in Limine* Concerning the Government's Non-Intervention Decision, p. 3.

[44] *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 342 F.3d 634, 642 (6th Cir. 2003).

an element of the False Claims Act despite the fact that it is not mentioned in the False Claims Act. *See* Doc. 494, Final Pretrial Order, p. 6. Defendants may ask this Court to instruct the jurors not only that the False Claims Act requires that there be a breach of a material term of the United States contract, but that the breached term also be material to the Government's decision to pay a claim. Neither the False Claims Act nor binding Supreme Court and Sixth Circuit precedent permit such instructions.

The Supreme Court has set forth a three part analysis for determining whether materiality is an element of a statute in its opinions in *United States v. Wells*, 519 U.S. 482 (1997) and in *Neder v. United States*, 527 U.S. 1 (1999). Under the *Wells/Neder* framework, materiality is clearly an element of a statute if Congress has so stated in the text of the statute.[45] If Congress has not explicitly set out materiality as an element, it can be implied but only if a term employed by Congress had a well-settled common law meaning that included materiality as an element.[46] Under the final step of the analysis, any presumption of materiality found to arise from the common-law meaning of a term is rebutted where the text or structure of the statute shows that adding materiality would create an inconsistency.[47]

Reviewing the text of all versions of the False Claims Act since 1863 demonstrates that the first *Wells/Neder* test is not met – Congress never set forth materiality as an element of any of the various statutory predicates for FCA liability. An examination of the common law meaning of

---

[45] *Wells*, 519 U.S. at 489-490 (*citations omitted*); *Neder*, 527 U.S. at 20 *citing Wells*.

[46] *Wells*, 519 U.S. at 491 (*citations omitted*); *Neder*, 527 U.S. at 22-23 (*citations omitted*).

[47] *Neder*, 527 U.S. at 23-25.

the False Claims Act's operative terminology pursuant to the second *Wells/Neder* prong further

demonstrates that materiality should not be implied as an unstated element for claims arising

under §§ 3729(a)(1) and (a)(2) of the False Claims Act. Finally, under the third prong of the

*Wells/Neder* analysis, the False Claims Act's unique statutory definition of the term "knowingly"

rebuts any presumption that materiality should be an implied element for recovery under (a)(1)

and (a)(2).

> **1.** **The Supreme Court Has Provided a Three Part Analysis in *Wells* and *Neder* for Courts to Apply Concerning the Imposition of a Materiality Requirement**

>> **a.** ***United States v. Wells***

In early 1997, the Supreme Court in *United States v. Wells*,[48] considered whether

materiality was an element of the federal statute (18 U.S.C. § 1014) which criminalized knowingly

making false statements to a federally insured bank. The Supreme Court first noted that the

statute never mentioned materiality. Therefore, under a "natural reading of the full text"

materiality was not an element.[49]

The Supreme Court then considered whether the phrase "false statement" in the statute

produced any "implication of materiality" from the common law and concluded that it did not.[50]

Finally, the Court confirmed that the statutory history of 18 U.S.C. § 1014 demonstrated that the

statute did not contain a materiality requirement.[51]

---

[48] 519 U.S. at 487 (1997).

[49] *Id*. 519 U.S. 490 (*citation omitted*).

[50] *Id*. 519 U.S. 491.

[51] *Id*. 519 U.S. 492-495.

### b.    *Neder v. United States*

Only two years after it decided *Wells*, the Supreme Court in 1999 again visited the question of when materiality should be implied as an element of a federal statute.

In *Neder v. United States*,[52] the Court observed that materiality was not stated as an element in the various bank, wire, and mail fraud statutes before it.  Proceeding to the second stage of the analysis, the Court then determined that unlike the term "false statement" at issue in *Wells*, the term "fraud" did have a common law meaning which required proof of materiality.[53] Proceeding to the final stage in its analysis, the court concluded that the presumption of adding materiality as an element was not rebutted by the text or structure of the mail, wire, and bank fraud statutes.[54]

Thus, under *Wells* and *Neder*, a statutory provision lacking an express "materiality" requirement is not presumed to include such an element because of the use of the word "false." On the other hand, a statutory provision with the word "fraud" as a mandatory element that lacks an express "materiality" requirement would be presumed to have a materiality element, unless that presumption is rebutted by the language or structure of the statute.

### 2.    Application of the *Wells/Neder* Framework Demonstrates That Materiality Is Not an Element of the False Claims Act

### a.    First Prong:  Language of the False Claims Act

The False Claims Act after the most recent substantive amendments in 1988 contains

---

[52] 527 U.S. 1 (1999).

[53] *Id.* 527 U.S. 22-23.

[54] *Id.* 527 U.S. 23-25.

nearly three thousand words.[55]   Materiality is not one of those words.[56]   In fact, a review of all

versions of the False Claims Act since its enactment in 1863 demonstrates that the term

"materiality" has never appeared in any version.[57]

Thus, under the first part of the Supreme Court's framework – a natural reading of the full

text – materiality is not an element of a False Claims Act case:   "Absent a clearly expressed

legislative intention to the contrary [statutory] language must ordinarily be regarded as

conclusive."[58]

---

[55] *See* 31 U.S.C. § 3729 *et seq.*

[56] The word "material" appears only twice, both times in 31 U.S.C. § 3730(b)(2).   The statute uses this term only to modify the type of evidence a relator is required to supply the Department of Justice at the time of filing the initial complaint.

[57] *See* 31 U.S.C. § 3729 *et seq.* (1988); 31 U.S.C. § 3729 *et seq.* (1986); 31 U.S.C. § 3729 *et seq.* (1982); 31 U.S.C. § 231 *et seq.* (1943); 31 U.S.C. § 231 *et seq.* (1935); 31 U.S.C. § 231 *et seq.* (1926); U.S. Rev. Stat. tit. 36 §§ 3490-3494 (1875); U.S. Rev. Stat. tit. 36 §§ 3490-3494 (1865); Act of March 2, 1863, ch. 67, 12 Stat. 696 (1863).   These various versions of the enactment over time are reproduced in their entirety in Appendix 4 to James B. Helmer, Jr.'s *False Claims Act: Whistleblower Litigation* (3d ed. LexisNexis 2002).

[58] *Wells,* 519 U.S. at 497 *quoting Consumer Products Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980).   The Sixth Circuit likewise has indicated in no uncertain terms that it shares this view.   *Hoge v. Honda of America Mfg.*, 384 F.3d 238, 247 (6th Cir. 2004) (*internal citations omitted*)("[C]ourts have a duty to refrain from reading a phrase into a statute when Congress has left it out.   'It is not the Court's role to address perceived inadequacies in [a statute].'"); *The Limited Inc. v. Commissioner of Internal Revenue*, 286 F.3d 324, 332 (6th Cir. 2002)(In interpreting a statute, courts must "look first to the plain language of the statute.").   Defendants have also recognized that the plain language of a statute is not to be altered by a Court.   Doc. 581, Defendants' Opposition to Relators' Motion *in Limine* Concerning the Government's Non-Intervention Decision, p. 3 ("Where statutory language is clear and unambiguous, the jury must be instructed with the text of the statute. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 91, 98-99 (2003) (holding that the 'starting point' for determining a proper jury instruction 'is the statutory text' and 'where...the words of the statute are unambiguous, the judicial inquiry is complete') (*internal quotations omitted*); *U.S. v. Pabon-Cruz*, ___ F.3d ___ No. 03-1457, 2004 WL 2757420 (2d Cir. Dec. 3, 2004)(upholding trial court's charge to the jury based on the judge's 'strict adherence to the text of the statute in framing his jury instruction')."

The current version of 37 U.S.C. § 3729(a)(1) imposes liability upon any person who

"knowingly presents, or causes to be presented . . . **a false or fraudulent** claim for payment"

(emphasis supplied) while the current version of 31 U.S.C. § 3729(a)(2) imposes liability upon

any person who "knowingly makes, uses, or causes to be made or used, a false record or

statement to get a **false or fraudulent** claim paid[.]" (emphasis supplied).[59]  Congress did not

provide a definition of the currently used phrase "false or fraudulent claim" or even of a "false

claim" or of a "fraudulent claim."  Nor was there a statutory definition or a well-settled common

law meaning of the precursor language "claim known to be false or fraudulent" or of the phrase

"false claim" in existence in 1863.[60]  The Supreme Court has, however, looked at the common law

meanings of the individual components of the current operative terminology.

In *Wells*, the Supreme Court determined that the term "false statement" did not create any

presumption that Congress intended materiality to be an element when it did not so provide in a

---

[59] As enacted in 1863, the precursor to the provision now enumerated as (a)(1) similarly
prohibited certain persons from making or presenting a claim "knowing such claim to be false,
fictitious or fraudulent."  *See* Act of March 2, 1863, ch. 67, §1, 12 Stat. 696 (1863).  Likewise, as
originally enacted, the precursor to the provision currently codified as (a)(2) prohibited certain
individuals from *inter alia* making or using any false statement knowing the same to contain any
false or fraudulent statement or entry for the purpose of obtaining the payment or approval of
"such claim."  *Id.*  The word fictitious was deleted as part of the 1982 amendments.  *See* 31
U.S.C.§ 3729 (1982).  The stated purpose of those amendments was not to make substantive
changes to the law but to restate the law to substitute "simpler language" in place of "awkward
and obsolete terms."  H. Rep. 97-651 at 2 (1982) *reprinted in* 1982 U.S.C.C.A.N. 1895.

[60] Relators' search did not disclose any pre-1863 cases that provided a well-settled
common law meaning for the term "false claim" or "false, fictitious, or fraudulent claim."

statute.[61]  On the other hand, in *Neder*, the Supreme Court concluded that use of the term "fraud" did imply a materiality element.[62]

Since the False Claims Act uses the disjunctive connector "or," there is no need to prove that claims are both false and fraudulent.  Either will do.[63]  Use of "false" does not satisfy the second prong of the *Wells-Neder* test and therefore provides no basis for implying materiality as a term for either (a)(1) or (a)(2).

On the other hand, should "fraudulent" claims be asserted, *Neder* provides a  basis for arguing that Congress might have intended a materiality requirement because of the common law meaning of fraud.  Thus, if "fraudulent" claims (as opposed to merely "false" claims) are asserted, then consideration of the third *Neder* prong is necessary.  However, as discussed below, the *Neder* presumption of materiality for "fraudulent" claims brought pursuant to (a)(1) and (a)(2)  is rebutted by the inclusion in (a)(1) and (a)(2) of the term "knowingly," which is defined by the False Claims Act as requiring no intent to defraud.

### c. Third Prong: The Language and Structure of the False Claims Act Rebuts Any Presumption That Materiality is an Element of Allegations Brought Under (a)(1) or (a)(2)

While both (a)(1) and (a)(2) reach behavior that is either "false" or "fraudulent," those sections are also qualified by reaching only conduct that is "knowingly" undertaken.  It is the inclusion of this latter requirement that, under the third prong of *Wells/Neder*, rebuts any

---

[61] *Wells*, 519 U.S. at 491.

[62] *Neder*, 527 U.S. at 21-23.

[63] *See e.g.*, *United States v. Cooperative Grain & Supply Co.*, 476 F.2d 47, 60 (8th Cir. 1973) ("[W]e have decided that a false claim, not only a fraudulent claim, is actionable under the Act . . .").

presumption that Congress meant to include materiality as a requirement to prove False Claims Act liability for "fraudulent" claims.

Because some courts had gone too far in making it harder for the Government and relators to bring False Claims Act cases,[64]Congress added language in 1986 to clarify how it intended the term "knowingly" which appears in § 3729(a)(1) and (a)(2) to be interpreted. Specifically, Congress added 31 U.S.C. § 3729(b) to make it clear that actual knowledge of, deliberate ignorance, or reckless disregard of the truth or falsity of the claim was what was meant by "knowingly." [65] To cement the point that the False Claims Act was not merely an attempt to codify common law fraud but rather a distinct federal statute with its own elements that were not the same as common law fraud, Congress added the following language:

". . . no proof of specific intent to defraud is required."[66]

In short, even if the term "fraudulent" is presumed to imply materiality as an unstated term, elimination of specific intent to defraud demonstrates that any materiality presumption is unwarranted.[67]

---

[64] *See* James B. Helmer, Jr., *False Claims Act: Whistleblower Litigation*, § 2-5 at pp. 47-48 (3d ed. LexisNexis 2002) (discussing effect of 1943 amendments).

[65] 31 U.S.C. § 3729(b)(1986); *see also Compton*, 142 F.3d at 304.

[66] *Id.*

[67] The context of the statute also confirms what extensive case law establishes: That another common law fraud element – damages – is not a required element of a False Claims Act case. Literally dozens of cases have so construed the Act. *See e.g. Varljen v. Cleveland Gear Co.*, 250 F.3d 426, 429-430 (6th Cir. 2001) (*citations omitted*). *See* § I(F), *supra.*

3.    **The Refusal of Courts to Add Materiality as an Element the Government must Prove in a Criminal False Claims Act Case Further Demonstrates That Materiality Is Not an Element of the Civil False Claims Act**

As originally enacted in 1863, the False Claims Act contained both civil and criminal provisions.[68]  When the Act was codified in 1874, the civil and criminal provisions were placed into separate parts of the Code.[69]  Since that time, the criminal provisions– which are currently codified at 18 U.S.C. § 287– have maintained the original language from the 1863 Act, imposing penalties upon those who make a claim, "knowing such claim to be false, fictitious, or fraudulent."[70]  This precise language was also used in the civil False Claims Act until 1982[71] when Congress changed the wording of the civil provisions deleting the term "fictitious" and revising the operative terminology to "false or fraudulent claim."[72]

---

[68] *See* Act of March 2, 1863, ch. 67, 12 Stat. 696 (1863).

[69] *See* U.S. Rev. Stat. tit. 36 §§ 3490-3494 (1875) and U.S. Rev. Stat. tit. 70 § 5438 (1875).  (Although the False Claims Act was enacted in 1863 it was not codified until 1874, and then because of delays in printing, it was not actually printed until 1875, hence the citation to 1875.).

[70] *Compare* Act of March 2, 1863, ch. 67, 12 Stat. 696 (1863) and 18 U.S.C. § 287 (2001).

[71] Between 1874 and 1934, the civil provisions of the False Claims Act did not state the acts that resulted in civil liability, and instead incorporated by reference the predicate acts specified in the criminal provisions.  *See* U.S. Rev. Stat. Tit. 36 § 3490 (1865); *Id.* § 3490 (1875); 31 U.S.C. § 231 (1926).  As of 1934, this cross-reference to the criminal code was eliminated and the predicate acts were specified in the civil provisions.  *See id.* § 231 (1935); *Id.* § 231 (1943).

[72] 31 U.S.C. § 3729 *et seq.* (1982).  These revisions were a part of a housekeeping effort to "eliminate unnecessary words and for consistency."  H.R. Rep. No. 651, 97th Cong., 2d Sess. 2 (1982) *reprinted in* 1982 U.S.C.C.A.N. 1895, 2037.  The stated purpose of the bill was not to make any substantive change to the law, but only to restate the law to substitute "awkward and obsolete terms" with simpler language.  *Id.* at 1895.

The Circuit Courts that have ruled on the criminal False Claims Act, 18 U.S.C. § 287–

with the exception of one that has been vacated by the Supreme Court[73]– have all found that it has

no materiality requirement.[74]

In *United States v. Nash*, 175 F.3d 429, 434 (6th Cir.), *cert. denied*, 528 U.S. 888 (1999),

the Sixth Circuit applied the Supreme Court's *Wells* analysis and concluded that there is no

materiality requirement in the criminal provisions of the False Claims Act. The *Nash* court stated

that the plain language of the statute does not mention materiality, and that absent exceptional

circumstances, the judicial inquiry is complete: no materiality is mentioned, so there is none in the

statute. The *Nash* court elaborated further that Congress has expressly included "materiality" as

a requirement in many of the statutes criminalizing false statements; if courts were to read a

materiality requirement into statutes like § 287 where the term does not exist, it would create a

surplusage of Congress' use of the term in other statutes. Finally, the Sixth Circuit stated that the

legislative history of § 287 does not indicate that Congress intended to make materiality a

---

[73] *United States v. Wells*, 519 U.S. 482 (1997), *reversing,* 63 F.3d 745, 750 (8th Cir. 1995).

[74] *See United States v. Nash*, 175 F.3d 429, 434 (6th Cir.), *cert. denied*, 528 U.S. 888 (1999)(applying *Wells*); *United States v. Harvard*, 103 F.3d 412, 419 (5th Cir.), *cert. denied,* 522 U.S. 824 (1997); *United States v. Upton*, 91 F.3d 677, 685 (5th Cir. 1996), *cert. denied,* 520 U.S. 1228 (1997); *United States v. Taylor*, 66 F.3d 254, 255 (9th Cir. 1995), *cert. denied,* 520 U.S. 1103 (1997); *United States v. Parsons*, 967 F.2d 452, 455 (10th Cir. 1992); *United States v. Elkin*, 731 F.2d 1005, 1009 (2d Cir.), *cert. denied,* 469 U.S. 822 (1984) *overruled on other grounds by United States v. Ali,* 68 F.3d 1468, 1474-75 (2d Cir. 1995); *United States v. Irwin,* 654 F.2d 671, 682 (10th Cir. 1981), *cert. denied,* 455 U.S. 1016 (1982), *overruled on other grounds by United States v. Daily,* 921 F.2d 994, 1004 (10th Cir. 1990). The Eleventh Circuit, has expressly declined to decide this issue. *United States v. White*, 27 F.3d 1531, 1534-35 (11th Cir. 1994). The D.C. Circuit assumed without deciding that the Eighth Circuit's opinion in *Wells* and the Fourth Circuit's *dicta* in a case not involving § 287 were correct. *United States v. Durenberger*, 48 F.3d 1239, 1243 (D.C. Cir. 1995).

necessary element of the statute. The Sixth Circuit's analysis is in harmony with *Wells,* as well as holdings in the Second, Fifth, Ninth, and Tenth Circuits.[75]

Because it is clear that the criminal provisions of § 287 have no materiality requirement, it makes no sense to impose such a requirement upon the parallel civil provisions which are rooted in the same language from the same original enactment. Indeed, prosecution of a civil case is normally subject to a lower burden of proof, "preponderance of the evidence", in comparison to a higher burden, "beyond a reasonable doubt" in a criminal case. It therefore does not comport with the principle behind these different standards--that it should be harder to convict a defendant criminally than to find civil liability – to force the plaintiff to carry the burden of proving an implied element of materiality in a civil case, when that element has been determined to be missing from the criminal counterpart based on the identical original language of the Act.

4.    **The Argument That Materiality Should Be an Element of the Civil False Claims Act Is Based on Decisions That Either Predated or Failed to Properly Apply *Wells* and *Neder***

Although some courts have imposed a materiality requirement for claims brought under the civil False Claims Act, most of those decisions were issued either without benefit or without

---

[75] *Id.* The only Circuit to hold that the criminal False Claims Act has a materiality requirement has been effectively reversed by the Supreme Court. The Supreme Court's decision in *United States v. Wells* though not explicitly addressing § 287, vacated the Eighth Circuit's ruling that materiality was an element of 18 U.S.C. § 1014 which criminalizes the making of a false statement to a federally insured bank. 519 U.S. 482 (1997), *reversing*, 63 F.3d 745 (8th Cir. 1995). In *Wells,* the Eighth Circuit had applied the exact same methodology in imposing materiality upon § 1014 that it had used in imposing the requirement upon § 287. 63 F. 3d 745, 750 (8th Cir. 1995). In light of the fact that this rationale was rejected for § 1014 by the Supreme Court, the Eighth Circuit's position imposing a requirement on § 287 is of doubtful vitality.

consideration of the analysis mandated in *Wells* and *Neder*.[76]  As such, those decisions lack

precedential value.  This includes the decision in *Tyger Construction Co. v. United States*, 28 Fed.

Cl. 35, 55 (1993), previously relied upon by this Court in *dicta* at Doc. 463 at p. 7.

Unknown to this Court at the time of its *dicta*, a brother Court from this district has

analyzed this very issue and concluded that it would be inappropriate to impose a materiality

requirement under the civil False Claims Act.  In *United States ex rel. Roby v. The Boeing Co.*,[77]

---

[76] *See e.g.*, *United States ex rel. Costner v. United States*, 317 F.3d 883, 886-87 (8th Cir. 2003); *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1019 (7th Cir. 1999), *aff'ing*, 998 F. Supp. 971, 991-92 (E.D. Wisc. 1998); *United States ex rel. Bennett v. Genetics & IVF Inst., Inc.*, 1999 U.S. App. LEXIS 27911 *7 (4th Cir. 1999); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1998); *United States ex rel. Berge v. Trustees of University of Alabama*, 104 F.3d 1453 (4th Cir.), *cert. denied*, 522 U.S. 916 (1997); *United States v. TDC Management Corp.*, 24 F.3d 292, 298 (D.C. Cir. 1994); *United States v. Data Translation, Inc.*, 984 F.2d 1256, 1267 (1st Cir. 1992); *United States ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456, 461 (5th Cir. 1977), *cert. denied*, 434 U.S. 1035 (1978); *United States ex rel. Bidani v. Lewis*, 2001 U.S. Dist. LEXIS 260 *22 (N.D. Ill. Jan. 12, 2001); *later opinion* 2003 U.S. Dist. LEXIS 3291 at *5 (N.D. Ill. Mar. 5, 2003); *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 2002 U.S. Dist. LEXIS 6289 at **9, 13-14 (S.D. Tex. Apr. 1, 2002), *amended by* 200 F. Supp. 2d 673 (S.D. Tex. 2002), *amendment vacated and original opinion reinstated by* 2002 U.S. Dist. LEXIS 6287 (S.D. Tex. Apr. 5, 2002); *United States ex rel. King v. F. E. Moran, Inc.*, 2002 U.S. Dist. LEXIS 16277 at **29-30 (N.D. Ill. Aug. 29, 2002; *United States ex rel. Phillips v. Pediatric Servs. of Am., Inc.*, 142 F. Supp. 2d  717, 729 (W.D.N.C. 2001); *United States ex rel. Franklin v. Parke-Davis*, 147 F. Supp. 2d 39, 50 (D. Mass. 2001); *United States ex rel. Trice v. Westinghouse Hanford Co.*, 2000 U.S. Dist. LEXIS 8838 at *73 (E.D. Wash. March 1, 2000); *United States ex rel. Koch v. Koch Indus., Inc.*, 1999 U.S. Dist. LEXIS 16632 at *9 (N.D. Okla. Sept. 29, 1999); *United States ex rel. Durcholz v. FKW, Inc.*, 997 F. Supp. 1159, 1167 (S.D. Ind. 1998), *aff'd, on other grounds*, 189 F.3d 542 (7th Cir. 1999); *United States ex rel. Joslin v. Community Home Health*, 984 F. Supp. 374, 383 (D. Md. 1997); *United States v. Frierson*, 1997 U.S. Dist. LEXIS 3368 *33 (N.D. Ill. March 20, 1997); *United States ex rel. Walle v. Martin Marietta Corp.*, 1997 U.S. Dist. LEXIS 138 at *4-5 (E.D. La. Jan. 3, 1997); *Tyger Construction Co. v. United States*, 28 Fed. Cl. 35, 55 (1993).  The concurring opinion in *United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 679 (5th Cir. 2003) (Jones, J., concurring), likewise fails to take the *Wells/Neder* framework into consideration.

[77] 184 F.R.D. 107, 112 (S.D. Ohio 1998), *aff'd on other grounds*, 302 F.3d 637 (6th Cir. 2002), *cert. denied*, 539 U.S. 969 (2003)(granting Boeing's motion for interlocutory appeal of questions certified by the district court).  Defendant The Boeing Co. did not challenge this ruling

Judge Spiegel properly found that *Wells* prohibits the judicial grafting of a materiality requirement upon the False Claims Act.[78]

### 5. The Policy Rationale for Imposing a Materiality Requirement Is Unpersuasive

Courts that have imposed a materiality element upon actions brought under the False Claims Act have ostensibly done so in an attempt to prevent the imposition of False Claims Act liability for innocent or trivial mistakes.[79]  However, in *Wells*,  the Supreme Court rejected this same argument that materiality should be added as an element of a statute to avoid imposition of substantial penalties on arguably trivial or innocent conduct.[80]  The Court noted that the *mens*

---

on materiality in its subsequent unsuccessful appeal to the Sixth Circuit of adverse summary judgment rulings.

[78] A handful of courts have paid lip-service to the *Wells/Neder* framework concerning whether the False Claims Act has a materiality requirement, however, none of those provides useful precedent as the analysis in each is flawed.

In *Harrison II*, the Fourth Circuit did purport to revisit its decisions in *Harrison I* and in *Berge* that materiality is an element of the False Claims Act in view of the subsequent Supreme Court decision in *Neder.  See United States ex rel. Harrison v. Westinghouse Savannah River Co*., 352 F.3d 908, 914 (4th Cir. 2003).  However, the Fourth Circuit declined to apply the Supreme Court's statement in *Neder*, distinguishing it as only applicable in a criminal context, in favor of its own earlier precedent in *Berge*.  The district court in *United States ex rel Wilkens v. North American Construction Corp*, 173 F. Supp. 2d 601, 623 (S.D. Tex. 2001) *modifying* 101 F. Supp. 2d 500, 516 (S.D. Tex. 2000) imposed a materiality requirement on the term "false claim" despite the fact that it found no support for this in the common law.  In *Luckey v. Baxter Healthcare Corp*, 183 F.3d 730, 732-33 (7th Cir.), *cert. denied*, 528 U.S. 1038 (1999) and in *United States v. Job Resources for the Disabled*, 2000 U.S. Dist. LEXIS 12616 at **2-8 (N.D. Ill. Aug. 24, 2000), the courts cited *Neder* and/or *Wells*, but failed to apply their framework for determining whether a materiality requirement should be imposed.

[79] *See e.g.*, *Tyger Construction Co.*, 28 Fed. Cl. at 55 (mere clerical errors should not be subject of False Claims Act liability); *Phillips v. Pediatric Services of America*, 142 F. Supp. 2d 717, 729 (W.D. N.C. 2001) (mistakes that were product of shoddy record-keeping do not constitute false claims).

[80] 519 U.S. at 498.

*rea* component of the statute assured against its inappropriate application to such conduct:

> . . .[A]n unqualified reading of [the statute] poses no risk of criminalizing so much conduct as to suggest that Congress meant something short of the straightforward reading. The language makes a false statement to one of the enumerated financial institutions a crime only if the speaker knows the falsity of what he says and intends it to influence the institution.[81]

Like the statute in *Wells*, the False Claims Act has a scienter element which precludes the imposition of liability for innocent conduct. The False Claims Act requires that the false or fraudulent claims for payment be "knowingly" submitted to the Government, as that term is defined by the False Claims Act.[82] It is the claim for payment that the defendant submits or causes to be submitted which he "knows" to be false that violates the False Claims Act. As numerous courts have found, a true clerical error or innocent mistake made without the requisite knowledge would not meet the scienter requirement necessary for the imposition of liability under the False Claims Act.[83]

The policy argument that a materiality requirement is nonetheless required in order to prevent liability under the False Claims Act for the knowing submissions of claims that are false in

---

[81] *Wells*, 519 U.S. at 498-99.

[82] 31 U.S.C. § 3729(b). For purposes of the False Claims Act, "knowingly" means "that a person, with respect to information 1) has actual knowledge of the information; 2) acts in deliberate ignorance of the truth or falsity of the information; or 3) acts in reckless disregard of the truth or falsity of the information and no proof of specific intent to defraud is required."

[83] *See e.g., Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1420-21 (9th Cir. 1992) (Relator's criticism of defendant's calculations prove no more than an "innocent mistake". . .Without more, the common failings of engineers and other scientists are not culpable under the [FCA]); *United States ex rel. Hagood v. Sonoma Cty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991) (Innocent mistakes and mere negligence are defenses to a False Claims Act claim); *United States ex rel. Roby v. The Boeing Co.*, 184 F.R.D. 107, 112 (S.D. Ohio 1998) (False Claims Act not enacted to address scientific dispute but is "concerned with persons who knowingly submit false or fraudulent claims for payment to the United States.").

only a *trivial* way is likewise not a sufficient basis for judicially engrafting such a requirement.

If the Government has specified the terms of performance, it ill-behooves the defendant to argue that its *knowing non-compliance* with those requirements should be excused because the claim is false only in a trivial sense. "Square corners" requires precise compliance with government contract terms.[84] Likewise, the fact that no damages are required under the False Claims Act[85] counsels against adding materiality as an element. If Defendants can be liable under the False Claims Act when there are no damages, then they can certainly be liable where their actions caused only trivial or immaterial damage.

The rationale of the following passage from *Kay v. United States* – which was quoted in its entirety by the Supreme Court in *Wells* – applies with equal force to rebut the proposition that materiality is a required element of claims brought under the civil False Claims Act:

> It does not lie with one knowingly making false statements with intent to mislead the officials of the Corporation to say that the statements were not influential or the information not important . . . Whether or not the Corporation would act favorably on the loan is not a matter which concerns one seeking to deceive by false information. The case is not one of an action for damages but of criminal liability and actual damage is not an ingredient of the offense.[86]

### 6. Any Issue of Materiality Is One for this Court Alone to Decide

Even if this Court were to disregard conclusions provided under the *Wells/Neder* framework, the Sixth Circuit's opinion in *Nash*, and Judge Spiegel's ruling in *Roby*, the jury should still not be instructed on materiality. Even those courts that improperly engraft a

---

[84] *See also* § I(B), *supra*.

[85] *See, e.g. Varljen*, 250 F.3d at 429-430 (6th Cir. 2001), § I(F), *supra*.

[86] *Wells*, 519 U.S. 482, 494-95, *quoting Kay v. United States*, 303 U.S. 1, 5-6 (1938).

materiality requirement upon the plain statutory language recognize that it is a question of law to be decided by the Court.[87]  Consequently, no instruction on materiality need be given to the jury under any circumstances.

### 7.    Conclusion

The False Claims Act does not include and never has included materiality as an element. Nor should such term be implied by this Court.  As the Supreme Court and the Sixth Circuit have recognized, it is improper to engraft a materiality requirement upon statutory causes of action where the statute itself is silent on the issue unless the common law meaning of the statutory terms clearly imply the element.  Here, no such implication should occur.

## III.    THE FALSE CLAIMS ACT IS TO BE GIVEN A LIBERAL CONSTRUCTION

The Supreme Court has held that the False Claims Act is to be liberally construed to effect broad coverage.  The civil False Claims Act is generally considered to be remedial legislation and is thus to be liberally construed by the Courts.[88]

> It seems quite clear that the objective of Congress was broadly to protect the funds and property of the government from fraudulent claims, regardless of the particular form, or function, of the government instrumentality upon which such claims were

---

[87] *United States ex rel. Berge v. Board of Trustees of University of Alabama*, 104 F.3d 1453, 1460 (4th Cir. 1997), *citing*, *United States ex rel. Butler v. Hughes Helicopter Co.,* No. CV 89-5760 SVW, 1993 U.S. Dist. LEXIS 17844, at *43-44 (C.D. Cal. Aug. 25, 1993).

[88] *Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 131 (2003) ("the most obvious indication that the treble damages ceiling has a remedial place under this statute is its *qui tam* feature . . . ."); *United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 304 (6th Cir. 1998) ("Damages awarded under the False Claims Act typically are liberally calculated to ensure that they 'afford the government complete indemnity for the injuries done it.'"); *United States ex rel. Roby v. The Boeing Co.*, 302 F.3d 687, 646 (6th Cir. 2002), *cert. denied*, 539 U.S. 969 (2003)(same); *American Textile Manufacturers, Inc. v. The Limited*, 190 F.3d 729, 733 (6th Cir. 1999) (". . . the Supreme Court has given the statute an expansive reading."); Senate Report No. 99-345, Cong. Record Vol. 132 (1986) at p. 11 ("the statute is a remedial one.").

made.

*Rainwater v. United States*, 356 U.S. 590, 592 (1958).

Likewise, the Congress, in enacting the 1986 Amendments to the False Claims Act, has stated its intent that the False Claims Act broadly cover all knowing violations of government contract terms, a statute or a regulation.

> [a] false claim may take many forms, the most common being a claim for goods or services not provided or provided in violation of a contract term, a statute or a regulation...Such claims may be false, even though services are provided as claimed...

H. R. Rep. No. 660, 99th Cong., 2d Sess. 21 (1986).

Accordingly, Congress intended that "each and every claim submitted under a contract...or other agreement which was originally obtained by means of false statements or other corrupt or fraudulent conduct, or in violation of any statute or applicable regulation, constitutes a false claim." S. Rep. No. 345, 99th Cong. 2d Sess. 9 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5274.

To emphasize the need for a broad construction of the False Claims Act the 1986 Senate Report quoted the following from a District Court decision issued a century earlier:

> The statute [the False Claims Act] is a remedial one. It is intended to protect the Treasury against the hungry and unscrupulous host that encompasses it on every side, and should be construed accordingly.

S. Rep. at 11, 1986 U.S.C.C.A.N. at 5276, *quoting United States v. Griswold*, 24 F. 361, 366 (D. Ore. 1885). *See also*, *Unites States ex rel. Neher v. NEC Corp.*, 11 F.3d 136, 138 (11th Cir. 1994).

Thus, False Claims Act liability arises from: false certifications of performance or

compliance[89] or delivery of goods of inferior quality or in violation of inspection, testing, or other technical requirements.[90] All three predicates exist in this case against the Defendants.

Damages must also be assessed to effect the Act's remedial purpose to make the United States "completely whole."[91] Damages awarded under the False Claims Act "typically are liberally calculated to ensure that they 'afford the government complete indemnity for the injury done it.'"[92]

> No single rule can, or should be, stated for the determination of damages under the Act....Fraudulent interference with the government's activities damages the government in numerous ways that vary from case to case. Accordingly, the committee believes that the courts should remain free to fashion measures of damages on a cases by case basis. The Committee intends that the court should be guided only by the principles that the United States' damages should be liberally measured to effectuate the remedial purposes of the Act and that the United State should be afforded a full and complete recovery of all its damages.[93]

Consequently, the Sixth Circuit has held that, under appropriate circumstances, damages can include the entire contract price without setoff, even if the Government accepted and used the nonconforming product.

---

[89] *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266-67 (9th Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997).

[90] *United States v. Bornstein*, 423 U.S. 303, 305 (1976); *United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296 (6th Cir. 1998).

[91] *United States ex rel. Roby v. The Boeing Co.*, 302 F.3d 637, 646 (6th Cir. 2002), *cert. denied*, 539 U.S. 969 (2003); *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 552 (1943); *United States v. Bornstein*, 423 U.S. 303, 312-15 (1976).

[92] *United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F. 3d 296, 304 (6th Cir. 1998), *quoting United States ex rel. Marcus v. Hess*, 317 U.S. 537, 549 (1943).

[93] *United States v. Killough,* 848 F.2d 1523, 1532 (11th Cir. 1988), *quoting* S. Rep. 615, 96th Cong., 2d Sess. at 4 (1982). *See also*, § I(H), *supra*.

[Defendant's] argument in favor of a setoff based on value purportedly received would create a perverse incentive system in which government contractors could endanger the lives of American soldiers by providing substandard materiel, and the Army would be deterred from correcting the danger because it would be forced to bear the cost of any use it received from the substandard goods before their defects were discovered. We stress that the government did not bargain only for [the product] that could withstand a certain amount of force; they also bargained for the confidence that comes with a product that has been subject to production testing.[94]

## IV.    THIS COURT'S PRIOR RULINGS—THE LAW OF THIS CASE

This Court has made a number of prior rulings in this case that impact what evidence and arguments can be presented in this jury trial. Defendants have indicated that they intend to present to the jury a number of arguments that this Court has already addressed and stricken.

### A.    Waiver

Defendants intend to argue that: individual Navy personnel are satisfied with the Gen-Sets; the Navy has not invoked Government contract remedies against the Defendants; and, the Navy and the shipyards continued to purchase Gen-Sets from these Defendants. Therefore, Defendants argue that False Claims Act liability has been waived by these actions by Navy personnel.[95]

This Court has previously examined and rejected such arguments, holding that:

➤      "Government employees do not have the authority either to release or compromise claims or to ratify the actions of other Government employees under the False Claims Act; only the Department of Justice has such power."[96]

---

[94] *United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F. 3d 296, 305 n.8 (6th Cir. 1998).

[95] Doc. 474, Final Pretrial Order, Defendants' Claims, p. 10, ¶ III.A.2.E(1).

[96] Doc. 331, Report & Recommendation, pp. 1-2, *adopted in its entirety*, Doc. 458, Entry & Order, p. 2; *Martin J. Simko Construction, Inc. v. United States*, 852 F.2d 540 (Fed. Cir. 1988).

➢ The equitable defenses, like waiver, are inapplicable in statutory actions, like False Claims Act actions.[97]

Government acceptance of the Gen-Sets does not absolve any Defendant from False Claims Act liability.  Doc. 463 at p. 7.  Consequently, Defendant may not argue that the actions of individual Navy personnel can waive their False Claims Act liability.

## B.    Laches

Defendants General Tool Company and SOFCO continue to assert the equitable defense of laches, contending that they should not be liable under the False Claims Act because the United States took several years to conduct its investigation of the False Claims Act allegations while the case remained under seal.[98]  Of course, through out this seal time period, the United States made regular reports to Senior Judge Weber who granted extensions to continue the seal period upon a showing of good cause.[99]  No Defendant has ever challenged Senior Judge Weber's Orders granting extensions.

Defendants' equitable defense of laches was the subject of no less than four Orders of this Court—all four establishing that laches is not a defense to a False Claims Act action.  Specifically, this Court rejected the defense of laches in the context of Defendant SOFCO's motion for summary judgment, finding that SOFCO failed to establish the essential elements of laches and also that an equitable defense, like laches, may not be asserted in a statutory action like the False Claims Act.

---

[97] Doc. 331, Report & Recommendation, p. 2, *adopted in its entirety*, Doc. 458, Entry & Order, p. 2.

[98] Doc. 474, Final Pretrial Order, Defendants' Claims, p. 10, ¶ III.A.2.E(1).

[99] Docs. 5 - 25; 31 U.S.C. § 3730(b)(3).

In finding that Defendants failed to establish an essential element of laches—that there was an unreasonable delay in bringing the claim—this Court has stated:

➤ "Plaintiffs did not delay in asserting the [False Claims Act] claim; rather there was an arguably unreasonable time taken to *investigate* the claim. Each of these extensions was approved by the District Judge and each had to be upon demonstrated good cause. The Government's Motion for Extensions are sealed and there simply is no evidence that the extensions were not based on good cause."[100]

This Court also found that laches may not be asserted in a statutory False Claims Act action in both denying SOFCO's motion for summary judgment as well as granting Relators' motion for summary judgment dismissing this affirmative defense.

➤ "Because the False Claims Act is a creature of statute with a specific limitations period and because Relators have brought their claim within the statutory period, the equitable remedy of laches is unavailable as a defense."[101]

➤ "Laches is not a defense to a legal, as opposed to equitable, claim filed within the statute of limitations."[102]

## C. Estoppel

As with laches, this Court has issued four rulings that the equitable defense of estoppel is inapplicable in this statutory False Claims Act action.

➤ "In *United States v. Guy*, 978 F.2d 934 (6th Cir. 1992), the Sixth Circuit held that 'at the very minimum, some affirmative misconduct by a government agent is required as a basis of estoppel.' We can find none here and accordingly, have no basis to grant Defendant's Motion for Summary Judgment on the basis of equitable

---

[100] Doc. 332, Report & Recommendation, p. 2, *adopted in the entirety* Doc. 459, Entry & Order, p. 2.

[101] Doc. 332, Report & Recommendation, pp. 3-4, *adopted in the entirety* Doc. 459, Entry & Order, p. 2.

[102] Doc. 331, Report & Recommendation, p. 2, *adopted in the entirety*, Doc. 458, Entry & Order, p. 2.

estoppel."[103]

➤ "As we previously said, however, the repeated 60-day extensions [of the seal] were presumptively for good cause and the Government's requests for extensions were granted by the Court, not unilaterally taken by the Government....We cannot follow Defendants' theory of the law because *Guy* requires a showing of 'some affirmative misconduct' by the Government and Defendants cannot point to any."[104]

SOFCO's trial brief mistakenly asserts that the Magistrate Judge's orders dismissing

laches and estoppel as defenses adapted in the entirety by this Court, "stated in its ruling that its

ruling related only to the other defendants and not to the unique facts relating to Southern Ohio

Fabricators, Inc. (Doc. 331, p. 2)."[105]  In fact, an examination of the referenced Magistrate

Judge's Report and Recommendation reveals just the opposite.  The Magistrate Judge and this

Court affirmatively stated that SOFCO's proffered defenses of laches and estoppel are dismissed.

➤ "Our holding [denying summary judgment to SOFCO based on laches] was based on recent Second Circuit opinions following two Supreme Court cases: *United Stats v. Mack*, 295 U.S. 480 (1935) and *United States v. Summerlin*, 310 U.S. 414 (1940) and was rendered in resolving SOFCO's Motion for Summary Judgment (Doc. 155).  We see no reason to expound further.  Relators' Motion for Summary Judgment should be granted insofar as it seeks a ruling that the defense of laches is just as unavailable to the other Defendants in this case ***as it is to SOFCO***."[106]

The same is also true as to SOFCO's misplaced attempt to argue that estoppel is still

available as a defense.  This Court expressly ruled that estoppel is not a defense in a False Claims

---

[103] Doc. 332, Report & Recommendation, p. 4, *adopted in the entirety* Doc. 459, Entry & Order, p. 2.

[104] Doc. 331, Report & Recommendation, p. 3, *adopted in the entirety*, Doc. 458, Entry & Order, p. 2.

[105] Doc. 612, SOFCO Trial Brief, p. 3.

[106] Doc. 331, Report & Recommendation, p. 2 (emphasis supplied), *adopted in the entirety*, Doc. 458, Entry & Order, p. 2.

-38-

Act action—for SOFCO or any other False Claims Act defendant.

➢ "We have also previously held that the defense of equitable estoppel is unavailable to SOFCO."[107]

### D. Unclean Hands

Defendants General Tool and SOFCO mistakenly assert the defense of Unclean Hands in the Final Pretrial Order.[108] But SOFCO never asserted such defense in any Answer. And the equitable defense of Unclean Hands originally asserted only by Defendant General Tool Company was later withdrawn and General Tool consented to an entry of summary judgment dismissing this defense.[109]

### E. Failure to Mitigate

In a close alternative to their waiver and estoppel equitable defenses, Defendants have asserted that the United States has a duty to mitigate its damages in this False Claims Act action.[110] Specifically, "[p]aying the bill for the individual Gen-Set units or otherwise accepting those units without any complaints as to defects and/or price is failing to mitigate one's losses or so Defendants assert."[111]

This Court has repeatedly rejected Defendants' argument.

---

[107] Doc. 331, Report & Recommendation, p. 3, *adopted in the entirety*, Doc. 458, Entry & Order, p. 2.

[108] Doc. 474, Final Pretrial Order, Defendants' Claims, p. 10, ¶ III.A.2.E(1).

[109] Doc. 331, Report & Recommendation, p. 3, *adopted in the entirety*, Doc. 458, Entry & Order, p. 2.

[110] Doc. 474, Final Pretrial Order, Defendants' Claims, p. 9, ¶ III.A.2.D(3).

[111] Doc. 331, Report & Recommendation, p. 3, *adopted in the entirety*, Doc. 458, Entry & Order, p. 2.

➣ "mitigation of damages cannot be asserted as a defense in a False Claims Act case."[112]

➣ "Government acceptance of a product does not absolve a contractor from liability for a false claim."[113]

**F.    The Only Remaining Issue Of Fact In Establishing SOFCO's False Claims Act Liability Is Whether SOFCO Acted "Knowingly"**

Relators allege that all Defendants "knowingly" violated the False Claims Act when SOFCO "knowingly' fabricated the Gen-Set base and enclosure assemblies with welders and welding inspectors that were not certified or qualified to Military welding standards specified on the drawings and purchase orders.  In the context of the False Claims Act, a defendant acts "knowingly" when it acts with actual knowledge, acts in deliberate indifference or acts in reckless disregard of the truth or falsity of the information.  31 U.S.C. § 3729(b).  No specific intent to defraud is required.  *Id.*

In denying Relators' and SOFCO's cross-motions for summary judgment the Court made the following significant findings:

➣ "Allison's purchase orders to General Tool contained a directive that 'The AG9130 Generator Sets shall be produced under MIL-Q- 9858A Quality System.' General Tool promised that it would assure that welding and brazing, including certification, would be performed in accordance with the applicable Mil-Spec.  In addition to complying with Mil-Q- 9858A, Allison's purchase orders required General Tool to comply with all of the Gen-Set drawings, the Allison Supplier Quality Manual and Allison's Statement of Work.  Allison's purchase orders also required General Tool to insure that its vendors and suppliers complied with all

---

[112] Doc. 331, Report & Recommendation, p. 3, *adopted in the entirety*, Doc. 458, Entry & Order, p. 2.  *Cf. Toepleman v. United States*, 263 F.2d 697 (4th Cir. 1959), *United States ex rel. Marcus v. Hess*, 41 F. Supp. 197 (W.D. Pa. 1941); *FDIC v. Oldenburg*, 38 F.3d 1119 (10th Cir. 1994); *FDIC v. Isham*, 782 F. Supp. 524 (D. Colo. 1992).

[113] Doc. 463, Entry & Order, p. 7, *citing United States ex rel. Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429-30 (6th Cir. 2001).

Mil-Specs in effect as of June 1, 1984 and Mil-I-45208A and to assure corrective action on all reported nonconformance."[114]

➢ "General Tool's first purchase order to SOFCO, in March 1988, required SOFCO to manufacture bases and enclosures for the Gen-Sets in conformity to Mil-I-45208A, Mil-Std-45662 and Mil-Std-278. The second purchase order in January, 1990 required SOFCO to certify welders to Mil-Std-278 and Mil-Std- 248.[115]

➢ "Mil-Q-9858A requires that 'all supplies and services under the contract...shall be controlled at all points necessary to assure conformance to contract requirements.' Mil-Q-9858A requires that the contractor be responsible for compliance with all provisions of the contract and for furnishing specified supplies and services that meet all the requirements of the contract. Mil-Q-9858A requires that the contractor be responsible for assuring that supplies and services procured from subcontractors and vendors conform to contract requirements."[116]

➢ "Mil-I-45208A requires that contractors provide and maintain an inspection system which will assure that all supplies and services submitted to the Government for acceptance conform to contract requirements."[117]

➢ "Mil-Std-278F requires that welders, tack welders and welding machine operators be qualified in accordance with Mil-Std-248, that all requirements of the NAVSEA standard be met, and that the contractor be familiar with the provisions and specifications of Mil-Std-278F to the extent that the provisions and specifications apply to the work being performed."[118]

➢ "Mil-Std-248 requires the welder to qualify in accordance with Mil-Std-248C before commencing work on the project and to maintain those qualifications throughout the project. Mil-Std-248 requires the contractor to verify each welder's use of the qualified processes once in each calendar quarter. Failure to maintain welder qualification requires a process of requalification. Mil-Std-248 requires each welder to pass an annual vision test and to qualify by performing welds which are tested both destructively and nondestructively. Once qualified,

[114] Doc. 334, Report & Recommendation, p. 3, *adopted in its entirety*, Doc. 460, p. 2.

[115] *Id.*, *adopted in its entirety*, Doc. 460, p. 2.

[116] *Id.*, *adopted in its entirety*, Doc. 460, p. 2.

[117] *Id.*, *adopted in its entirety*, Doc. 460, p. 2.

[118] *Id.*, *adopted in its entirety*, Doc. 460, p. 2.

welders must then be certified in writing by the employer, which in this case is SOFCO."[119]

➤ "Defendants, General Tool and Allison Engine, are responsible for SOFCO's work by virtue of Mil-Q-9858A..."[120]

➤ "Relators have demonstrated that SOFCO had many and repeated failures to comply with military standards and that many nonconformances were admitted by SOFCO executives....At some point, when failures continue to occur, one can argue that the quality control program is ineffective and violative of military standards because failures are either undetected, or once detected, are allowed to remain uncorrected. The precise point at which this failure can be labeled on the one hand as knowing or in reckless disregard of the truth, or on the other, as mere negligence, is an issue of fact and is inapproriately decided on summary judgment."[121]

➤ "SOFCO did not have a procedure for the qualification and certification of its non-destructive testing personnel under Mil Std 271 and SNT TC 1A, although that work was delegated to Materials Joining Consulting."[122]

➤ "There is a point when repeated mistakes are beyond negligence. This is especially true when audits demonstrate the shortcomings and performance after the audits does not change."[123]

## G. General Tool Company Was Required To Follow Its Quality Manual

Although admitting that it had to <u>have</u> an acceptable Quality Manual that implemented

military contract quality requirements found in Mil-Q-9858A, some Defendants have suggested

that General Tool Company did not have to <u>follow</u> its Quality Manual. This argument has been

---

[119] *Id*. at 3-4, *adopted in its entirety*, Doc. 460, p. 2.

[120] *Id*. at 5, *adopted in its entirety*, Doc. 460, p. 2.

[121] *Id*. at 13, *adopted in its entirety*, Doc. 460, p. 2.

[122] Doc. 332, Report & Recommendation, p. 8, *adopted in the entirety* Doc. 459, Entry & Order, p. 2.

[123] *Id*. at 9, *adopted in the entirety* Doc. 459, Entry & Order, p. 2.

definitively rejected by this Court.

➤ "GTC was required to follow its Quality Manual. GTC was required to have a quality system that was compliant with MIL-Q-9858A. GTC was also required to have its quality manual and/or quality plan approved by Allison. As a result, GTC submitted its Quality Manual and it was approved by Allison."[124]

**H. False Claims Act Liability Exists Even If The Government Suffers No Damages**

As a derivative of their waiver and estoppel arguments, Defendants maintain that there is no False Claims Act liability because there are no damages. Relators will prove at trial that there are, indeed, damages suffered by the United States as a result of Defendants' actions and false records and statements. Nevertheless, False Claims Act liability exists even if the Government suffers no damages. This legal issue has already been conclusively established by the Sixth Circuit, and followed by this Court in this litigation.

➤ "the Sixth Circuit has held that recovery pursuant to the FCA is not dependent upon the Government sustaining monetary damages..."[125]

**I. "Just As Good" Is No Defense To False Claims Act Liability**

Particularly with respect to the failure of the Defendants to use welders qualified and certified to specified military standards, Defendants have repeatedly argued that the welders that they used were certified to commercial standards that are "just as good" or "the same as" the military standards. This Court has already examined and rejected this defense based upon controlling Sixth Circuit law.

---

[124] Doc. 463, Entry & Order, p. 7, *adopting finding in* Doc. 348, Report & Recommendation.

[125] Doc. 463, Entry & Order, p. 7, *adopting finding in* Doc. 348, Report & Recommendation, *citing United States ex rel. Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429-30 (6th Cir. 2001). *See also* § I(F), *supra.*

➢      "failure to comply with Government specifications can result in injury even if the supplied product is as good as the specified product..."[126]

## J.      Gearbox Conspiracy Claims

Relators allege that Defendants General Tool Company and General Motors/Allison Engine Company concealed gearbox problems in order to meet delivery schedules and obtain prompt payment.[127]  Relators maintain that General Tool is liable for False Claims Act conspiracy (31 U.S.C. § 3729(a)(3)) with GM/Allison even though the actual claims for payment and certifications were submitted by GM/Allison.  In this regard, this Court has made several significant findings:

➢      "Both Allison and General Tool had a common interest in meeting Gen-Set delivery schedules and both knew that construction delays cost time and money."[128]

➢      "Gearboxes manufactured to government specifications and in compliance with Mil-Q-9858A would not leak oil and contain foreign material and defective temperature gauges."[129]

➢      "The conspiracy provisions of the False Claims Act should be interpreted in accordance with general principles of civil conspiracy.  Conspiracy liability requires an agreement between two or more entities to inflict damages by unlawful behavior.  It must be shown that there was a plan, that each conspirator shared in the plan, and that an overt act was committed in furtherance of the plan.  See *United States v. Murphy*, 937 F.2d 1032 (6th Cir. 1991)."[130]

---

[126] Doc. 463 at p. 7, *citing United States ex rel Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429-30 (6th Cir. 2001).  *See also* § I(C), *supra*.

[127] Doc. 339, Report & Recommendation, p. 2.

[128] Doc. 339, Report & Recommendation, p. 3, *adopted in* Doc. 433, Entry & Order.

[129] *Id.*

[130] *Id.*

➢    "The overt act on the part of General Tool was the shipment of the Gen-Sets."[131]

➢    "It is no defense to a conspiracy claim that General Tool did not submit the claim for payment to the Ingalls Shipbuilding or Bath Iron Works."[132]

## V.    ADDITIONAL TRIAL CONCERNS

### A.    The Jury Should Be Instructed to Avoid Researching this Case on the Internet

Courts have traditionally instructed jurors to not conduct research on their own about the matters in a case they are to decide.[133]   Jurors are also typically cautioned not to read about the case they are to decide in the newspaper or watch it on television.

The internet has made instantaneous world-wide access available for countless subjects.  With a few key strokes, anyone can access mountains of information about *Arleigh Burke* Class Destroyers, the Defendants in this case, False Claims Act law, the experience of counsel, welding techniques, gearbox machinery, *qui tam* cases, and numerous other topics of curiosity.

Relators suggest that the Court caution jurors to avoid acquiring any information from the internet about this case.

### B.    Relator Thacker's Back Problems

Relator Roger Thacker has medical problems with his back.  Sitting for long periods of time aggravates his condition.  As a result, his deposition in this case lasted four days.

With this trial scheduled to last several weeks, it may be necessary for Relator Thacker to

---

[131] *Id.*

[132] *Id.*

[133] The most famous Sixth Circuit case reversing a jury verdict for a juror's own investigation outside the courtroom is *In re Beverly Hills Fire Litigation*; *Kiser v. Bryant Electric*, 695 F.2d 207 (6th Cir. 1982).  The Sixth Circuit reversed a jury verdict even though the trial court had instructed the jury not to seek outside information. *Id.*, 695 F.2d at 215.

absent himself briefly from the courtroom from time to time.  In addition, if Defendants intend a lengthy cross-examination of Mr. Thacker, it may be necessary to conduct it over two days.

**C.** **Relator Should Be Permitted to Introduce the Numerous Admissions by Defendants at Times Appropriate to the Presentation of Evidence on Those Topics**

After years of discovery and preparation, there are numerous facts in this case which are either not in dispute or are admitted.  The Joint Final Pretrial Order contains several pages of such information.[134]  In addition, depending on how this Court rules on Relators' Motion *in Limine* Concerning Previously Admitted Findings of Fact,[135] there may be many additional pieces of evidence for which Relators are entitled to an instruction from the Court that such matters are deemed true and no further evidence on that matter is required.

Some courts will begin the presentation of Plaintiff's evidence by reading all stipulations and admissions and instructing the jury to take such matters as true.  Some courts end the presentation of Plaintiff's evidence in such fashion.  In either scenario, in this case the Court's reading would be lengthy.

Because of the number of such admissions in this case covering a myriad of topics, it is Relators' position that a superior way for the Court to proceed is to read at the beginning of each daily session before the jury those admissions/stipulations which pertain to the testimony of evidence being presented by Relators on that particular day.  Relators will provide the Court and counsel with such lists in advance of the session.

In this fashion, the admissions/stipulations will be presented to the jury in context with

---

[134] Doc. 474 at III.B.1.

[135] Doc. 478.

how the various issues in the case are being presented.  Such a presentation will make the jury's job easier and the trial of this case both more efficient and less time consuming.

**D.**    **Defendants Should Be Precluded from Calling Navy Personnel Interviewed in Violation of This Court Order Entered in this Case**

Defendants have now admitted contacting several unidentified Navy personnel without notice to Relators' counsel,[136] even though the Court ordered that both notice and an opportunity for Relators' counsel to attend such interviews was to be given.[137]  The Court also ordered Defendants to identify such persons.[138]  Defendants have not complied with this Order either.[139]

Defendants should not be permitted to disregard Court Orders in their haste to ambush the Relators in this case.  We will be filing a motion for appropriate preclusion for Defendants' conduct.  Such preclusions should include, at a minimum, barring defense counsel from discussing the fruits of such unlawful interviews with the jury in Opening Statements.

---

[136] Doc. 607 at p. 6, 13.

[137] Doc. 291 at 1.

[138] Doc. 314 at p. 1.

[139] In doc. 607, Defendants do not identify who they spoke to or when.  Rather, Defendants provide an interrogatory answer of dozens of names of persons who "might" have knowledge.  Defendants admit that they have no intention of calling most of the 42 Navy personnel they list as witnesses and who they have inconvenienced by having subpoenas issued to. Doc. 603 at p. 3, n.1.  In this manner, Defendants hope to hide both whom they have interviewed in violation of this Court's Orders and whom Relators must prepare to examine.

### E.  Government Knowledge Is Not A Defense To False Claims Act Violations In This Case

One of the Defendants' themes in this case is that they cannot be liable for False Claims Act violations because "the Navy knew" of some of the Gen-Set problems, which—for the Defendants—means that they "did not knowingly attempt to defraud the Government."[140]  This is the venerable "Government Knowledge" defense, whereby a False Claims Act defendant tries to escape liability because someone in the "Government" knew something about the defendants' conduct.  But the law is clear that such limited "Government Knowledge" is no defense to False Claims Act liability.

Courts that have even entertained the "Government Knowledge" defense have required as a prerequisite a showing by the defendants that they informed the *responsible* Government official of "*all the underlying facts*" which render their claims false.[141] The Defendants in this case have not and cannot make this argument.  The Defendants have never identified any evidence that they informed anyone in the Navy—much less the responsible Navy official—of the true nature of the defective Gen-Set gearboxes; the true extent of SOFCO's use of unqualified personnel; or the true scope of the after-the-fact "stamping parties" held at General Tool in lieu of a proper Gen-Set Final Inspection.  In fact, the evidence at trial will show the exact opposite.  The defendants did their level best to hide such information from the Navy, and even when they couldn't do so—for example, when the Gen-Set gearboxes were leaking oil in the Navy's new ships—the Defendants

---

[140] Doc. 189 at 29.

[141] *United States ex rel. Butler v. Hughes Helicopters, Inc.*, 71 F.3d 321, 327 (9th Cir. 1995), *quoting*, *United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991).  *See also United States ex rel. Lamers v. City of Green Bay*, 998 F. Supp. 971, 988 (E.D. Wis. 1998).

downplayed the true problem at every turn.

Under these circumstances, the "knowledge" of some Navy personnel is irrelevant to False Claims Act liability for the simple reason that the limited knowledge of a few Navy employees does not and legally cannot mean that the Navy authorized the Defendants to make false statements or claims. [142]

**F.      The False Claims Act Provides For Joint And Several Liability**

It is well settled that joint and several liability applies in multiple-defendant FCA cases: "Where one or more persons have committed a fraud upon the government in violation of the FCA, each is jointly and severally liable for the treble damages and statutory penalty."[143]

---

[142] *United States ex rel. Varljen v. Cleveland Gear Co.*, 250 F. 3d 426, 430 (6th Cir. 2001), *citing United States v. Aerodex, Inc.*, 469 F.2d 1003, 1009 (5th Cir. 1972) ("the government's inspection and acceptance of a product do not absolve a contractor from liability" under the False Claims Act); *United States ex rel. Kreindler & Kreindler v. United Technologies*, 985 F.2d 1148, 1156 (2d Cir. 1993), *cert. denied*, 508 U.S. 973 (1993) ("the statutory basis for an FCA claim is the defendant's knowledge of the falsity of its claim . . . which is not automatically exonerated by any overlapping knowledge by Government officials"); *United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991), *cert. denied*, 519 U.S. 865 (1996) ("The requisite intent is the knowing presentation of what is known to be false. That the relevant Government officials know of the falsity is not itself a defense."); *United States ex rel. Mayman v. Martin Marietta Corp.*, 894 F. Supp. 218, 223 (D. Md. 1995) ("[A] contractor who tells a Government contracting officer that a claim is false still violates the statute when a false claim is submitted"); *BMY – Combat Systems Div. of Harsco Corp v. United States*, 38 Fed. Cl. 109, 119 (1997) (contractor misrepresents compliance when it fails to inform Government of nonconformance even if Government, through its own efforts, has knowledge of that nonconformance).

[143] *Mortgages, Inc. v. United States Dist. Court*, 934 F.2d 209, 212 (9th Cir. 1991), *citing* 31 U.S.C. § 3729(a), *United States v. Hughes*, 585 F.2d 284, 286 n.2 (7th Cir. 1978) and *United States v. Aerodex*, 469 F.2d 1003, 1012 (5th Cir. 1972). *Accord United States v. Cabrera-Diaz*, 106 F. Supp.2d 234, 242 (D. P.R. 2000); *United States ex rel. Augustine v. Century Health Servs., Inc.*, 136 F. Supp.2d 876, 895 (M.D. Tenn. 2000), *aff'd*, 289 F.3d 409 (6th Cir. 2002).

## VI. WHERE THE COURT CAN FIND THE BRIEFING ON THE VARIOUS MOTIONS *IN LIMINE* FILED IN THIS CASE

The following is a list of the various Motions *in Limine* filed in this case with references to the appropriate responsive briefs (and Orders) by docket number.

### A. Consequential Damages

➢ Motion by Defendants Allison Engine Co. & General Motors Corp. *in Limine* to Exclude Evidence of Consequential Damages and related responses (Docs. 226, 266, 277)

➢ Order by Magistrate Judge Hogan Denying Motion *in Limine* to Exclude Evidence of Consequential Damages and related responses (Doc. 326)

➢ Objections to Magistrate Judge Hogan's Order Denying Motion to Exclude Damage Evidence and related responses (Docs. 333, 342, 349, 437)

➢ Entry and Order by Judge Rose Denying Objections to Magistrate's Order Denying Defendants' Motion *in Limine* to Exclude Evidence of Consequential Damages (Doc. 441)

➢ Motion by Defendant SOFCO *in Limine* to Exclude Evidence of Consequential Damages and Relators' responses (Docs. 251, 268)

➢ Entry and Order Denying SOFCO's Motion *in Limine* to Exclude Evidence of Consequential Damages (Doc. 462)

### B. Exclusion of Expert Testimony

➢ Relators' Motion to Bar Tainted Expert Testimony and related responses (Docs. 153, 183, 220, 250, 254, 255, 264, 273, 275, 280, 309, 312, 313, 318, 319, 320).

➢ Order by Magistrate Judge Hogan Granting in Part Motion for Order to Bar Tainted Expert Testimony (Doc. 321)

➢ Objections by Defendants to Order Granting Motion to Bar Tainted Testimony and related responses (Docs. 330, 340, 343, 442, 443)

➢ Order by Judge Rose Striking References from the Lynn Report and Precluding Testimony (Doc. 448)

➤ Relators' Motion *in Limine* Concerning Expert Testimony from Fact Witnesses and related responses (Docs. 475, 583, 587)

**C.     Government Criminal Investigation**

➤ Relators' Motion *in Limine* Concerning the Government's Criminal Investigation of the Defendants and related responses (Docs. 476, 585, 586, 589)

**D.     Government Non-Intervention**

➤ Relators' Motion *in Limine* Concerning the Government's Non-Intervention Decision and related responses (Docs. 477, 581, 591)

**E.     Treble Damages, Double Damages, Civil Penalties, Attorney Fees**

➤ Relators' Motion *in Limine* Concerning the Treble Damage Provision, Double Back Pay Provision, Attorneys' Fees Provisions, and Civil Penalty Provision of the False Claims Act and related responses (Docs. 478, 584, 588)

**F.     Previously Admitted Findings of Fact**

➤ Relators' Motion *in Limine* Concerning Previously Admitted Findings of Fact and related responses (Docs. 479, 582, 590)

**G.     Frank Schultz**

➤ Defendants' Motion *in Limine* to Exclude Evidence of the Character of Frank Schultz Under Federal Rule of Evidence 404(b) and related responses (Docs. 483, 593, 600)

**H.     Bill Kramer**

➤ Defendants' Motion *in Limine* to Exclude Character Evidence Under Federal Rule of Evidence 404(b) and related responses (Docs. 484, 594, 597)

**I.     Navy Video**

➤ Defendants' Motion *in Limine* to Exclude All Evidence Relating to Videotape Entitled *The Navy Team: You Are There* and related responses (Docs. 485, 592, 599, 601, 605, 608)

**J.**     **Government Counsel's Presence at Trial**

➤     Government's Response on Issue Raised in Status Conference Regarding Government Presence at Trial and related responses (Docs. 596, 603, 604, 606, 607)

Respectfully submitted,

/s/ James B. Helmer, Jr.

Scott A. Powell, Esq.
Don McKenna, Esq.
HARE, WYNN, NEWELL
    & NEWTON, LLP
The Massey Building, Suite 800
2025 Third Street, North
Birmingham, AL 35203-3713
Telephone: (205) 328-5330
*Attorneys for Relators*

James B. Helmer, Jr. (0002878)
Paul B. Martins (0007623)
Robert M. Rice (0061803)
HELMER, MARTINS, RICE
    & POPHAM CO., L.P.A.
Fourth & Walnut Centre, Suite 1900
105 East Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 421-2400
*Trial Attorneys for Relators*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Trial Brief of Relators was electronically filed on January 24, 2005. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


/s/ Paul B. Martins_____